## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOURTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD R. ARISPE, JIMMY A. BURKE, PEGGY E. BURKE, TODD B. BURKE, JOSE J. COLLADO, ADELA C. COLLADO, CHARLES K. COLVIN, C&C ERECTION, INC., NANCY GORDON, SUSAN W. HACKNEY, DON H. JONES, SUZANN S. JONES, WILLIAM A. RHODES, JR., DAWN SCHUESSLER, KENNETH W. SEARS, KENNETH W. SEARS, JR., REINE M. SEARS, DANIEL J. SEARS, KENNETH W. SEARS, III, JUDY STRICKLAND, ELIZABETH STEIN, AND SHANA L. STEIN, | § § § § § § § § § § § § | |
| Petitioners, | § § | |
| v. | § § | NO. 4:11-_____ |
| MORGAN KEEGAN & CO., INC., | § § § | |
| Respondent. | § | |

## PETITIONERS' BRIEF IN SUPPORT
## OF MOTION TO VACATE ARBITRATION AWARD

Petitioners, Richard R. Arispe, Jimmy A. Burke, Peggy E. Burke, Todd B. Burke, Jose J.

Collado, Adela Christine Collado, Charles K. Colvin, C&C Erection, Inc., Nancy Gordon, Susan W.

Hackney, Don H. Jones, Suzann S. Jones, William A. Rhodes, Jr., Dawn Schuessler, Kenneth W.

Sears, Kenneth W. Sears, Jr., Reine M. Sears, Daniel J. Sears, Kenneth W. Sears, III, Judy

Strickland, Elizabeth Stein, and Shana L. Stein ("Petitioners" or "Claimants") hereby file this Brief

in Support of their Motion to Vacate Arbitration Award, which requests that this Court both vacate

the arbitration award (the "Award") improperly and illegally entered by a panel of arbitrators of the

Financial Industry Regulatory Authority ("FINRA") Dispute Resolution in favor of Respondent

1

Morgan Keegan & Co., Inc. and/or order the Director of FINRA to submit additional documents to the arbitrators in order to clarify the Award.

## I.    FACTUAL BACKGROUND

The underlying arbitration in this case arose from a long series of fraudulent acts by Morgan Keegan in relation to certain open- and close-ended investment funds (the "Funds") that it controlled and marketed from 1999 through 2008.   Through its offering materials, as well as through a continuing series of written and oral communications, Morgan Keegan made numerous misrepresentations and omissions concerning the Funds which induced Petitioners into investing in the Funds and reinvesting their dividends.   The evidence presented at the arbitration showed that Morgan Keegan violated these representations and assurances.   Morgan Keegan included a binding arbitration provision in all of its agreements, thereby forcing Petitioners to file this FINRA proceeding.   All of the Petitioners' undisputed testimony showed they relied solely upon the same Morgan Keegan financial advisor in making each of their investment decisions regarding the Funds.

On February 6, 2009, Petitioners filed their initial Statement of Claim with FINRA, commencing arbitration proceedings styled *In the Matter of the Arbitration Between John J. Garrett, et al., v. Morgan Keegan & Company, Inc.*, FINRA Case No. 09-00683.   Morgan Keegan then filed its Submission Agreement in response, and expressly agreed to arbitrate all of the Petitioners' claims before FINRA (a copy of which is attached hereto as Exhibit "A").   Over the next twenty months, the parties engaged in extensive pre-hearing litigation, including exhaustive discovery and motion practice involving both procedural and dispositive motions.   During this time, the *Garrett* arbitration was tried to a different FINRA panel and an award in that case was served only days before the arbitration commenced in this case.   The *Garrett* panel found in favor of the claimants and ordered Morgan Keegan to pay more than nine million dollars in damages.   Morgan

2

Keegan then filed a motion to vacate that award in the Southern District of Texas and the case was assigned to The Honorable Lynn Hughes.[1]

The arbitration in this case commenced based on Petitioners' Second Amended Statement of Claims, which asserted violations of the Texas Securities Act, statutory fraud, and common law fraud, (a copy of which is attached as Exhibit "B"). Morgan Keegan's Answer asserted a variety of affirmative defenses.

The arbitration proceeded to a hearing on October 12, 2010, and lasted for four days. After a lengthy delay, the arbitration was finally concluded on January 29-30, 2011, after having lasted a total of six days. On March 9, 2011, the Panel issued its award in favor of Morgan Keegan. The arbitration award denied all of Petitioners' claims outright and awarded Morgan Keegan $34,707.00 in costs and $399,416.00 in attorneys' fees. *See* Exhibit C. Of particular importance here, the Award (1) expressly provides that all Petitioners are jointly and severally liable to Morgan Keegan for its costs and attorneys' fees and (2) awards Morgan Keegan attorneys' fees "pursuant to Morgan Keegan Custom Agreement signed by all Claimants...." *See* Exhibit C. As will become clear, these are but a couple of the improprieties which mandate vacatur of the Award.

## II.    JURISDICTION

### A.    FEDERAL JURISDICTION

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Morgan Keegan is a Tennessee corporation with its principal place of business in Memphis, Tennessee, and as such, is a citizen of the state of Tennessee.

Petitioner Richard R. Arispe is a natural person who resides in San Antonio, Bexar County, Texas. Petitioners Jimmy and Peggy Burke are natural persons who reside in Deer Park, Harris

---

[1] That matter is currently awaiting ruling by Judge Hughes in Civil Action No. H-10-cv-4308. Petitioners in this matter would request that this action be similarly assigned to the court of Judge Hughes as a related matter.

County, Texas.  Petitioner Todd Burke is a natural person who resides in Deer Park, Harris County, Texas.  Petitioners Jose and Adela Collado are natural persons who reside in Miami, Miami-Dade County, Florida.  Petitioner Charles Colvin is a natural person who resides in Bulverde, Comal County, Texas.  Petitioner C&C Erection, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas, and as such, is a citizen of the state of Texas.  Petitioner Nancy Gordon is a natural person who resides in Missouri City, Fort Bend County, Texas.  Petitioner Susan Hackney is a natural person who resides in Austin, Travis County, Texas.  Petitioners Don and Suzann Jones are natural persons who reside in Brenham, Washington County, Texas.  Petitioner William Rhodes is a natural person who resides in Houston, Harris County, Texas.  Petitioner Dawn Schuessler is a natural person who resides in Houston, Harris County, Texas.  Petitioner Kenneth W. Sears is a natural person who resides in Geismar, Ascension Parish, Louisiana.  Petitioners Kenneth W. Sears, Jr., Daniel Sears, and Kenneth W. Sears, III are natural persons who reside in Covington, St. Tammany Parish, Louisiana.  Petitioner Reine Sears is a natural person who resides in Geismar, Ascension Parish, Louisiana.  Petitioner Elizabeth Stein is a natural person who resides in Boerne, Kendall County, Texas.  Petitioner Shana Stein is a natural person who resides in Los Angeles, Los Angeles County, California.  Petitioner Judy Strickland is a natural person who resides in Fort Worth, Tarrant County, Texas.

Since none of the Petitioners share the same citizenship as Respondent Morgan Keegan, the parties are fully diverse.  The amount in controversy exceeds $75,000, exclusive of costs and interest.

4

**B.    VENUE**

The Southern District of Texas, Houston Division, is the District and Division in which the

arbitration hearings were conducted and the award was made.  Therefore, this Court is the proper

venue for the Motion to Vacate Arbitration Award pursuant to 9 U.S.C. § 9.

### III.    LEGAL STANDARD AND SUMMARY OF ISSUES

Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, a federal court has the

power to confirm, vacate, modify, or correct an arbitration award.  Section 10 of the FAA lists

grounds for vacating an award, including where the award was procured by "corruption," "fraud,"

or "undue means," and where the arbitrators were "guilty of misconduct," or "exceeded their

powers."  Pursuant to Section 11 of the FAA, a federal court may modify or correct an award based

on an "evident material miscalculation," "evident material mistake," and "imperfect[ions] in [a]

matter of form not affecting the merits."

Petitioners seek two forms of relief here: (1) an order from the Court commanding the

Director of FINRA to submit documents related to attorneys' fees to the arbitration panel for

clarification of the Award, pursuant to FINRA Rule 12905; and/or (2) vacatur of the Award under 9

U.S.C. §10.

### IV.    ARGUMENT AND AUTHORITIES

**A.    The Court Should Order the Director of FINRA to Submit Documents to the
Arbitrators to Clarify the Award**

In the Award, the arbitrators awarded Morgan Keegan $34,707.00 in costs and $399,416.00

in attorneys' fees. This award purports to make all Petitioners "jointly and severally liable" for the

fees and costs and is expressly "pursuant to Morgan Keegan Custom Agreement signed by all

Claimants…."  However, (a) no such agreement providing for joint and several liability on the

award of attorneys' fees was signed by all Claimants or any one of them; (b) no such agreement was

5

ever introduced into the record for all Claimants or any one of them; and (c) for most of the Claimants, there were no client agreements introduced into the record at all which allow for an award of attorneys' fees or costs. Thus, the Award clearly contains computational errors or mistakes in the description of persons or property which mandate correction. *See* FINRA Rule 12905. Therefore, this Court should order the Director of FINRA to submit additional documents to the arbitrators so that they may correct the incorrect Award.

**B.      The Award Should Be Vacated Because Arbitrator Thomas Martin Exceeded His Authority by Preventing Petitioners from Presenting Their Case**

The Court should vacate the Award because Arbitrator Martin exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(4). This is due to the fact that Arbitrator Martin continually fell asleep during the arbitration proceedings and therefore did not and could not have heard all of the evidence presented. By repeatedly falling asleep and willfully ignoring the proceedings, Arbitrator Martin essentially refused to participate fully in the hearings and prevented Petitioners from presenting their case to a full and complete Panel. Arbitrator Martin's gross misconduct was highly prejudicial to Petitioners and warrants the finding that the fairness and propriety of the arbitration hearings were impaired, thus mandating vacatur of the Award.

**C.      The Award Should Be Vacated Because Arbitrator Maurice Fallas Showed Evident Partiality Towards Morgan Keegan**

The Court should vacate the Award because there was evident partiality shown by Arbitrator Fallas during the proceedings. 9 U.S.C. § 10(a)(2). By showing evident partiality toward Morgan Keegan and its witnesses, Arbitrator Fallas violated the Code of Ethics for Commercial Arbitrators that FINRA arbitration is based upon and failed to uphold the integrity and fairness of the arbitration process.

6

For instance, on the second day of the arbitration, Claimants' expert, Dr. Craig McCann, testified for most of the day. Dr. McCann took questions from the arbitrators, including Arbitrator Fallas. However, the very next day Arbitrator Fallas showed his clear bias in his questioning of Morgan Keegan's representative, James Kelsoe:

> MR. FALLAS: At the bottom where the question is "Do you tend to invest in the lower level higher risk tranches of Morgan securities?" We had an expert witness yesterday who -- who, if I remember correctly, had an analysis that said that at some point in most of these Funds a big chunk was in the lower tranches. Like I remember a number of close to 90 percent in some cases. **Does that sound even potentially that it was ever --**

Arispe Arbitration Transcript at 777 (excerpts attached as Exhibit "D", emphasis added). It is clear from Arbitrator Fallas' question that he had not fairly weighed Dr. McCann's testimony the previous day and had simply waited to get the answer he wanted from Mr. Kelsoe, an interested witness to say the least. Arbitrator Fallas then continued the line of questioning and again showed his bias:

> MR. FALLAS: And it was also kind of explained to us that in -- particularly in the lower tranches and, you know -- you know, some of the lowest levels, that it's possible to -- before the entire trust evolves, there are those lower pieces that basically stop paying altogether and are essentially no good anymore, worth pennies, and even though they may have a nominal value, they essentially -- they've just gone away. They've sort of, you know, stopped – stopped being meaningful. **Is that even in the ballpark of the way it works?**
>
> THE WITNESS: Well, yes, I think that, generally speaking, that whenever you're looking at the more subordinated pieces of a capital structure, you certainly expect more risk at the bottom, right?

Arispe Arbitration Transcript at 778-79 (excerpts attached as Exhibit "D", emphasis added). Once again, it is clear that not only did Arbitrator Fallas not believe Dr. McCann's testimony; but that he never even fairly weighed his testimony before reaching the conclusion that he clearly wanted to reach all along. Interestingly, as can be seen, Mr. Kelsoe even confirmed what Dr. McCann had testified to the day before.

7

**D.      The Award Should Be Vacated Because Arbitrator Fallas Did Not Understand the Law and Was Not Qualified to Be an Arbitrator**

The Court should vacate the Award because Arbitrator Fallas clearly did not understand either the law or the facts and was not qualified to be a FINRA arbitrator.  It is clear from Mr. Fallas' questions during the arbitration that he was often confused about the testimony being given, did not understand the applicable law, was confused as to the legal process, and lacked a basic understanding of the necessary background facts to be the fair and impartial arbitrator that he held himself out to be.  *See* Exhibit "E", containing all of the questions and comments Mr. Fallas asked during the course of the arbitration.

**E.      The Award Should be Vacated Because the Arbitrators Relied on False Testimony**

One of the more important exhibits admitted at the arbitration was Claimants' Exhibit 285, a letter from PriceWaterhouseCoopers, the previous auditors of the Funders under Morgan Keegan, to Helios, the new managers of the closed-end bond funds at issue.  The letter stated, "Accordingly, we are writing to inform you that our audit reports dated May 29, 2008, May 21, 2007 and May 22, 2006 on the Funds' financial statements should no longer be relied upon."  A copy of this exhibit is attached as Exhibit "F".  Those audit reports had been included by Morgan Keegan in the annual reports for the Funds as a basis for believing that an objective third party was regularly auditing and "blessing" the information being put forth by Morgan Keegan about these Funds. There was testimony from Claimants' expert, Dr. Craig McCann, that this letter essentially constituted a withdrawal of the clean opinions the RMK Funds had received.  For instance, the following exchange took place during the cross-examination of Dr. McCann:

> Q. And those quarterly filings have been on file for several years, correct?
>
> A. Some of them, yes. Some of them fewer than three years; but, yeah, for instance, one of the filings would have been on file for two years, but some of them at most maybe three years.

8

Q. All right. And the information in those filings hasn't changed in the last year, correct?

A. No, I think it has. At least two of the filings that we're talking about include financial statements that have been withdrawn. So, I think that the filings have changed.

Q. A financial statement has been withdrawn?

A. Yeah. Maybe -- maybe a lawyer would say it differently, but I -- I think that the auditor of these Funds has said that the financial statements can no longer be relied upon and that they're withdrawing their audit opinion on them.

Q. Dr. McCann, can you show any document to this Panel that the auditor has in any way stated that the audit that they have given for any of these Funds is no longer deemed to be a clean audit?

A. Oh, yes. I think that Helios itself says it in a couple of places.

Q. Dr. McCann, in your reports you indicate, for example, on Tab 3, you indicate that RHY's identified -- this is Page 23 -- identifiable losses were in – you give a certain percentage -- in structured finance. You see that?

Arispe Arbitration Transcript at 486-87 (excerpts attached as Exhibit "G").  Dr.

McCann's testimony on this issue is obviously not unimportant.  Counsel for Morgan

Keegan clearly felt that it was an important issue and attempted to rebut Dr. McCann's

testimony that the audit reports had essentially been withdrawn.  What is interesting is that

Morgan Keegan Keegan's counsel seemingly accepts Dr. McCann's answer and moves to a

completely different topic without further discussion.  However, Morgan Keegan later had

its witnesses and experts all claim the audits were still valid.  For instance, Mr. Kjel Ekdahl,

Morgan Keegan's expert, testified as follows:

Q.   Okay.  Let's go ahead to the next slide.  Why have you included the auditor's opinion here?

A.   Well, just to show you that over time these annual reports were audited and that each and every time the -- the auditor's report gave the funds a clean bill of health.

Q.   Well, it's been suggested that those clean bills of health have been withdrawn.  Have they?

A.   No, I don't think they have.

Q.   Well, have you seen anything in your review of any of the filings indicating that the auditor's clean opinions were withdrawn?

A.   No, I have not.

Arispe Arbitration Transcript at 1532-33 (excerpts attached as Exhibit "H"). Morgan

Keegan's repeated emphasis to the Panel that the audit reports remained "clean" underscores

how important Morgan Keegan thought that point was. This only highlights the need for

vacatur given that the Panel was relying on clearly fraudulent and misleading testimony

from Morgan Keegan.

**F.     The Award Should be Vacated Because Collateral Estoppel Prevents Morgan Keegan from Re-Litigating These Claims**

As noted, the Petitioners currently before the Court initially filed their FINRA action with a

larger group of individuals who had all invested through the same Morgan Keegan broker, Mr.

Russell Stein. Pursuant to the Panel's Order in that initial matter, *Garrett, et al. v. Morgan Keegan,*

FINRA Proceeding No. 09-00683, (the *"Garrett* Proceeding"), Petitioners were severed into a

separate proceeding but pursued the exact same claims involving the exact same underlying facts as

those pursued in the *Garrett* Proceeding.

On October 5, 2010, FINRA issued the Panel's award in the *Garrett* Proceeding ("the

*Garrett* Award"). In the *Garrett* Award, Respondent was found liable for damages to the claimants

there, and the claimants were awarded their attorneys' fees and costs pursuant to the Texas

Securities Act (TSA). The Petitioners before the Court were in exactly the same position as the

claimants in the *Garrett* Proceeding, in that they were all clients of and received their information

about these funds solely through the same Morgan Keegan financial advisor, Russell Stein.

Because the exact same underlying facts support the claims of these Petitioners, the Panel should

vacate the Award since the Panel failed to apply the principles of collateral estoppel and allowed

Respondent to re-litigate the statutory and common-law fraud and TSA claims already fully

litigated and resolved through the *Garrett* Proceeding.

Preclusion of a previously-litigated issue under the doctrine of offensive collateral estoppel requires that the issue under consideration be identical to the issue previously litigated; that the issue was fully and vigorously litigated in the primary proceeding; that the previous determination of the issue was necessary for the judgment in that proceeding; and that no special circumstances exist that would render preclusion inappropriate or unfair. *Parklane Hosiery,* 439 U.S. 322, 326-32, 99 S.Ct. 645, 649-52 (1979); *Universal Am. Barge Corp. v. J-Chem, Inc.,* 946 F.2d 1131, 1136 (5th Cir. 1991).

There is ample authority for giving preclusive effect to issues resolved in arbitration if these requirements are met. In *Universal American Barge,* the Fifth Circuit rejected a challenge to the application of offensive collateral estoppel because the primary determination was rendered in an arbitration proceeding, rather than in a court of law. 946 F.2d at 1136. The Fifth Circuit explained:

> The United States Supreme Court declined to bar the offensive use of collateral estoppel from arbitration in subsequent federal court litigation, though the Court required consideration of the 'federal interests warranting protection.' In an arbitrable case not directly involving federal statutory or constitutional rights, courts should use a case-by-case approach to determining the collateral estoppel effects of arbitral findings.

*Id.* at 1136-37.

While Respondent may argue that the *Garrett* Award has not yet been confirmed, there is authority for the proposition that the arbitration award does not need to be confirmed by a court in order to be used for collateral estoppel purposes. Courts have held that an arbitration award can have preclusive effect, even though it is not confirmed and a judgment is not entered. In *Scurlock Oil Co. v. Smithwick,* the Texas Supreme Court held that, with an exception not applicable here, a trial court's judgment is final for purposes of res judicata and collateral estoppel despite a pending appeal. 724 S.W.2d 1, 6 (Tex.1986). In addition, our courts have recognized that an arbitration

11

award has the same effect as the judgment of a court of last resort. *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 266 (Tex. App.—Houston [14th Dist.] 1995, no writ); *J.J. Gregory Gourmet Services, Inc. v. Antone's Import Co.,* 927 S.W.2d 31 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *City of Baytown v. C.L. Winter, Inc.,* 886 S.W.2d 515, 518 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Albert v. Albert,* (Tex. Civ. App.—San Antonio 1965, 391 S.W.2d 186, writ ref'd n.r.e.); *see also* Restatement (Second) of Judgments, § 84 (an arbitration award "has the same effects under the rules of res judicata as a judgment of a court").

Because the Award from the *Garrett* Proceeding has already resolved Respondent's liability for Petitioners' statutory and common-law fraud and TSA claims, Petitioners therefore respectfully request that the Court vacate the Award in *Arispe et al. v. Morgan Keegan & Co., Inc.* since that Award violated the principles of collateral estoppel by reaching an entirely contradictory result.

**G.     The Attorneys' Fees and Costs Provisions of the Award Should be Vacated Since They Contain Irreconcilable Errors.**

Finally, and in the alternative, if the Court should choose not to vacate the entire Award then it should still vacate the award of both attorneys' fees and costs provisions since they are based on serious and irreconcilable errors by the arbitrators. The Award clearly states that the basis for the award of attorneys' fees to Morgan Keegan is the "Morgan Keegan Customer Agreement signed by all Claimants."

On their face, both the award of costs and the award of attorneys' fees contain grievous errors for at least five reasons: (1) none of the Claimants signed any agreement allowing for joint and several liability for either costs or attorneys' fees to Morgan Keegan; (2) the vast majority of the Morgan Keegan client agreements introduced into the record at the hearing do not provide for any award of attorneys' fees; (3) for those agreements that provide for an award of attorneys' fees,

12

they are expressly limited to fees incurred as a result of a claim brought by the Claimant; (4) no evidence was introduced into the Arbitration Record by Morgan Keegan identifying any amount of attorneys' fees attributable to the claim brought by each Claimant who signed an agreement providing for attorneys' fees; and (5) the only evidence introduced at the arbitration of attorneys' fees and costs by Respondent included fees for all claims brought by all Claimants, including fees incurred in the defense of Claimants who never signed an agreement providing for the recovery of attorneys' fees.

First, there is no document titled a "Morgan Keegan Customer Agreement" signed by all or any one of the Claimants. Consequently, the arbitrators' basis for their award of attorneys' fees is a clear mistake that must be corrected.

Second, none of the Claimants signed any agreement providing for joint and several liability for either costs or any attorneys' fees. For those few Claimants that did sign a client agreement containing an attorneys' fees provision, it contains the following language:

> Any expense, including attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in defense of *an action brought by the undersigned* against Morgan Keegan or its agents or employees in connection with any account of the undersigned shall be borne solely by the undersigned should Morgan Keegan prevail. (Emphasis added).

*See* Morgan Keegan client agreements, attached hereto as Exhibit "I". Notably, there is no language indicating that the Claimant would be jointly and severally liable for any fees whatsoever. More importantly, this provision makes clear that the Claimant is only liable for those attorneys' fees incurred as a result of the claims brought by *that* Claimant. Nowhere did the Claimant agree to be liable for fees incurred by Morgan Keegan in defending claims brought by other Claimants.

The Claimants entered into these agreements with Morgan Keegan on an individual basis and certainly did not agree to pay Morgan Keegan's legal expenses in defending any claims that

13

someone else might bring, even if they happen to be a part of the same proceeding. In this case, Morgan Keegan's evidence regarding their attorneys' fees and expenses was limited to the **total** amount of fees incurred. There was no attempt by Respondent to segregate fees per claim brought by the individual Claimants, nor was there any testimony of segregation at the arbitration hearing. *See* Exhibit "J", excerpt from transcript detailing the only evidence of Morgan Keegan's attorneys' fees and expenses.

Third, for at least 14 of the 22 Claimants, either *no* client agreements were entered into the record or the client agreements contained in the record do not have *any* provision for attorneys' fees or expenses. Thus, there is no evidence whatsoever that these Claimants ever agreed to pay the attorneys' fees or expenses of Morgan Keegan at all. The arbitration Panel made a mistake.

Additionally, for those Claimants whose agreements were entered into the record, there is no provision in which they agree to be jointly and severally liable for any fees. Since Morgan Keegan never offered any evidence that segregated their fees per Claimant's claim, there is no evidence upon which an award of attorneys' fees can be based under the agreement that permits recovery of attorneys' fees.

As a result, the award contains typographical and/or computational errors when it mandates that *all* Claimants will be *jointly and severally* liable to Respondent for attorneys' fees and expenses. Therefore, these Claimants should not be liable for any attorneys' fees.[2]

For those Claimants whose agreements contain an attorneys' fees provision, they should still not be liable for any fees since Morgan Keegan never segregated their fees on a per Claimant basis. Therefore, there is no evidence as to how much of the attorneys' fees should be allocated to each Claimant.

---

[2] There is no evidence that the following Claimants agreed to pay Morgan Keegan's attorneys' fees and/or expenses: Richard Arispe, Jimmy Burke, Peggy Burke, Todd Burke, Nancy Gordon, Susan Hackney, Don Jones, William Rhodes, Kenneth Sears, Sr., Kenneth Sears, Jr., Daniel Sears, Kenneth Sears, III, Judy Strickland, and Shana Stein.

14

## V.    PRAYER

Petitioners respectfully request that the Court (1) vacate the Award for the reasons outlined above; (2) in the alternative, vacate the award of attorneys' fees and costs wrongfully assessed against them; (3) order the Director of FINRA to submit additional documents to the arbitrators to clarify their Award; and (4) all other relief to which they may show themselves entitled.

Respectfully submitted

/s/ Paul J. Dobrowski
Paul J. Dobrowski
State Bar No.  05927100
SDTX. No. 3208

ATTORNEY IN CHARGE FOR PETITIONERS

OF COUNSEL:
**DOBROWSKI L.L.P.**
Bruce B. Kemp
State Bar No. 11255100
SDTX No. 92
Cody W. Stafford
State Bar No.  24043984
SDTX No.  1129436
4601 Washington Avenue, Suite 300
Houston, Texas  77007
Tel:    (713) 659-2900
Fax:    (713) 659-2908

## CERTIFICATE OF SERVICE

I hereby certify that all parties have been served with the foregoing document and any and all exhibits thereto via ECF and overnight delivery on this 21st day of March 2011:

Jennifer Tomsen
**GREENBERG TRAURIG, L.L.P.**
1000 Louisiana, Suite 1700
Houston, Texas 77002

Stephen Cormac Carlin
Penelope Brobst Blackwell
**GREENBERG TRAURIG, L.L.P.**
2200 Ross Avenue, Suite 5200

Dallas, Texas 75201

Terry R. Weiss
**GREENBERG TRAURIG, L.L.P.**
3290 Northside Parkway
Suite 400 The Forum
Atlanta, Georgia 30327

_/s/ Bruce B. Kemp_
Bruce B. Kemp