# CLIENT AGREEMENTS



# Morgan Keegan Client Agreement

PLEASE READ CAREFULLY, SIGN AND RETURN ONE EXECUTED COPY TO.

Morgan Keegan & Company, Inc.
Morgan Keegan Tower
Fifty Front Street
[illegible]

In consideration of Morgan Keegan & Company, Inc., or any successor thereto (hereinafter referred to as "Morgan Keegan") accepting, opening or maintaining one or more accounts of the undersigned (whether designated by name, number or otherwise) for the purchase, sale or carrying of securities, options, contracts relating thereto and/or other property (hereinafter collectively referred to as "property"), the undersigned agrees as follows:

1. Custom and usage. All transactions for the account of the undersigned shall be subject to all then-applicable federal and state laws and rules and regulations promulgated thereunder, and the constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse. This agreement shall be deemed modified to the extent necessary to conform with any changes in such laws, regulations, constitutions, customs and usages and as modified shall remain in full force and effect. Actual deliveries are intended on all transactions.

2. No modification. Except as herein provided, no provision of this agreement may be waived in any respect be waived, modified, amended or deleted. Nor shall acceptance of this agreement and any accounts thereunder by Morgan Keegan constitute ratification of any such changes, nor shall such acceptance prevent Morgan Keegan from asserting and enforcing the original provisions of this agreement as modified unless such changes are expressly agreed to in a document signed by the Manager of Morgan Keegan's Customer Service Department or his/her designee.

3. Discretionary trades; customer required to notify of unauthorized trades. NO EMPLOYEE OF MORGAN KEEGAN IS AUTHORIZED TO EFFECT TRADES FOR THE UNDERSIGNED WITHOUT THE UNDERSIGNED'S EXPRESS PRIOR APPROVAL UNLESS EXPRESSLY AGREED TO IN A SEPARATE WRITTEN GRANT OF DISCRETIONARY AUTHORITY SIGNED BY THE UNDERSIGNED AND THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT OR HIS/HER DESIGNEE. THE UNDERSIGNED AGREES TO BRING ANY UNAUTHORIZED ACTIVITY IMMEDIATELY TO THE ATTENTION OF THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT. The failure of the undersigned to immediately bring any unauthorized activity to the attention of the Manager of Morgan Keegan's Customer Service Department shall serve to ratify and accept such activity and shall preclude the undersigned from thereafter claiming that the employee acted without authorization to effect those or other transactions in or for the account of the undersigned.

4. Duty to examine statements and advise of errors. The undersigned will examine all statements, confirmations and other reports or notices upon receipt thereof from Morgan Keegan. Morgan Keegan may deem such statements, confirmations, reports or notices to have been accepted by the undersigned as correct and conclusive if the undersigned does not notify the Morgan Keegan Customer Service Department otherwise in writing within ten (10) days after receipt, except in regard to transactions in options and contracts relating thereto, in which notice of any discrepancies must be received within three (3) days of receipt. Any such notice from the undersigned, including notice of the non-receipt of any such report, will also be made by the undersigned via telephone directed to Morgan Keegan's Customer Service Department in Memphis, Tennessee. The undersigned acknowledges that due to the nature of the markets involved, positions confirmed or deleted in error may result in a substantial loss. Consequently, the undersigned agrees that if for any reason the undersigned fails to bring an error or discrepancy to Morgan Keegan's attention within the periods specified above, any loss shall be the responsibility and liability of the undersigned.

5. Arbitration. This provision relates to the arbitration of disputes:

(a) Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees and, by accepting, opening or maintaining any account for the undersigned, Morgan Keegan agrees that all controversies between the undersigned and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever, shall be determined by arbitration. Any arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., or an arbitration forum provided by any other securities exchange or organization of which Morgan Keegan is a member, and in accordance with the rules of such organization. The undersigned may elect in the first instance which of the aforementioned arbitration forums will be utilized to resolve the controversy by delivering written notification of such election to Morgan Keegan at Morgan Keegan's office in Memphis, Tennessee. If the undersigned fails to make such election by notifying Morgan Keegan of such election as specified within five (5) days after receipt from Morgan Keegan of a request to make such election, then Morgan Keegan may make such election.

This arbitration provision shall apply to any controversy or claim or issue in any controversy arising from events which occurred prior to, on or subsequent to the execution of this arbitration agreement. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Notwithstanding anything in this agreement to the contrary, no person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:

(i) the class certification is denied; or
(ii) the class is decertified; or
(iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

6. Orders, deliveries and notices. Any orders to sell securities placed by the undersigned shall include an implied representation by the undersigned that the undersigned owns the security, and if the security is not in Morgan Keegan's possession at the time of the contract for sale, the undersigned agrees to deliver the security to Morgan Keegan by settlement date. Morgan Keegan shall not be required to deliver to the undersigned the same securities deposited or received but only securities of the same kind and amount, and Morgan Keegan shall not be required or in any way obligated to give the undersigned notice regarding any security Morgan Keegan may hold in the undersigned's account or accounts relating to 1) call for payment, 2) default in payment of principal or interest, or receivership, bankruptcy or reorganization of the issuer of any security, and the fact that such information may be given shall not constitute a waiver of this provision.

7. Security interest in property. As security for the payment of all liabilities and obligations the undersigned may have to Morgan Keegan now or in the future, the undersigned grants Morgan Keegan a general lien and security interest in all monies and property of the undersigned or in which the undersigned may have an interest carried by Morgan Keegan at any time in any accounts of the undersigned (either individually, jointly or otherwise) or which may at any time be in Morgan Keegan's possession or under its control for any purpose. In enforcing its security interest, and in addition to the rights provided herein, Morgan Keegan shall have all the rights and remedies available to a secured party under the Tennessee Uniform Commercial Code.

8. Loan of customer's securities. Until Morgan Keegan receives written notice of revocation from the undersigned, Morgan Keegan is hereby authorized to lend to itself as broker or to others any securities held by Morgan Keegan on margin for the account of, or under the control of, the undersigned.

9. Payment of loans on demand. The undersigned agrees to pay on demand any balance owing with respect to any of the undersigned's accounts, including interest and commissions. The undersigned understands that Morgan Keegan may demand full payment of the balance due in the undersigned's accounts plus any interest charges accrued thereon, at Morgan Keegan's sole option, at any time without cause and whether or not such demand is made for Morgan Keegan's protection. That is, loans are not made for any specific term or duration but rather are due and payable at Morgan Keegan's discretion upon a demand for payment made to the undersigned. The undersigned agrees that Morgan Keegan may at its sole option apply payments of interest, dividends, premium and principal received on any of the collateral, or other proceeds, to the satisfaction of such collateral or upon the sale of the collateral, to the payment of the balance due in the undersigned's accounts or pay such amounts to the undersigned.

10. Maintenance of collateral. The undersigned understands that the properties in the undersigned's Margin Account may be carried in Morgan Keegan's general loans and may be pledged or hypothecated by Morgan Keegan separately or in common with other properties. The pledge or hypothecation by Morgan Keegan may secure Morgan Keegan's indebtedness equal to or greater than the amount owed to Morgan Keegan by the undersigned. The undersigned agrees to deposit additional collateral, or Morgan Keegan may in its discretion require from time to time, in the form of cash or securities in accordance with the rules and regulations of the Federal Reserve Board, the New York Stock Exchange, other national securities exchanges, associations or regulatory agencies under whose jurisdictions Morgan Keegan is subject, and Morgan Keegan's own minimum house margin maintenance requirements. To the extent the undersigned no longer maintains a debit balance or an indebtedness to Morgan Keegan, it is understood that Morgan Keegan will fully segregate all securities in the undersigned's accounts in Morgan Keegan's safekeeping or control, directly or through a recognized clearinghouse and/or depository [illegible].

11. Interest charges and payments. The undersigned agrees to pay interest, to the extent not prohibited by the laws of the State of Tennessee, upon all amounts advanced and other balances due in the undersigned's accounts in accordance with Morgan Keegan's usual custom, which may include the compounding of interest. Morgan Keegan's custom as to such charge from time to time will be set forth in a Statement of Credit Terms or similar document, which is incorporated herein by reference. By entering into any transaction with Morgan Keegan after the undersigned receives the Statement of Credit Terms, the undersigned acknowledges that the undersigned has read and agreed to the Statement of Credit Terms for all past and future transactions in the undersigned's account. The undersigned understands that interest on all debit balances shall be payable on demand and that in the absence of any demand interest shall be due on the first business day of each interest period. The undersigned's daily net debit balance will include accrued interest that the undersigned has not paid, plus any other interest payable, if any. The undersigned understands that to the extent permitted by applicable law Morgan Keegan may charge the undersigned interest on the unpaid interest previously added to the undersigned's debit balance, that is, Morgan Keegan may charge the undersigned compound interest. Payments of interest and principal and all other payments made by the undersigned under this agreement shall be made to Morgan Keegan's main office in Memphis, Tennessee.

12. Liquidation of collateral. Should the undersigned fail to make any payment or deliver any property to Morgan Keegan when due, fail to maintain in the accounts of the undersigned with Morgan Keegan collateral of sufficient value to meet Morgan Keegan's then-current requirements or otherwise fail to discharge any obligation to Morgan Keegan, or should the undersigned die, or should Morgan Keegan for any reason whatsoever deem it necessary for its protection, Morgan Keegan is hereby authorized to sell any securities or other property in any account of the undersigned with Morgan Keegan or buy in any property which any such account may be short, or otherwise to effect settlement, or cancel any outstanding orders to satisfy any such requirement or obligation. Any such sale, purchase, settlement or cancellation may be made at Morgan Keegan's discretion and at the prevailing commission rates on any exchange or market where such business is transacted or at public auction or private sale without notice to the undersigned and without advertisement, tender or demand of any kind on the undersigned, such notice, advertisement, tender or demand being hereby expressly waived by the undersigned. Morgan Keegan may purchase any such property for its own account or on behalf of anyone else free from any right of redemption. The undersigned shall remain liable for any deficiency in any account of the undersigned. The undersigned shall also be liable for any fines, assessments or other costs levied against Morgan Keegan by any exchange, clearinghouse or regulatory authority resulting from the failure of the undersigned to deliver or otherwise make available any property sold by Morgan Keegan at the direction of the undersigned. No tender, demand, call or notice by Morgan Keegan shall constitute a waiver of any right to take any other action permitted hereunder at the time or in the future. The failure of Morgan Keegan to enforce its rights under this paragraph, this agreement or any other agreement between the undersigned and Morgan Keegan shall not act as a waiver of any such rights nor preclude Morgan Keegan from exercising those rights thereafter.

13. Authority to transact business. Each of the parties who executes this agreement in a representative or fiduciary capacity represents and warrants to Morgan Keegan that he/she has the requisite authority to enter into and operate under this agreement on behalf of his/her principal, and for the risk and in the name of the principal. If this agreement is signed in a representative capacity by more than one person, and unless written notice to the contrary is provided to the Manager of Morgan Keegan's Customer Service Department prior to the transaction of any business in the account, each such person represents and warrants that any one of them, acting alone, may buy, sell and otherwise deal in stocks, bonds, options and other securities, listed or unlisted for present or future delivery, on margin or otherwise, and to deposit cash, withdraw and receive payment or delivery in regard to said account from Morgan Keegan of money, stocks, bonds and other negotiable instruments, securities and other property.

14. Capacity; notice of changed circumstances. The undersigned represents that, unless the Manager of Morgan Keegan's Customer Service Department has been notified in writing to the contrary: the undersigned, if a natural person, has reached the age of majority; the undersigned is not insolvent; the undersigned is not an employee of any securities exchange, or of any corporation of which any such exchange owns a majority of the capital stock, or of any member of any such exchange, or of a member firm, corporation or organization registered with any such exchange, or of a bank, trust company or insurance company or of any corporation, firm or individual engaged in the business of dealing either as a broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper; the undersigned is not registered with any securities exchange, association or commission; and no one except the undersigned has an interest in any account of the undersigned with Morgan Keegan. The undersigned agrees that he will promptly notify the Manager of Morgan Keegan's Customer Service Department in writing of any change in the circumstances affecting the foregoing representations.

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
| --- | --- | --- | --- |

MUST CHECK ONE BOX AT RIGHT BEFORE SIGNATURE ☑ CASH ☐ MARGIN

Signature [signature] Date 11-20-01

Signature Date

Signature Date

Signature Date

15. Default of exchange. Morgan Keegan shall not be liable to the undersigned for any default by a market or exchange on which the undersigned may have acquired a position. The undersigned understands that exchanges may change terms, rules and procedures which may affect markets adversely; the exchange may also default on a duty to pay its obligation or may be unable to take or make delivery of positions traded thereon.

16. Limits on transactions. Morgan Keegan may limit the number of securities, options or contracts related thereto which it will place, buy, sell or hold for the account of the undersigned and reserves the right to cease accepting orders for additional securities, options or contracts related thereto from the undersigned at any time.

17. Morgan Keegan recommendations as opinions. Morgan Keegan's recommendations are recognized by the undersigned as opinions since such suggestions may deal with future developments that cannot be predicted with certainty, and Morgan Keegan is under no obligation to keep the undersigned abreast of developments in the market concerning securities, options or contracts related thereto, and the undersigned shall be responsible for remaining informed of those developments.

18. Inconsistent recommendations possible; trades create commissions. Morgan Keegan may from time to time make recommendations concerning the advisability of buying, selling or holding securities, options or contracts relating thereto, or employing a trading method or program. The market activities of Morgan Keegan or any of its officers, directors, employees, customers or shareholders may be inconsistent with the recommendations of Morgan Keegan to the undersigned. Morgan Keegan is in the business of providing securities account services, many of which result in the generation of brokerage commissions. If the undersigned elects to follow a trading program, such a program may result in a higher number of trades being made and a resulting greater amount of commissions being generated in the undersigned's account.

19. Commissions, fees and charges. The undersigned agrees that commissions and fees will be charged to the account in accordance with Morgan Keegan policy. Commissions and fee amounts may be changed from time to time by Morgan Keegan without notice to the undersigned. Such fees may include but not be limited to a service charge in the event any account produces no commission revenue in a calendar year and a service charge for accounts transferred to other firms. The undersigned agrees that in the event payment is not made by settlement date for securities purchased in a cash account of the undersigned, to the extent provided by law, a late charge may be imposed at the maximum rate of interest set forth in the Statement of Credit Terms from the settlement date to the date of payment.

20. Permission to obtain credit reports. The undersigned authorizes Morgan Keegan to obtain information concerning credit and business conduct of the undersigned as Morgan Keegan deems such to be appropriate. Upon written request from the undersigned, credit reports in the possession of Morgan Keegan will be provided to the undersigned, including the name and address of the consumer credit reporting agency which provided the report.

21. Receipt of checks; crediting checks when paid. All checks from the undersigned to be credited to the undersigned's account with Morgan Keegan shall be payable or endorsed to Morgan Keegan & Company, Inc. Morgan Keegan may in its discretion (a) refuse to accept for the undersigned's account checks payable to any party other than the undersigned and (b) accept checks for collection only, which checks shall not be credited to the undersigned's account until paid.

22. Attorney's fees. Any expense, including costs and attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in collection of a deficit from the undersigned or in enforcing Morgan Keegan's rights under this agreement shall be borne solely by the undersigned. Any expense, including attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in defense of an action brought by the undersigned against Morgan Keegan or its agents or employees in connection with any account of the undersigned shall be borne solely by the undersigned should Morgan Keegan prevail.

23. Notice delivered to undersigned when mailed to account address. Communications directed to the undersigned at the address then appearing on the account of the undersigned, sent by ordinary mail or delivered to such address, shall be deemed to have been personally delivered to the undersigned whether or not actually received.

24. Notice to Morgan Keegan. Unless otherwise specified, any notice required by this agreement to be given by the undersigned to Morgan Keegan shall be addressed to the Manager of Morgan Keegan's Customer Service Department at Morgan Keegan's Home Office at Fifty North Front Street, Memphis, Tennessee 38103, or at such other address as Morgan Keegan may instruct in writing.

25. Ratification of prior transactions. All transactions and dealings with Morgan Keegan prior to the execution of this agreement are hereby ratified by the undersigned and the undersigned hereby agrees that all such transactions and dealings are subject to all terms and provisions of this agreement as if they had taken place subsequent to the execution hereof.

26. Invalidity of provision not affecting enforceability of agreement. In the event any provision or clause of this agreement shall be deemed invalid, void or unenforceable for any reason, that determination shall not affect the remainder of this agreement, which shall continue in full force and effect.

27. Acceptance of agreement by Morgan Keegan. Except as provided in paragraph 2 with respect to modification, the acceptance, opening or maintenance of an account for the undersigned by Morgan Keegan shall constitute acceptance of this agreement by Morgan Keegan without signature hereon.

28. Joint Accounts.

a. If this is a Joint Account, the undersigned agree that they each shall have authority on behalf of this account to buy, sell and otherwise deal in securities through Morgan Keegan as broker; to receive for the account confirmations, statements and communications of every kind; to receive for the account and to dispose of money, securities and other property; to make, terminate, or modify for the account, agreements relating to these matters or waive any of the provisions of such agreements; and generally to deal with Morgan Keegan as if each of the undersigned alone was the account owner, all without notice to the other account owners. The undersigned agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account.

b. Morgan Keegan may follow the instructions of any of the undersigned concerning this account and make deliveries to any of the undersigned, of any or all securities in this account, and make payments to any of the undersigned, of any or all monies in this account as any of the undersigned may order and direct, even if such deliveries and/or payments shall be made to one of the undersigned personally, and not for this account. Morgan Keegan shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and Morgan Keegan shall not be bound to see to the application or disposition of the said securities and/or monies so delivered or paid to any of the undersigned.

c. In the event of the death of any of the undersigned, the survivor(s) shall immediately give Morgan Keegan written notice thereof, and Morgan Keegan may, before or after receiving such notice, take such proceedings, require such documents, retain such portion and/or restrict transactions in the account as Morgan Keegan may deem advisable to protect Morgan Keegan against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any of the undersigned who shall have died shall be liable and each survivor will be liable, jointly and severally, to Morgan Keegan for any debt or loss in this account resulting from the completion of transactions initiated prior to Morgan Keegan's receipt of a written notice of such death or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

d. Any taxes or other expenses becoming a lien against or being payable out of the account as the result of the death of any of the undersigned, or through the exercise by his or her estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent. This provision shall not release the decedent's estate from any liability provided for in this agreement.

e. DESIGNATION OF TENANCY:

i. Joint Tenants with Rights of Survivorship/when one dies his or her interest passes to the survivor(s).

Morgan Keegan may presume that it is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants-in-common, unless otherwise provided by striking this paragraph ("i") and filling in the terms of paragraph ("ii") hereafter. In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor(s) on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability.

ii. Tenants-in-Common without Rights of Survivorship/ when one dies, his or her interest passes to his or her estate.

Morgan Keegan may presume that if we strike paragraph ("i") above and fill in the terms of this paragraph ("ii") below, it is the express intention of the undersigned to create an estate or account as tenants-in-common without rights of survivorship and not as joint tenants. Our interests in the account shall be set forth below. In the event of the death of either or any of the undersigned, the interests in the account shall be determined as of the close of business on the date of death of the decedent (or on the next following business day if the date of death is not a business day) as follows:

| | | |
|---|---|---|
| *Name of Tenant | or his or her estate % | Note: Total percentages must equal 100% |
| *Name of Tenant | or his or her estate % | |
| *Name of Tenant | or his or her estate % | |

*Indicate names and percentage amounts of the interests of each tenant. The only names to be inserted are those of the present owners of the account; heirs or beneficiaries CANNOT be designated on this form.

29. Non-objecting beneficial owners. Under rule 14b-1(c) of the Securities Exchange Act, Morgan Keegan is required to disclose to the issuer the name, address, and securities position of its customers who are beneficial owners of that issuer's securities unless the customer objects.

30. Sweep of free credit balances. Morgan Keegan may sweep all free credit balances daily into a money market fund as designated by the undersigned, or in the event no money market fund is designated, the undersigned authorizes Morgan Keegan to credit interest on free credit balances maintained for investment or reinvestment on behalf of the undersigned. The rate of interest paid on these balances will be published periodically by Morgan Keegan, and will vary with market conditions. The policies and procedures governing this payment of interest can be changed at any time. The undersigned agrees that no funds will be swept or receive interest unless the minimum investment requirement is met.

PLEASE SWEEP MY CREDIT BALANCES INTO MY MONEY FUND, WHICH IS:

☐ Money Market ☐ Tax-Exempt ☐ Government Obligations

31. Tax certification. Under penalties of perjury, the undersigned certifies (1) that the number shown on this form is the correct taxpayer identification number for the undersigned and (2) that the undersigned is not subject to backup withholding as a result of failure to report all interest or dividends, or the Internal Revenue Service has notified the undersigned that the undersigned is no longer subject to backup withholding. (The undersigned understands that if he/she has been notified by the IRS that he/she is subject to backup withholding as a result of dividend or interest underreporting, he/she must cross out the information contained in clause (2) of this paragraph.)

32. Receipt of order flow payment. Client securities orders may be executed with Morgan Keegan itself, with other broker dealers, or through the exchanges on which the securities are listed. Several of these market facilities offer automated execution services. Morgan Keegan's order routing among the execution facilities depends upon various factors such as the trading characteristics of the particular security and the size of the order. The participants to whom Morgan Keegan directs orders will execute such orders at or within the displayed national best bid or offer ("NBBO"), subject to order size and liquidity of markets, thus providing the opportunity for best execution of both limit and market orders. Morgan Keegan may receive additional cash remuneration, known as order flow payment, in some instances.

33. Risk of Loss Disclosures: You understand, acknowledge and agree that (i) the account is not insured by the Federal Deposit Insurance Corporation (FDIC); (ii) the account is not a deposit Account or other obligation of, or guaranteed by, Regions Financial Corporation or any of its banking or other affiliates; and (iii) the funds held in the account are subject to investment risks, including possible loss of the principal amount invested. The banking affiliates of Regions Financial Corporation may be lenders to issuers of securities that we underwrite. You should refer to disclosure documents relating to particular securities for a discussion of any such lending relationship.

NOTICE: Any person, whether married, unmarried or separated, may apply for a separate account.

| NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

THE UNDERSIGNED ACKNOWLEDGES THAT THE UNDERSIGNED HAS RECEIVED A DUPLICATE OF THIS AGREEMENT; AND THAT THIS AGREEMENT CONTAINS A BINDING AND ENFORCEABLE PREDISPUTE ARBITRATION PROVISION IN PARAGRAPH 5 ON PAGE 1 HEREOF.

X Client's Signature [signature] Date

X Other Client's Signature Date

All communications for this account are to be mailed to:

NAME SUZANN S. JONES - SEPARATE PROPERTY

ADDRESS 4300 HWY 290 EAST

CITY BRENHAM STATE TX ZIP 77833

BUSINESS PHONE ( )

HOME PHONE ( 979 - 836 - 6190

PLEASE PRINT YOUR NUMBERS LIKE THIS 1 2 3 4 5 6 7 8 9 0

Account Number: 3 2 1 0 5 9 1 8 RR: H 0 R S

The Social Security or Tax ID Number on Morgan Keegan's records is: 4 5 1 6 4 4 5 2 0

The Social Security or Tax ID Number should be: (do not enter dashes)

FORM 000020 (REV. 10/01) DETACH & RETURN ONLY THIS EXECUTED PAGE TO MORGAN KEEGAN ORIGINAL

Morgan Keegan & Company, Inc.
IRA AGREEMENT AND NEW ACCOUNT APPROVAL

TYPE OF ACCOUNT: ☐ TRADITIONAL IRA ☑ ROLLOVER IRA ☐ EDUCATION IRA ☐ SIMPLE IRA ☐ ROTH IRA ☐ SEP/IRA (Simplified Employee Pension)

Legal Name (First, Middle Initial, Last): Richard R. Arispe
Social Security No / Tax ID No: 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
Account No: 7324-0293
Office / RR No: HORS
Additional Name:
Mailing Address (If Different):
Street Address - Home: 6326 Viva Max Dr.
Telephone: 210 680-9024
City/County: San Antonio State: TX Zip +4: 78238-4315
Date of Birth: 4/20/46
Marital Status: ☑ M ☐ S ☐ D ☐ W
☐ CONFIRMATION ☐ STATEMENT ☐ SPECIAL

DUPLICATES TO: Name / Street / City / State / Zip +4 / Telephone

Employer (Name): TX State Dist. Council of Carpenters
Type of Business: Labor Union
Occupation: Secretary
Employer's Address: 5364 Fredericksburg Rd. #130 San Antonio TX
Telephone: 210. 366.4133
Spouse's Name: LAURA G. ARISPE
Spouse's Employer: N/A
Type of Business: N/A
Occupation: Homemaker
No. of Dependents (include self): 2
U.S. Citizen ☐ YES ☐ NO
If not, Citizen of:
IS CUSTOMER RELATED TO ANY EMPLOYEE OF MORGAN KEEGAN? ☐ YES ☑ NO
Name of Employee: N/A
Relationship:

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH | INVESTMENT EXPERIENCE NUMBER OF YEARS: | |
|---|---|---|---|---|
| ☐ UNDER $50,000 | ☐ UNDER $100,000 | ☐ UNDER $100,000 | STOCKS 5 | TAX-FREE BONDS |
| ☒ $50,000 - $100,000 | ☒ $100,000 - $300,000 | ☒ $100,000 - $300,000 | OPTIONS | MUTUAL FUNDS 5 |
| ☐ $100,000 - $150,000 | ☐ $300,000 - $500,000 | ☐ $300,000 - $500,000 | TAXABLE BONDS | COMMODITIES |
| ☐ OVER $150,000 | ☐ $500,000 - $1,000,000 | ☐ $500,000 - $1,000,000 | INS/ANNUITIES 1 | OTHER |
| | ☐ OVER $1,000,000 | ☐ OVER $1,000,000 | | |

SOURCE OF INFORMATION: ☑ CLIENT ☐ BROKER'S ESTIMATE ☐ OTHER (list)
TAX STATUS: 30
INITIAL TRANSACTION (Specify Purchase or Sale, Quantity, Etc): transfer from Vanguard

INVESTMENT OBJECTIVES (List all that apply) NUMBER IN ORDER OF PRIORITY: 1 GROWTH 2 INCOME 3 SPECULATION 4 Tax advantage

ACCOUNT OBTAINED BY:
☐ CALL IN ☐ REFERRAL - NAME OF REFERRING PERSON ☐ ADVERTISING LEAD
☐ WALK IN ☑ PERSONAL ACQUAINTANCE - HOW LONG HAVE YOU KNOWN CLIENT? ☐ OTHER

IS ACCOUNT OPERATED BY PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? ☐ YES ☑ NO
Name of Authorized Agent/Investment Advisor: N/A

OTHER CURRENT ACCOUNTS: ☑ NONE
A. WITH MORGAN KEEGAN - LIST ACCOUNT NUMBERS
B. WITH OTHER FIRMS - LIST

**FEE SCHEDULE**

ANNUAL CUSTODIAL FEE $35.00
TERMINATION FEE $50.00

Each account will be charged a set-up fee and a custodial fee. The custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability, a termination fee will be charged.

☐ CREDIT INTEREST
☐ BEDFORD GOVT. MM

I designate the Bedford Money Market Fund for this Account unless the Bedford Government Fund or Credit Interest box is checked. I also acknowledge receipt of the appropriate Fund Prospectus.

AGREEMENTS REQUIRED
☐ OPT ☐ POA
☐ PROL ☐ WRAP
☐ OTHER USER CODED

MORGAN KEEGAN IS REQUIRED TO DISCLOSE TO THE ISSUER OF SECURITIES ITS CUSTOMER'S NAME, ADDRESS AND SECURITIES POSITIONS UNLESS THE CUSTOMER OBJECTS. THIS INFORMATION WILL BE DISCLOSED FOR THIS ACCOUNT UNLESS ☐ IS CHECKED.

DOES BROKER HAVE A BENEFICIAL OR PERSONAL INTEREST IN THIS ACCOUNT? ☐ YES ☑ NO

IS CLIENT OR ANY MEMBER OF THE IMMEDIATE FAMILY AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? ☐ YES ☑ NO

IS THE BROKER REGISTERED IN THE STATE WHERE THE CUSTOMER RESIDES? ☑ YES ☐ NO

IS CLIENT AN OFFICER, DIRECTOR, OR 10% SHAREHOLDER OF A PUBLIC CORPORATION OR ANY RESTRICTED SECURITIES OF A PUBLIC CORPORATION? ☐ YES ☑ NO

IF YES, PLEASE LIST THE CORPORATIONS

BENEFICIARY(IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiaries:

| | BENEFICIARY | SSN | DATE OF BIRTH | RELATIONSHIP | % | MUST CIRCLE ONE |
|---|---|---|---|---|---|---|
| 1 | LAURA G. ARISPE | 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 | 08/31/69 | SPOUSE | 100 | (PRIMARY) CONTINGENT |
| 2 | | | / / | | | PRIMARY CONTINGENT |
| 3 | | | / / | | | PRIMARY CONTINGENT |
| 4 | | | / / | | | PRIMARY CONTINGENT |

In order to change beneficiary(ies), you must deliver a written designation to Morgan Keegan & Co. Inc. as custodian.

| NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

I ACKNOWLEDGE THIS INFORMATION TO BE ACCURATE. I ALSO ACKNOWLEDGE THAT I HAVE RECEIVED AND FULLY UNDERSTAND THE TERMS AND CONDITIONS OF THE MORGAN KEEGAN & COMPANY, INC. IRA DISCLOSURE STATEMENT AND THE MORGAN KEEGAN & COMPANY, INC. CUSTODIAL ACCOUNT AGREEMENT ("CUSTODIAL ACCOUNT AGREEMENT"). I APPOINT MORGAN KEEGAN & CO. AS CUSTODIAN OF MY IRA/SEP/SIMPLE ACCOUNT AND ADOPT THE MORGAN KEEGAN & COMPANY, INC. IRA CUSTODIAL ACCOUNT AGREEMENT AND AGREE TO ANY SUBSEQUENT AMENDMENTS THERETO. I UNDERSTAND THAT THE CUSTODIAL ACCOUNT AGREEMENT HEREBY ADOPTED CONTAINS A PRE-DISPUTE ARBITRATION PROVISION IN ARTICLE XIV ON PAGES 20-21 WHICH MAY BE ENFORCED BY THE PARTIES.

CUSTOMER'S SIGNATURE: Richard R. Arispe DATE: 8/14/02
BROKER: Russell W. Stein DATE: 8/14/02
BRANCH MANAGER: Leslie D. Barnett DATE: 9-6-02

FM #18 (Rev. 2/01)

MAIN OFFICE COPY

PLEASE READ CAREFULLY, SIGN AND RETURN ONE EXECUTED COPY TO: Morgan Keegan Tower, Fifty Front Street, Memphis, TN 38103

# Morgan Keegan Client Agreement

In consideration of Morgan Keegan & Company, Inc., or any successor thereof (hereinafter referred to as "Morgan Keegan"), accepting, opening or maintaining one or more accounts of the undersigned (whether designated by name, number or otherwise) for the purchase, sale or carrying of securities, options, contracts relating thereto, and/or other property (hereinafter collectively referred to as "property"), the undersigned agrees as follows:

1. Custom and usage. All transactions for the account of the undersigned shall be subject to all then-applicable federal and state laws and rules and regulations promulgated thereunder, and the constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse. This agreement shall be deemed modified to the extent necessary to conform with any changes in such laws, regulations, constitutions, customs and usages and as modified shall remain in full force and effect. Actual deliveries are intended on all transactions.

2. No modification. Except as herein provided, no provision of this agreement as printed shall in any respect be waived, modified, amended or deleted, nor shall acceptance of this agreement and any accounts thereunder by Morgan Keegan constitute ratification of any such changes, nor shall such acceptance prevent Morgan Keegan from asserting and enforcing the original provisions of this agreement as printed unless such changes are expressly agreed to in a document signed by the Manager of Morgan Keegan's Customer Service Department or his/her designee.

3. Discretionary trades; customer required to notify of unauthorized trades. NO EMPLOYEE OF MORGAN KEEGAN IS AUTHORIZED TO EFFECT TRADES FOR THE UNDERSIGNED WITHOUT THE UNDERSIGNED'S EXPRESS PRIOR APPROVAL UNLESS EXPRESSLY AGREED TO IN A SEPARATE WRITTEN GRANT OF DISCRETIONARY AUTHORITY SIGNED BY THE UNDERSIGNED AND THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT OR HIS/HER DESIGNEE; THE UNDERSIGNED AGREES TO BRING ANY UNAUTHORIZED ACTIVITY IMMEDIATELY TO THE ATTENTION OF THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT. The failure of the undersigned to immediately bring any unauthorized activity to the attention of the Manager of Morgan Keegan's Customer Service Department shall serve to ratify and adopt such activity and shall preclude the undersigned from thereafter claiming that the employee lacked express authorization to effect those or other transactions in or for the account of the undersigned.

4. Duty to examine statements and advise of errors. The undersigned will examine all statements, confirmations and other reports or notices upon receipt thereof from Morgan Keegan. Morgan Keegan may deem such statements, confirmations, reports or notices to have been accepted by the undersigned as correct and conclusive if the undersigned does not notify the Morgan Keegan Customer Service Department otherwise in writing within ten (10) days after receipt, except in regard to transactions in options and contracts relating thereto, wherein notice of any discrepancies must be provided within three (3) days of receipt. Any such notice from the undersigned, including notice of the non-receipt of any such report, will also be made by the undersigned via telephone directed to Morgan Keegan's Customer Service Department in Memphis, Tennessee. The undersigned acknowledges that due to the nature of the markets involved, positions confirmed or deleted in error may result in a substantial loss. Consequently, the undersigned agrees that if for any reason the undersigned fails to bring an error or discrepancy to Morgan Keegan's attention within the periods specified above, any loss will be the responsibility and liability of the undersigned.

5. Arbitration. This provision relates to the arbitration of disputes:

(a) Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees and, by accepting, opening or maintaining any account for the undersigned, Morgan Keegan agrees that all controversies between the undersigned and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever, shall be determined by arbitration. Any arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., or an arbitration forum provided by any other securities exchange or organization of which Morgan Keegan is a member, and in accordance with the rules of such organization. The undersigned may elect in the first instance which of the aforementioned arbitration forums will be utilized to resolve the controversy by delivering written notification of such election to Morgan Keegan at Morgan Keegan's office in Memphis, Tennessee. If the undersigned fails to make such election by notifying Morgan Keegan of such election as specified within five (5) days after receipt from Morgan Keegan of a request to make such election, then Morgan Keegan may make such election.

This arbitration provision shall apply to any controversy or claim or issue in any controversy arising from events which occurred prior to, on or subsequent to the execution of this arbitration agreement. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Notwithstanding anything in this agreement to the contrary, no person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:

(i) the class certification is denied; or
(ii) the class is decertified; or
(iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

6. Orders; deliveries and notices. Any orders to sell securities placed by the undersigned shall include an implied representation by the undersigned that the undersigned owns the security, and if the security is not in Morgan Keegan's possession at the time of the contract for sale, the undersigned agrees to deliver the security to Morgan Keegan by settlement date. Morgan Keegan shall not be required to deliver to the undersigned the same securities deposited or received, but only securities of the same kind and amount; and Morgan Keegan shall not be required or in any way obligated to give the undersigned notice regarding any security Morgan Keegan may hold in the undersigned's account or accounts relating to 1) call for payment, 2) default in payment of principal or interest, or 3) receivership, bankruptcy or reorganization of the issuer of any security, and the fact that such information may be given shall not constitute a waiver of this provision.

7. Security interest in property. As security for the payment of all liabilities and obligations the undersigned may have to Morgan Keegan now or in the future, the undersigned grants Morgan Keegan a general lien and security interest in all monies and property of the undersigned or in which the undersigned may have an interest carried by Morgan Keegan at any time in any account of the undersigned (held either individually, jointly or otherwise) or which may at any time be in Morgan Keegan's possession or under its control for any purpose. In enforcing its security interest, and in addition to the rights provided herein, Morgan Keegan shall have all the rights and remedies available to a secured party under the Tennessee Uniform Commercial Code.

8. Loan of customer's securities. Until Morgan Keegan receives written notice of revocation from the undersigned, Morgan Keegan is hereby authorized to lend to itself as broker or to others any securities held by Morgan Keegan on margin for the account of, or under the control of, the undersigned.

9. Payment of Loans on Demand. The undersigned agrees to pay on demand any balance owing with respect to any of the undersigned's accounts, including interest and commissions. The undersigned understands that Morgan Keegan may demand full payment of the balance due in the undersigned's accounts plus any interest charges accrued thereon, at Morgan Keegan's sole option, at any time without cause and whether or not such demand is made for Morgan Keegan's protection. That is, loans are not made for any specific term or duration but rather are due and payable at Morgan Keegan's discretion upon a demand for payment made to the undersigned. The undersigned agrees that Morgan Keegan may at its sole option apply payments of interest, dividends, premium and principal received on any of the collateral, whether pursuant to the terms of such collateral or upon the sale of the collateral, to the payment of the balance due in the undersigned's accounts or pay such amounts to the undersigned.

10. Maintenance of collateral. The undersigned understands that the properties in the undersigned's Margin Account may be carried in Morgan Keegan's general loans and may be pledged or hypothecated by Morgan Keegan separately or in common with other properties. The pledge or hypothecation by Morgan Keegan may secure Morgan Keegan's indebtedness equal to or greater than the amount owed to Morgan Keegan by the undersigned. The undersigned agrees to deposit additional collateral, as Morgan Keegan may in its discretion require from time to time, in the form of cash or securities in accordance with the rules and regulations of the Federal Reserve Board, the New York Stock Exchange, other national securities exchanges, associations or regulatory agencies under whose jurisdictions Morgan Keegan is subject, and Morgan Keegan's own minimum house margin maintenance requirements. In the event the undersigned no longer maintains a debit balance or an indebtedness to Morgan Keegan, it is understood that Morgan Keegan will fully segregate all securities in the undersigned's accounts in Morgan Keegan's safekeeping or control (directly or through a clearinghouse) and/or deliver them to the undersigned upon request.

11. Interest charges and payments. The undersigned agrees to pay interest, to the extent not prohibited by the laws of the State of Tennessee, upon all amounts advanced and other balances due in the undersigned's accounts in accordance with Morgan Keegan's usual custom, which may include the compounding of interest. Morgan Keegan's custom, which may change from time to time, will be set forth in a Statement of Credit Terms or similar document, which is incorporated herein by reference. By entering into any transactions with Morgan Keegan after the undersigned receives the Statement of Credit Terms, the undersigned acknowledges that the undersigned has read and agreed to the Statement of Credit Terms for all past and future transactions in the undersigned's account. The undersigned understands that interest on all debit balances shall be payable on demand and that in the absence of any demand interest shall be due on the first business day of each interest period. The undersigned's daily net debit balance will include accrued interest that the undersigned has not paid during prior interest periods, if any. The undersigned understands that to the extent permitted by applicable law Morgan Keegan may charge the undersigned interest on the unpaid interest previously added to the undersigned's debit balance; that is, Morgan Keegan may charge the undersigned compound interest. Payments of interest and principal and all other payments made by the undersigned under this agreement shall be made to Morgan Keegan's main office in Memphis, Tennessee.

12. Liquidation of collateral. Should the undersigned fail to make any payment or deliver any property to Morgan Keegan when due, fail to maintain in any account of the undersigned with Morgan Keegan collateral of sufficient value to meet Morgan Keegan's then-current requirements or otherwise fail to discharge any obligation to Morgan Keegan, or should the undersigned die, or should Morgan Keegan for any reason whatsoever deem it necessary for its protection, Morgan Keegan is hereby authorized to sell any securities or other property in any account of the undersigned with Morgan Keegan or buy-in any property which any such account may be short, or otherwise effect settlement, or cancel any outstanding orders to satisfy any such requirement or obligation. Any such sale, purchase, settlement or cancellation may be made at Morgan Keegan's discretion and at its prevailing commission rates on any exchange or market where such business is transacted or at public auction or private sale without notice to the undersigned and without advertisement, tender or demand of any kind on the undersigned, such notice, advertisement, tender or demand being hereby expressly waived by the undersigned. Morgan Keegan may purchase any such property for its own account or on behalf of anyone else free from right of redemption. The undersigned shall remain liable for any deficiency in any account of the undersigned. The undersigned shall also be liable for any fines, assessments or other costs levied against Morgan Keegan by any exchange, clearinghouse or regulatory authority resulting from the failure of the undersigned to deliver or otherwise make available any property sold by Morgan Keegan at the direction of the undersigned. No tender, demand, call or notice by Morgan Keegan shall constitute a waiver of any right to take any other action permitted hereunder at the time or in the future. The failure of Morgan Keegan to enforce its rights under this paragraph, this agreement or any other agreement between the undersigned and Morgan Keegan shall not act as a waiver of any such rights nor preclude Morgan Keegan from exercising those rights thereafter.

13. Authority to transact business. Each of the parties who executes this agreement in a representative or fiduciary capacity represents and warrants to Morgan Keegan that he/she has the requisite authority to enter into and operate under this agreement on behalf of his/her principal, and for the risk and in the name of the principal. If this agreement is signed in a representative capacity by more than one person, and unless written notice to the contrary is provided to the Manager of Morgan Keegan's Customer Service Department prior to the transaction of any business in the account, each such person represents and warrants that any one of them, acting alone, may buy, sell and otherwise deal in stocks, bonds, options and other securities, listed or unlisted for present or future delivery, on margin or otherwise and to deposit with, withdraw and receive payment or delivery in regard to said account from Morgan Keegan of money, stocks, bonds, and other negotiable instruments, securities and other property.

14. Capacity; notice of changed circumstances. The undersigned represents that, unless the Manager of Morgan Keegan's Customer Service Department has been notified in writing to the contrary: the undersigned, if a natural person, has reached the age of majority; the undersigned is not insolvent; the undersigned is not an employee of any securities exchange, or of any corporation of which any such exchange owns a majority of the capital stock, or of any member of any such exchange, or of a member firm, corporation or organization registered with any such exchange, or of a bank, trust company or insurance company or of any corporation, firm or individual engaged in the business of dealing either as a broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper; the undersigned is not registered with any securities exchange, association or commission; and no one except the undersigned has an interest in any account of the undersigned with Morgan Keegan. The undersigned agrees that he will promptly notify the Manager of Morgan Keegan's Customer Service Department in writing of any change in his circumstances affecting the foregoing representations.

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

MUST CHECK ONE BOX AT RIGHT BEFORE SIGNATURE ☒ CASH ☐ MARGIN

Signature X Jose J. Collado — Date Nov 13/2002

X Adela C. Collado — Date Nov 13/2002

Date

15. Default of exchange. Morgan Keegan shall not be liable to the undersigned for any default by a market or exchange on which the undersigned may have acquired a position. The undersigned understands that exchanges may change terms, rules and procedures which may affect markets adversely; the exchange may also default on a duty to pay its obligation or may be unable to take or make delivery of positions traded thereon.

16. Limits on transactions. Morgan Keegan may limit the number of securities, options or contracts related thereto which it will place, buy, sell or hold for the account of the undersigned and reserves the right to cease accepting orders for additional securities, options or contracts related thereto from the undersigned at any time.

17. Morgan Keegan recommendations as opinions. Morgan Keegan's recommendations are recognized by the undersigned as opinions since such suggestions may deal with future developments that cannot be predicted with certainty, and Morgan Keegan is under no obligation to keep the undersigned abreast of developments in the market concerning securities, options or contracts related thereto, and the undersigned shall be responsible for remaining informed of those developments.

18. Inconsistent recommendations possible; trades create commissions. Morgan Keegan may from time to time make recommendations concerning the advisability of buying, selling or holding securities, options or contracts relating thereto, or employing a trading method or program. The market activities of Morgan Keegan or any of its officers, directors, employees, customers or shareholders may be inconsistent with the recommendations of Morgan Keegan to the undersigned. Morgan Keegan is in the business of providing securities account services, many of which result in the generation of brokerage commissions. If the undersigned elects to follow a trading program, such a program may result in a higher number of trades being made and a resulting greater amount of commissions being generated in the undersigned's account.

19. Commissions, fees and charges. The undersigned agrees that commissions and fees will be charged to the account in accordance with Morgan Keegan policy. Commissions and fee amounts may be changed from time to time by Morgan Keegan without notice to the undersigned. Such fees may include but not be limited to a service charge in the event any account produces no commission revenue in a calendar year and a service charge for accounts transferred to other firms. The undersigned agrees that in the event payment is not made by settlement date for securities purchased in a cash account of the undersigned, to the extent provided by law, a late charge may be imposed at the maximum rate of interest set forth in the Statement of Credit Terms from the settlement date to the date of payment.

20. Permission to obtain credit reports. The undersigned authorizes Morgan Keegan to obtain information concerning credit and business conduct of the undersigned as Morgan Keegan deems such to be appropriate. Upon written request from the undersigned, credit reports in the possession of Morgan Keegan will be provided to the undersigned, including the name and address of the consumer credit reporting agency which provided the report.

21. Receipt of checks; crediting checks when paid. All checks from the undersigned to be credited to the undersigned's account with Morgan Keegan shall be payable or endorsed to Morgan Keegan & Company, Inc. Morgan Keegan may in its discretion (a) refuse to accept for the undersigned's account checks payable to any party other than the undersigned and (b) accept checks for collection only, which checks shall not be credited to the undersigned's account until paid.

22. Attorney's fees. Any expense, including costs and attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in collection of a deficit from the undersigned or in enforcing Morgan Keegan's rights under this agreement shall be borne solely by the undersigned. Any expense, including attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in defense of an action brought by the undersigned against Morgan Keegan or its agents or employees in connection with any account of the undersigned shall be borne solely by the undersigned should Morgan Keegan prevail.

23. Notice delivered to undersigned when mailed to account address. Communications directed to the undersigned at the address then appearing on the account of the undersigned, sent by ordinary mail or delivered to such address, shall be deemed to have been personally delivered to the undersigned whether or not actually received.

24. Notice to Morgan Keegan. Unless otherwise specified, any notice required by this agreement to be given by the undersigned to Morgan Keegan shall be addressed to the Manager of Morgan Keegan's Customer Service Department at Morgan Keegan's Home Office at Fifty North Front Street, Memphis, Tennessee 38103, or at such other address as Morgan Keegan may instruct in writing.

25. Ratification of prior transactions. All transactions and dealings with Morgan Keegan prior to the execution of this agreement are hereby ratified by the undersigned and the undersigned hereby agrees that all such transactions and dealings are subject to all terms and provisions of this agreement as if they had taken place subsequent to the execution hereof.

26. Invalidity of provision not affecting enforceability of agreement. In the event any provision or clause of this agreement shall be deemed invalid, void or unenforceable for any reason, that determination shall not affect the remainder of this agreement, which shall continue in full force and effect.

27. Acceptance of agreement by Morgan Keegan. Except as provided in paragraph 2 with respect to modification, the acceptance, opening or maintenance of an account for the undersigned by Morgan Keegan shall constitute acceptance of this agreement by Morgan Keegan without signature hereon.

28. Joint Accounts.

a. If this is a Joint Account, the undersigned agree that they each shall have authority on behalf of this account to buy, sell and otherwise deal in securities through Morgan Keegan as broker; to receive for the account confirmations, statements and communications of every kind; to receive for the account and to dispose of money, securities and other property; to make, terminate, or modify for the account, agreements relating to these matters or waive any of the provisions of such agreements; and generally to deal with Morgan Keegan as if each of the undersigned alone was the account owner, all without notice to the other account owners. The undersigned agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account.

b. Morgan Keegan may follow the instructions of any of the undersigned concerning this account and make deliveries to any of the undersigned, of any or all securities in this account, and make payments to any of the undersigned, of any or all monies in this account as any of the undersigned may order and direct even if such deliveries and/or payments shall be made to one of the undersigned personally, and not for this account. Morgan Keegan shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and Morgan Keegan shall not be bound to see to the application or disposition of the said securities and/or monies so delivered or paid to any of the undersigned.

c. In the event of the death of any of the undersigned, the survivor(s) shall immediately give Morgan Keegan written notice thereof, and Morgan Keegan may, before or after receiving such notice, take such proceedings, require such documents, retain such portion and/or restrict transactions in the account as Morgan Keegan may deem advisable to protect Morgan Keegan against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any of the undersigned who shall have died shall be liable and each survivor will be liable, jointly and severally, to Morgan Keegan for any debt or loss in this account resulting from the completion of transactions initiated prior to Morgan Keegan's receipt of a written notice of such death or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

d. Any taxes or other expenses becoming a lien against or being payable out of the account as the result of the death of any of the undersigned, or through the exercise by his or her estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent. This provision shall not release the decedent's estate from any liability provided for in this agreement.

e. DESIGNATION OF TENANCY:

f. Joint Tenants with Rights of Survivorship/when one dies his or her interest passes to the survivor(s).

Morgan Keegan may presume that it is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants-in-common, unless otherwise provided by striking this paragraph ("f") and filling in the terms of paragraph ("i") hereafter. In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor(s) on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability.

i. Tenants-in-Common without Rights of Survivorship/ when one dies, his or her interest passes to his or her estate.

Morgan Keegan may presume that if we strike paragraph ("f") above and fill in the terms of this paragraph ("i") below, it is the express intention of the undersigned to create an estate or account as tenants-in-common without rights of survivorship and not as joint tenants. Our interests in the account shall be set forth below. In the event of the death of either or any of the undersigned, the interests in the account shall be determined as of the close of business on the date of death of the decedent (or on the next following business day if the date of death is not a business day) as follows:

| | | | |
|---|---|---|---|
| *Name of Tenant | or his or her estate | % | Note: Total percentages must equal 100% |
| *Name of Tenant | or his or her estate | % | |
| *Name of Tenant | or his or her estate | % | |

*Indicate names and percentage amounts of the interests of each tenant. The only names to be inserted are those of the present owners of the account; heirs or beneficiaries CANNOT be designated on this form.

29. Non-objecting beneficial owners. Under rule 14b-1(c) of the Securities Exchange Act, Morgan Keegan is required to disclose to the issuer the name, address, and securities position of its customers who are beneficial owners of that issuer's securities unless the customer objects.

30. Sweep of free credit balances. Morgan Keegan may sweep all free credit balances daily into a money market fund as designated by the undersigned, or in the event no money market fund is designated, the undersigned authorizes Morgan Keegan to credit interest on free credit balances maintained for investment or reinvestment on behalf of the undersigned. The rate of interest paid on these balances will be published periodically by Morgan Keegan, and will vary with market conditions. The policies and procedures governing this payment of interest can be changed at any time. The undersigned agrees that no funds will be swept or receive interest unless the minimum investment requirement is met.

PLEASE SWEEP MY CREDIT BALANCES INTO MY MONEY FUND, WHICH IS:

☐ Money Market ☐ Tax-Exempt ☐ Government Obligations

31. Tax certification. Under penalties of perjury, the undersigned certifies (1) that the number shown on this form is the correct taxpayer identification number for the undersigned and (2) that the undersigned is not subject to backup withholding as a result of failure to report all interest or dividends, or the Internal Revenue Service has notified the undersigned that the undersigned is no longer subject to backup withholding. (The undersigned understands that if he/she has been notified by the IRS that he/she is subject to backup withholding as a result of dividend or interest underreporting, he/she must cross out the information contained in clause (2) of this paragraph.)

32. Receipt of order flow payment. Client securities orders may be executed with Morgan Keegan itself, with other broker dealers, or through the exchanges on which the securities are listed. Several of these market facilities offer automated execution services. Morgan Keegan's order routing among the execution facilities depends upon various factors such as the trading characteristics of the particular security and the size of the order. The participants to whom Morgan Keegan directs orders will execute such orders at or within the displayed national best bid or offer ("NBBO"), subject to order size and liquidity of markets, thus providing the opportunity for best execution of both limit and market orders. Morgan Keegan may receive additional cash remuneration, known as order flow payment, in some instances.

33. Risk of Loss Disclosures: You understand, acknowledge and agree that (i) the account is not insured by the Federal Deposit Insurance Corporation (FDIC); (ii) the account is not a deposit account or other obligation of, or guaranteed by, Regions Financial Corporation or any of its banking or other affiliates; and (iii) the funds held in the account are subject to investment risks, including possible loss of the principal amount invested. The banking affiliates of Regions Financial Corporation may be lenders to issuers of securities that we underwrite. You should refer to disclosure documents relating to particular securities for a discussion of any such lending relationship.

NOTICE: Any person, whether married, unmarried or separated, may apply for a separate account.

| NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

THE UNDERSIGNED ACKNOWLEDGES THAT THE UNDERSIGNED HAS RECEIVED A DUPLICATE OF THIS AGREEMENT; AND THAT THIS AGREEMENT CONTAINS A BINDING AND ENFORCEABLE PREDISPUTE ARBITRATION PROVISION IN PARAGRAPH 5 ON PAGE 1 HEREOF.

X Client's Signature: [signature] Date: 6/29/03 X Other/Client's Signature: [signature] Date: 6/29/03

All communications for this account are to be mailed to:
NAME: Jose J. Collado & Adela Christine Collado JTWROS
ADDRESS: 3021 S.W. 102 Ave.
CITY: Miami STATE: Florida ZIP: 33165
BUSINESS PHONE: (305) 485-5535 HOME PHONE: (305) 220-7041

PLEASE PRINT YOUR NUMBERS LIKE THIS 1 2 3 4 5 6 7 8 9 0

| Account Number | RR | The Social Security or Tax ID Number on Morgan Keegan's records is: | The Social Security or Tax ID Number should be: (do not enter dashes) |
|---|---|---|---|
| 52109450 | H05D | 262749714 | |

FORM 100020 (REV 10/01) DETACH & RETURN ONLY THIS EXECUTED PAGE TO MORGAN KEEGAN ORIGINAL

Morgan Keegan & Company, Inc New Account Form

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT MOR-MGN | ACCOUNT DESCRIPTION INDIVIDUAL | FA NUMBER 1IORS | ACCOUNT NUMBER 31097173

ACCOUNT TITLE: WILLIAM A. RHODES JR.

PRIMARY SSN/TID or FOREIGN # 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

DATE OF BIRTH (mm/dd/yyyy) 05/09/1948

TELEPHONE # HOME (281)859-3554 MOBILE

SECONDARY SSN/TID or FOREIGN #

DATE OF BIRTH (mm/dd/yyyy)

US CITIZEN/RESIDENT ALIEN (GREEN CARD) Yes
CITIZEN OF WHAT COUNTRY

NUMBER OF DEPENDENTS 1 | MARITAL STATUS SINGLE

HOME ADDRESS
15919 MESA GARDENS DRIVE
CITY HOUSTON STATE TX ZIP 77095

PRIMARY OWNER EMPLOYMENT INFORMATION EMPLOYED
EMPLOYER NAME ZENITH ADMINISTRATORS TYPE OF BUSINESS ADMINISTRATIVE
ADDRESS 5455 WEST SAM HOUSTON PARKWAY SUITE 400 HOUSTON, TX 77095
POSITION/TITLE PROFESSIONAL TELEPHONE (713)218-1213 FAX

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| Over $150,000 | $100,000 - $500,000 | $100,000 - $500,000 | 33% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

1 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE - YEARS

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | OVER 5 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? PERSONAL ACQUAINTANCE

INITIAL TRANSACTION DEPOSIT AMOUNT 50,000.00 SYMBOL/CUSIP

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No | IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No NAME RELATIONSHIP

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? Yes | DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? No FIRM NAMES

IS THIS CLIENT A REGIONS EMPLOYEE? No | IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY

IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM

DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No

WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR

FUND OPTION REGIONS FDIC FUND (20)

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Hold street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

By signing below, I/we acknowledge that I/we have read, received, understand and agree to abide by all the terms and conditions set forth in the Client Agreement and Disclosure Statement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I/We have REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I/we have retained a copy of the AGREEMENT STATEMENT for my/our records. I/we have been advised that the above identity information provided will be verified. **The arbitration agreement is set forth in Section 5 Page 2 of the accompanying Agreement and Disclosure Statement **

Russell W. Atkin 3/27/07 — FINANCIAL ADVISOR SIGNATURE, DATE
APPROVED 03/23/2007 DATE
[signature] 3-27-07 — BRANCH MANAGER SIGNATURE, DATE

William A. Rhodes 3/23/07 — CLIENT SIGNATURE, DATE

CLIENT SIGNATURE DATE

CLIENT SIGNATURE DATE

CLIENT SIGNATURE DATE

You must sign in blue or black ink.

Morgan Keegan & Company, Inc.

IRA AGREEMENT AND NEW ACCOUNT APPROVAL

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT: (select one) ☑ TRADITIONAL IRA ☐ ROTH IRA ☐ SEP IRA (Simplified Employee Pension) ☐ SIMPLE IRA ☐ Coverdell Education Savings Account (ESA)

FA NUMBER: HORS

ACCOUNT NUMBER: 73279443

LEGAL NAME (FIRST MIDDLE INITIAL LAST): William A. Rhodes, Jr. - RLVR

SOCIAL SECURITY / TAX ID NUMBER: 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

DATE OF BIRTH (mm/dd/yyyy): 5/9/48

MARITAL STATUS: (select one) MARRIED ☐ SINGLE ☑

US CITIZEN YES ✓ NO __ IF NO, CITIZEN OF WHAT COUNTRY?

SPOUSE'S NAME: N/A

TELEPHONE NUMBER: HOME 281-859-3554 MOBILE 713-806-5110

NUMBER OF DEPENDENTS: 2

FEE SCHEDULE

ANNUAL CUSTODIAL FEE $35

TERMINATION FEE $75

A custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability a termination fee will be charged.

HOME ADDRESS: (STREET ADDRESS - NO PO BOX ALLOWED) 15919 Mesa Gardens Dr

CITY Houston STATE TX ZIP 77095

DUPLICATE MAILING ADDRESS: CONFIRMATION __ STATEMENT __ BOTH __

NAME

CITY STATE ZIP

ALTERNATE MAILING ADDRESS:

NAME

CITY STATE ZIP

PRIMARY OWNER EMPLOYMENT INFORMATION: EMPLOYER NAME Lear [illegible] Administrations

ADDRESS 9535 W. Sam Houston Pkwy S. #410, Houston, TX 77099

POSITION TITLE V.P./[illegible] TELEPHONE 713-219-1213 TYPE OF BUSINESS Administrative

RETIRED ☐ IF RETIRED COMPANY NAME HOMEMAKER ☐

APPROXIMATE ANNUAL INCOME: 160,000

APPROXIMATE LIQUID NET WORTH: 200,000

APPROXIMATE NET WORTH: 300,000

TAX BRACKET: 33%

INVESTMENT OBJECTIVES (PLEASE RANK IN ORDER OF PRIORITY ALL THAT APPLY - 1 HIGHEST - 4 LOWEST - MINIMUM OF ONE MUST BE SELECTED)

1 GROWTH SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH.

3 INCOME SEEKS INCOME THE FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS.

2 TAX ADVANTAGE PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES.

4 SPECULATION SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY.

INVESTMENT EXPERIENCE (ENTER YEARS OF EXPERIENCE FOR EACH CATEGORY)

MUNI BONDS 20 CORP BONDS ___ GOVT BONDS 20 COMMON STK 20 PREF STOCK ___

MM FUNDS 20 LTD PTNSHP ___ INSURANCE ___ MUTUAL FNDS ___ OPTIONS ___

WRAP ACCOUNTS ___ UITS ___ TX FREE BD ___ FIXED ANNU ___ VAR ANNU ___ TAXABLE BD ___

HOW WAS THE ACCOUNT OBTAINED? CALL IN __ WALK IN __ PERSONAL ACQUAINTANCE. HOW LONG 8 yrs ADVERTISING LEAD __ REFERRAL __ OTHER __ REGIONS REFERRAL __ REGIONS REFERRAL CODE __

INITIAL TRANSACTION: (FOR ALL EXCEPT TRANSFERS, NEED TO INCLUDE AMOUNT AND SYMBOL/CUSIP)

PURCHASE ☐ SALE ☐ DEPOSIT ☐ TRANSFER ☑ Wachovia Securities

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? YES __ NO ✓

IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? YES __ NO ✓ IF YES, WHO AND THE RELATIONSHIP

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? YES __ NO ✓

DOES THIS CLIENT HAVE ACCOUNTS AT OTHER FIRMS? YES __ NO ✓ IF YES, PLEASE LIST FIRM NAMES

IS THIS CLIENT A REGIONS EMPLOYEE? YES __ NO ✓

Q1 IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR > 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? YES __ NO ✓ IF YES WHAT COMPANY?

Q2 IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? YES __ NO ✓ NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM

Q3 DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? YES __ NO ✓

Q4 IS THE BROKER REGISTERED IN THE STATE WHERE THE CLIENT RESIDES? YES ✓ NO __

Q5 WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? YES __ NO ✓ IF YES, NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR

UNINVESTED FUNDS SWEEP: SELECT ONE. REGIONS FDIC (20) __ OTHER Fund 91

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiary(ies):

| BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | MUST CIRCLE ONE |
|---|---|---|---|---|
| 1. William A Rhodes III | 7/29/76 | Son | 50 | (PRIMARY) SECONDARY |
| 2. Amy E. Rhodes | 7/7/81 | Daughter | 50 | (PRIMARY) SECONDARY |
| 3. (Share & share alike) | | | | PRIMARY SECONDARY |
| 4. | | | | PRIMARY SECONDARY |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

I ACKNOWLEDGE THIS INFORMATION TO BE ACCURATE. I ALSO ACKNOWLEDGE THAT I HAVE RECEIVED AND FULLY UNDERSTAND THE TERMS AND CONDITIONS OF THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL RETIREMENT ACCOUNT DISCLOSURE STATEMENT AND THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL ACCOUNT CUSTODIAL ACCOUNT AGREEMENT ("CUSTODIAL ACCOUNT AGREEMENT"). I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THE INFORMATION IS CORRECT. I APPOINT MORGAN KEEGAN & COMPANY, INC. AS CUSTODIAN OF MY IRA/ROTH IRA/SIMPLE IRA/COVERDELL ESA ACCOUNT AND ADOPT THE CUSTODIAL ACCOUNT AGREEMENT AND AGREE TO ANY SUBSEQUENT AMENDMENTS THERETO. I UNDERSTAND THAT THE CUSTODIAL ACCOUNT AGREEMENT HEREBY ADOPTED CONTAINS A PRE-DISPUTE ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE BEEN ADVISED THAT THE ABOVE IDENTITY INFORMATION WILL BE VERIFIED.

William A Rhodes 1/9/04

CLIENT SIGNATURE DATE

Russell W. Allen 1/20/04 — BROKER SIGNATURE, DATE

SOB 1-27-04 — BOM INITIALS APPROVED, DATE

Leslie D. Barnett 1-27-04 — BRANCH MANAGER SIGNATURE, DATE

Morgan Keegan & Company, Inc
IRA NEW ACCOUNT FORM

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT: CASH | ACCOUNT DESCRIPTION: IRA - ROLLOVER IRA | FA #: HOJR | ACCOUNT NUMBER: 77390227

ACCOUNT TITLE: JIMMY A. BURKE - ROLLOVER IRA

SSN/TID or FOREIGN #: 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

DATE OF BIRTH (mm/dd/yyyy): 10/22/1939

MARITAL STATUS: MARRIED

SPOUSE'S NAME:

US CITIZEN/RESIDENT ALIEN (GREEN CARD): Yes

CITIZEN OF WHAT COUNTRY:

TELEPHONE # HOME (281)479-2683 MOBILE

NUMBER OF DEPENDENTS: 0

HOME ADDRESS: 119 WEST 6TH STREET

CITY: DEER PARK STATE: TX ZIP: 77536

FEE SCHEDULE

ANNUAL CUSTODIAL FEE: $35

TERMINATION FEE: $75

A custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability, a termination fee will be charged

PRIMARY OWNER EMPLOYMENT INFORMATION: RETIRED

EMPLOYER NAME: SHELL OIL COMPANY TYPE OF BUSINESS: OIL BUSINESS

ADDRESS:

POSITION/TITLE: MANAGERS TELEPHONE: FAX:

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| $65,000 - $124,999 | $500,000 - $1,000,000 | $1,000,000 - $5,000,000 | 28% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

2 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK VOLATILITY AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | UNDER 1 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? OTHER

INITIAL TRANSACTION: DEPOSIT AMOUNT: 800,000.00 SYMBOL/CUSIP:

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No

IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No NAME: RELATIONSHIP:

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? No

DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? Yes FIRM NAMES: FIDELITY

IS THIS CLIENT A REGIONS EMPLOYEE? No

IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY:

IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM:

DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No

WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR:

FUND OPTION: DREYFUS GENERAL (71)

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Hold street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiaries:

| BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | PRIMARY/CONTINGENT |
|---|---|---|---|---|
| JIMMY & PEGGY BURKE REV LIVING TRUST PER TRUST | 05/12/1994 | TRUST | 100.00 | PRIMARY |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

By signing below, I acknowledge that I have read, received, understand and agree to abide by all the terms and conditions set forth in the Custodial Account Agreement and Disclosure Statement incorporated herein by this reference. The Custodial Account Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I have retained a copy of the Custodial Account Agreement and Disclosure Statement for my records. I have been advised that the above identity information provided will be verified. **The arbitration agreement is set forth in Section 5, Pages 3-5 of the accompanying Custodial Account Agreement and Disclosure Statement.**

[signature] 10/7/05 DH 09/05/2005 [signature] 10/7/05
BROKER SIGNATURE DATE BOM INITIALS APPROVED DATE BRANCH MANAGER SIGNATURE DATE

[signature] 9/19/2005
CLIENT SIGNATURE DATE

You must sign in blue or black ink.

Morgan Keegan & Company, Inc
IRA NEW ACCOUNT FORM

77391035

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT: CASH | ACCOUNT DESCRIPTION: IRA - ROLLOVER IRA | FA #: HOJR | ACCOUNT NUMBER: 77391035

ACCOUNT TITLE: PEGGY E. BURKE - ROLLOVER IRA
SSN/TID or FOREIGN #: 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
DATE OF BIRTH (mm/dd/yyyy): 05/25/1941
MARITAL STATUS: MARRIED
SPOUSE'S NAME:
US CITIZEN/RESIDENT ALIEN (GREEN CARD): Yes
CITIZEN OF WHAT COUNTRY:
TELEPHONE # HOME (281)479-2583 MOBILE
NUMBER OF DEPENDENTS: 0
HOME ADDRESS: 119 WEST 8TH STREET
CITY: DEER PARK STATE: TX ZIP: 77536

FEE SCHEDULE
ANNUAL CUSTODIAL FEE $35
TERMINATION FEE 175
A custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability, a termination fee will be charged.

PRIMARY OWNER EMPLOYMENT INFORMATION: RETIRED
EMPLOYER NAME: DUPONT
TYPE OF BUSINESS: CONSUMER PRODUCTS ETC.
ADDRESS:
POSITION/TITLE: PROFESSIONAL
TELEPHONE:
FAX:

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| $65,000 - $124,999 | $500,000 - $1,000,000 | $1,000,000 - $5,000,000 | 28% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

2 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | UNDER 1 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? OTHER
INITIAL TRANSACTION: TRANSFER: TRANSFER FROM MERRILL LYNCH AMOUNT SYMBOL/CUSIP
IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No
IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No NAME: RELATIONSHIP:
DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? No
DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? Yes FIRM NAMES: MERRILL LYNCH
IS THIS CLIENT A REGIONS EMPLOYEE? No
IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY:
IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM:
DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No
WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR:
FUND OPTION: DREYFUS GENERAL (71)

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Hold street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiaries:

| BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | PRIMARY/CONTINGENT |
|---|---|---|---|---|
| JIMMY & PEGGY BURKE REV LIVING TRUST | 03/12/1994 | TRUST | 100.00 | PRIMARY |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

By signing below, I acknowledge that I have read, received, understand and agree to abide by all the terms and conditions set forth in the Custodial Account Agreement and Disclosure Statement incorporated herein by this reference. The Custodial Account Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I have retained a copy of the Custodial Account Agreement and Disclosure Statement for my records. I have been advised that the above identity information provided will be verified. **The arbitration agreement is set forth in Section 5, Pages 3-5 of the accompanying Custodial Account Agreement and Disclosure Statement.**

[signature] 10/7/05 DH. 09/08/2005 [signature] 10/7/05
FINANCIAL ADVISOR SIGNATURE DATE BOM INITIALS APPROVED DATE BRANCH MANAGER SIGNATURE DATE

[signature: Peggy E. Burke] 9/19/05
CLIENT SIGNATURE DATE
You must sign in blue or black ink.

Morgan Keegan & Company, Inc New Account Form 30613731

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT MOR - CASH | ACCOUNT DESCRIPTION INDIVIDUAL | FA NUMBER HDJR | ACCOUNT NUMBER 30613731

ACCOUNT TITLE TODD G. BURKE

PRIMARY SSN/TID or FOREIGN # 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 | DATE OF BIRTH (mm/dd/yyyy) 05/20/1966

TELEPHONE # HOME (713)797-5989 MOBILE

SECONDARY SSN/TID or FOREIGN # | DATE OF BIRTH (mm/dd/yyyy)

US CITIZEN/RESIDENT ALIEN (GREEN CARD) Yes
CITIZEN OF WHAT COUNTRY

NUMBER OF DEPENDENTS 0 | MARITAL STATUS SINGLE

HOME ADDRESS
9400 DOLIVER #74
CITY HOUSTON STATE TX ZIP 77063

PRIMARY OWNER EMPLOYMENT INFORMATION EMPLOYED
EMPLOYER NAME SMITH AND ASSOCIATES
ADDRESS 5306 HOLLISTER HOUSTON, TX 77040
TYPE OF BUSINESS DISTRIBUTOR
POSITION/TITLE PROFESSIONAL TELEPHONE (713)334-7175 FAX

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| Over $150,000 | $100,000 - $500,000 | $500,000 - $1,000,000 | 35% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

2 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES.

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE - YEARS

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | OVER 5 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? OTHER REFERRAL

INITIAL TRANSACTION TRANSFER AMOUNT SYMBOL/CUSIP

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No | IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No NAME RELATIONSHIP

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? No | DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? Yes FIRM NAMES: SMITH BARNEY

IS THIS CLIENT A REGIONS EMPLOYEE? No | IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY:

IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM:

DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No

WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR

FUND OPTION REGIONS FDIC FUND (20)

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Held street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

By signing below, I/we acknowledge that I/we have read, received, understand and agree to abide by all the terms and conditions set forth in the Client Agreement and Disclosure Statement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I/We have REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I/we have retained a copy of the AGREEMENT STATEMENT for my/our records. I/we have been advised that the above identity information provided will be verified. "The arbitration agreement is set forth in, Section 5, Page 2 of the accompanying Agreement and Disclosure Statement."

[signature] 3/2/2006
[signature] 3/2/06 DI 3 02/17/2006 [signature] 3-2-06
FINANCIAL ADVISOR SIGNATURE DATE APPROVED DATE BRANCH MANAGER SIGNATURE DATE

[signature] 2-25-06
CLIENT SIGNATURE DATE CLIENT SIGNATURE DATE

CLIENT SIGNATURE DATE CLIENT SIGNATURE DATE

You must sign in blue or black ink.

Morgan Keegan & Company, Inc
IRA NEW ACCOUNT FORM

77603918

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

| TYPE OF ACCOUNT MDR - CASH | ACCOUNT DESCRIPTION IRA - ROLLOVER IRA | FA # HOJR | ACCOUNT NUMBER 77603918 |
|---|---|---|---|

ACCOUNT TITLE
TODD B BURKE - ROLLOVER IRA

SSN/TID or FOREIGN # 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
DATE OF BIRTH (mm/dd/yyyy) 03/20/1960
MARITAL STATUS SINGLE
SPOUSE'S NAME

FEE SCHEDULE
ANNUAL CUSTODIAL FEE $35
TERMINATION FEE $75
A custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability, a termination fee will be charged

US CITIZEN/RESIDENT ALIEN (GREEN CARD) Yes
CITIZEN OF WHAT COUNTRY
TELEPHONE # HOME (713)787-0989 MOBILE
NUMBER OF DEPENDENTS 0

HOME ADDRESS
9400 DOLIVER #74
CITY HOUSTON STATE TX ZIP 77063

PRIMARY OWNER EMPLOYMENT INFORMATION EMPLOYED
EMPLOYER NAME SMITH & ASSOCIATES
ADDRESS 5306 HOLLISTER
HOUSTON, TX 77040
TYPE OF BUSINESS DISTRIBUTOR
POSITION/TITLE PROFESSIONAL TELEPHONE (713)334-7175 FAX

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| Over $150,000 | $500,000 - $1,000,000 | $500,000 - $1,000,000 | 35% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

2 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK VOLATILITY AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | OVER 5 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? OTHER REFERRAL
INITIAL TRANSACTION TRANSFER AMOUNT SYMBOL/CUSIP
IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No
IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No
NAME RELATIONSHIP:
DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? No
DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? Yes
FIRM NAMES: MERRILL LYNCH
IS THIS CLIENT A REGIONS EMPLOYEE? No
IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY
IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM
DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No
WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR
FUND OPTION REGIONS FDIC FUND (20)

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Hold street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiaries:

| BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | PRIMARY/CONTINGENT |
|---|---|---|---|---|
| JIMMY & PEGGY BURKE REVOCABLE LIVING TRU | 03/12/1994 | TRUST | 100.00 | PRIMARY |

| NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES |
|---|---|---|---|

By signing below, I acknowledge that I have read, received, understand and agree to abide by all the terms and conditions set forth in the Custodial Account Agreement and Disclosure Statement incorporated herein by this reference. The Custodial Account Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I have retained a copy of the Custodial Account Agreement and Disclosure Statement for my records. I have been advised that the above identity information provided will be verified. "The arbitration agreement is set forth in Section 5, Pages 3-5 of the accompanying Custodial Account Agreement and Disclosure Statement"

[signature] 3/2/2006
[signature] 3/2/06 LB 3/2/06 02/16/2006 [signature] 3-2-06

FINANCIAL ADVISOR SIGNATURE DATE BOM INITIALS APPROVED DATE BRANCH MANAGER SIGNATURE DATE

[signature] 2-2-06
CLIENT SIGNATURE DATE

You must sign in blue or black ink.

15. Default of exchange. Morgan Keegan shall not be liable to the undersigned for any default by a market or exchange on which the undersigned may have acquired a position. The undersigned understands that exchanges may change terms, rules and procedures which may affect markets adversely; the exchange may also default on a duty to pay its obligation or may be unable to take or make delivery of positions traded thereon.

16. Limits on transactions. Morgan Keegan may limit the number of securities, options or contracts related thereto which it will place, buy, sell or hold for the account of the undersigned and reserves the right to cease accepting orders for additional securities options or contracts related thereto from the undersigned at any time.

17. Morgan Keegan recommendations as opinions. Morgan Keegan's recommendations are recognized by the undersigned as opinions since such suggestions may deal with future developments that cannot be predicted with certainty, and Morgan Keegan is under no obligation to keep the undersigned abreast of developments in the market concerning securities, options or contracts related thereto, and the undersigned shall be responsible for remaining informed of those developments.

18. Inconsistent recommendations possible; trades create commissions. Morgan Keegan may from time to time make recommendations concerning the advisability of buying, selling or holding securities, options or contracts relating thereto, or employing a trading method or program. The market activities of Morgan Keegan or any of its officers, directors, employees, customers or shareholders may be inconsistent with the recommendations of Morgan Keegan to the undersigned. Morgan Keegan is in the business of providing securities account services, many of which result in the generation of brokerage commissions. If the undersigned elects to follow a trading program, such a program may result in a higher number of trades being made and a resulting greater amount of commissions being generated in the undersigned's account.

19. Commissions, fees and charges. The undersigned agrees that commissions and fees will be charged to the account in accordance with Morgan Keegan policy. Commissions and fee amounts may be changed from time to time by Morgan Keegan without notice to the undersigned. Such fees may include but not be limited to a service charge in the event any account produces no commission revenue in a calendar year and a service charge for accounts transferred to other firms. The undersigned agrees that in the event payment is not made by settlement date for securities purchased in a cash account of the undersigned, to the extent provided by law, a late charge may be imposed at the maximum rate of interest set forth in the Statement of Credit Terms from the settlement date to the date of payment.

20. Permission to obtain credit reports. The undersigned authorizes Morgan Keegan to obtain information concerning credit and business conduct of the undersigned as Morgan Keegan deems such to be appropriate. Upon written request from the undersigned, credit reports in the possession of Morgan Keegan will be provided to the undersigned, including the name and address of the consumer credit reporting agency which provided the report.

21. Receipt of checks; crediting checks when paid. All checks from the undersigned to be credited to the undersigned's account with Morgan Keegan shall be payable or endorsed to Morgan Keegan & Company, Inc. Morgan Keegan may in its discretion (a) refuse to accept for the undersigned's account checks payable to any party other than the undersigned and (b) accept checks for collection only, which checks shall not be credited to the undersigned's account until paid.

22. Attorney's fees. Any expense, including costs and attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in collection of a deficit from the undersigned or in enforcing Morgan Keegan's rights under this agreement shall be borne solely by the undersigned. Any expense, including attorneys fees (whether for outside or inside counsel), incurred by Morgan Keegan in defense of an action brought by the undersigned against Morgan Keegan or its agents or employees in connection with any account of the undersigned shall be borne solely by the undersigned should Morgan Keegan prevail.

23. Notice delivered to undersigned when mailed to account address. Communications directed to the undersigned at the address then appearing on the account of the undersigned, sent by ordinary mail or delivered to such address, shall be deemed to have been personally delivered to the undersigned whether or not actually received.

24. Notice to Morgan Keegan. Unless otherwise specified, any notice required by this agreement to be given by the undersigned to Morgan Keegan shall be addressed to the Manager of Morgan Keegan's Customer Service Department at Morgan Keegan's Home Office at Fifty North Front Street, Memphis, Tennessee 38103, or at such other address as Morgan Keegan may instruct in writing.

25. Ratification of prior transactions. All transactions and dealings with Morgan Keegan prior to the execution of this agreement are hereby ratified by the undersigned and the undersigned hereby agrees that all such transactions and dealings are subject to all terms and provisions of this agreement as if they had taken place subsequent to the execution hereof.

26. Invalidity of provision not affecting enforceability of agreement. In the event any provision or clause of this agreement shall be deemed invalid, void or unenforceable for any reason, that determination shall not affect the remainder of this agreement, which shall continue in full force and effect.

27. Acceptance of agreement by Morgan Keegan. Except as provided in paragraph 2 with respect to modification, the acceptance, opening or maintenance of an account for the undersigned by Morgan Keegan shall constitute acceptance of this agreement by Morgan Keegan without signature hereon.

28. Joint Accounts.

a. If this is a Joint Account, the undersigned agree that they each shall have authority on behalf of this account to buy, sell and otherwise deal in securities through Morgan Keegan as broker; to receive for the account confirmations, statements and communications of every kind; to receive for the account and to dispose of money, securities and other property; to make, terminate, or modify for the account, agreements relating to these matters or waive any of the provisions of such agreements; and generally to deal with Morgan Keegan as if each of the undersigned alone was the account owner, all without notice to the other account owners. The undersigned agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account.

b. Morgan Keegan may follow the instructions of any of the undersigned concerning this account and make deliveries to any of the undersigned of any or all securities in this account, and make payments to any of the undersigned, of any or all monies in this account as any of the undersigned may order and direct, even if such deliveries and/or payments shall be made to one of the undersigned personally, and not for this account. Morgan Keegan shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and Morgan Keegan shall not be bound to see to the application or disposition of the said securities and/or monies so delivered or paid to any of the undersigned.

c. In the event of the death of any of the undersigned, the survivor(s) shall immediately give Morgan Keegan written notice thereof and Morgan Keegan may, before or after receiving such notice, take such proceedings, require such documents, retain such portion and/or restrict transactions in the account as Morgan Keegan may deem advisable to protect Morgan Keegan against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any of the undersigned who shall have died shall be liable and each survivor will be liable, jointly and severally, to Morgan Keegan for any debt or loss in this account resulting from the completion of transactions initiated prior to Morgan Keegan's receipt of a written notice of such death or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

d. Any taxes or other expenses becoming a lien against or being payable out of the account as the result of the death of any of the undersigned, or through the exercise by his or her estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent. This provision shall not release the decedent's estate from any liability provided for in this agreement.

e. DESIGNATION OF TENANCY:

i. Joint Tenants with Rights of Survivorship/when one dies his or her interest passes to the survivor(s).

Morgan Keegan may presume that it is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants-in-common, unless otherwise provided by striking this paragraph ("I") and filling in the terms of paragraph ("II") hereafter. In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor(s) on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability.

ii. Tenants-In-Common without Rights of Survivorship/ when one dies, his or her interest passes to his or her estate.

Morgan Keegan may presume that if we strike paragraph ("I") above and fill in the terms of this paragraph ("II") below, it is the express intention of the undersigned to create an estate or account as tenants-in-common without rights of survivorship and not as joint tenants. Our interests in the account shall be set forth below. In the event of the death of either or any of the undersigned, the interests in the account shall be determined as of the close of business on the date of death of the decedent (or on the next following business day if the date of death is not a business day) as follows:

| | | |
|---|---|---|
| *Name of Tenant | or his or her estate % | Note: Total percentages must equal 100% |
| *Name of Tenant | or his or her estate % | |
| *Name of Tenant | or his or her estate % | |

*Indicate names and percentage amounts of the interests of each tenant. The only names to be inserted are those of the present owners of the account, heirs or beneficiaries CANNOT be designated on this form.

29. Non-objecting beneficial owners. Under rule 14b-1(c) of the Securities Exchange Act, Morgan Keegan is required to disclose to the issuer the name, address, and securities position of its customers who are beneficial owners of that issuer's securities unless the customer objects.

30. Sweep of free credit balances. Morgan Keegan may sweep all free credit balances daily into a money market fund as designated by the undersigned, or in the event no money market fund is designated, the undersigned authorizes Morgan Keegan to credit interest on free credit balances maintained for investment or reinvestment on behalf of the undersigned. The rate of interest paid on these balances will be published periodically by Morgan Keegan, and will vary with market conditions. The policies and procedures governing this payment of interest can be changed at any time. The undersigned agrees that no funds will be swept or receive interest unless the minimum investment requirement is met.

PLEASE SWEEP MY CREDIT BALANCES INTO MY MONEY FUND, WHICH IS:
☐ Money Market ☐ Tax-Exempt ☐ Government Obligations

31. Tax certification. Under penalties of perjury, the undersigned certifies (1) that the number shown on this form is the correct taxpayer identification number for the undersigned and (2) that the undersigned is not subject to backup withholding as a result of failure to report all interest or dividends, or the Internal Revenue Service has notified the undersigned that the undersigned is no longer subject to backup withholding. (The undersigned understands that if he/she has been notified by the IRS that he/she is subject to backup withholding as a result of dividend or interest underreporting, he/she must cross out the information contained in clause (2) of this paragraph.)

32. Receipt of order flow payment. Client securities orders may be executed with Morgan Keegan itself, with other broker dealers, or through the exchanges on which the securities are listed. Several of these market facilities offer automated execution services. Morgan Keegan's order routing among the execution facilities depends upon various factors such as the trading characteristics of the particular security and the size of the order. The participants to whom Morgan Keegan directs orders will execute such orders at or within the displayed national best bid or offer ("NBBO"), subject to order size and liquidity of markets, thus providing the opportunity for best execution of both limit and market orders. Morgan Keegan may receive additional cash remuneration, known as order flow payment, in some instances.

33. Risk of Loss Disclosures: You understand, acknowledge and agree that (i) the account is not insured by the Federal Deposit Insurance Corporation (FDIC); (ii) the account is not a deposit Account or other obligation of, or guaranteed by, Regions Financial Corporation or any of its banking or other affiliates; and (iii) the funds held in the account are subject to investment risks, including possible loss of the principal amount invested. The banking affiliates of Regions Financial Corporation may be lenders to issuers of securities that we underwrite. You should refer to disclosure documents relating to particular securities for a discussion of any such lending relationship.

NOTICE: Any person, whether married, unmarried or separated, may apply for a separate account.

| NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

THE UNDERSIGNED ACKNOWLEDGES THAT THE UNDERSIGNED HAS RECEIVED A DUPLICATE OF THIS AGREEMENT; AND THAT THIS AGREEMENT CONTAINS A BINDING AND ENFORCEABLE PREDISPUTE ARBITRATION PROVISION IN PARAGRAPH 5 ON PAGE 1 HEREOF.

X Client's Signature [signature] Date 10-28-03 X Other Client's Signature Date

All communications for this account are to be mailed to:
NAME REINE M. SEARS

ADDRESS 2809 ROSETTA DR.

CITY CHALMETTE STATE LA ZIP 70043

BUSINESS PHONE ( 504-566-0900 HOME PHONE ( 504-271-4928

PLEASE PRINT YOUR NUMBERS LIKE THIS 1 2 3 4 5 6 7 8 9 0

| Account Number | RR | The Social Security or Tax ID Number on Morgan Keegan's records is: | The Social Security or Tax ID Number should be: (do not enter dashes) |
|---|---|---|---|
| 32110494 | 70RS | 437459663 | |

FORM 600020 (REV 10-01) DETACH & RETURN ONLY THIS EXECUTED PAGE TO MORGAN KEEGAN ORIGINAL

Morgan Keegan & Company, Inc.
NEW ACCOUNT APPROVAL

TYPE OF ACCOUNT: ☑ CASH ☐ MARGIN ☐ OTHER ☐ ACCESS
ACCOUNT DESCRIPTION: ☐ INDIVIDUAL ☑ JTWROS ☐ ESTATE ☐ CUSTODIAN ☐ INV. CLUB ☐ PTNRSHP ☐ TRUST ☐ TIC ☐ CORP. ☐ OTHER

Name (First, Middle Initial, Last): Charles K. Colvin &
Barbara Colvin JTWROS
Additional Name: 1838 Managed Acct.
Social Security No./Tax I.D. No.: 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
Account No.: 38096067
Office/FA No.: 1HOR3
Mailing Address (If Different):
Street Address – Home: 544 Hawk Eye Dr.
Telephone: 830.980.2222
City/County: Bulverde State: TX Zip: 78163
Date of Birth: 12/26/52
Marital Status: ☑ M ☐ S ☐ D ☐ W
Duplicate: ☐ CONFIRMATION ☐ STATEMENT ☐ SPECIAL
Name / Street / City / State / Zip / Telephone:

Employer (Name) (If Retired, Complete for Former Employer): C&C Erection Inc.
Type of Business: Construction
Occupation: President/CEO
Employer (Address): 13119 Lookout Ridge San Antonio TX
Telephone: 210.590.9022
Spouse's Name: Barbara
Spouse's Employer: C&C Erection
Type of Business: Constuction
Occupation: Secretary
No. of Dependents (Include Self): 3
U.S. Citizen ☑ YES ☐ NO — If not, Citizen of
IS CUSTOMER RELATED TO ANY EMPLOYEE OF MORGAN KEEGAN? ☐ YES ☑ NO
Name of Employee: N/A Relationship:

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH | INVESTMENT EXPERIENCE NUMBER OF YEARS |
|---|---|---|---|
| ☐ UNDER $25,000 | ☐ UNDER $25,000 | ☐ UNDER $25,000 | STOCKS 20 TAX-FREE BONDS 20 |
| ☐ $25,000 - $50,000 | ☐ $25,000 - $50,000 | ☐ $25,000 - $50,000 | TAXABLE BONDS 20 MUTUAL FUNDS 20 |
| ☐ $50,000 - $75,000 | ☐ $50,000 - $100,000 | ☐ $50,000 - $100,000 | OPTIONS A COMMODITIES A |
| ☐ $75,000 - $100,000 | ☑ $100,000 - $500,000 | ☐ $100,000 - $500,000 | IRS/ANNUITIES A OTHER |
| ☑ $100,000 - $150,000 | ☐ $500,000 - $1,000,000 | ☑ $500,000 - $1,000,000 | DOES CLIENT HAVE: N/A ☐ IRA ROLLOVER ☐ IRA ☐ RETIREMENT |
| ☐ OVER $150,000 | ☐ OVER $1,000,000 | ☐ OVER $1,000,000 | |

SOURCE OF INFORMATION: ☑ CLIENT ☐ BROKER'S ESTIMATE ☐ OTHER (LIST)
TAX STATUS: 25%
INITIAL TRANSACTION (Specify Purchase or Sale, Quantity, Etc.): transfer from First Union
INVESTMENT OBJECTIVES: (List all that apply) NUMBER IN ORDER OF PRIORITY: 1 GROWTH 2 INCOME 3 TAX-ADVANTAGED 4 SPECULATION

ACCOUNT OBTAINED BY:
☐ CALL IN ☐ REFERRAL - NAME OF REFERRING PERSON ☐ ADVERTISING LEAD
☐ WALK IN ☑ PERSONAL ACQUAINTANCE - HOW LONG HAVE YOU KNOWN CLIENT? 10 years ☐ OTHER

IS ACCOUNT OPERATED BY PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? ☐ YES ☑ NO
Name of Authorized Agent/Investment Advisor:

OTHER CURRENT ACCOUNTS: ☐ NO
WITH MORGAN KEEGAN - LIST ACCOUNT NOS.
WITH OTHER FIRMS - LIST: First Union Securities

NOTICE: Any person, whether married, unmarried or separated, may apply for a separate account.

| NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

Russell W. Stein 6/20/02 — SIGNATURE OF BROKER, DATE
Leslie D. Barnett 6-28-02 — SIGNATURE OF BRANCH MANAGER, DATE

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| ☐ (D) Reg & Ship ☐ (H) Cust Name SK | ☐ (B) Pay Off | ☑ (C) Credit Acct | ☑ (C) Credit Acct | ☑ (C) Credit Acct |
| ☐ (I) Inst To Follow ☐ (R) Transfer As Avail. | ☐ (I) Inst To Follow | ☐ (D) Tfr to Type 2 | ☐ (D) Tfr to Type 2 | ☐ (D) Tfr to Type 2 |
| ☑ (S) Hold Street Name | ☑ (H) Hold Proceeds | ☐ (M) Pay Weekly | ☐ (M) Pay Weekly | ☐ (M) Pay Weekly |
| | ☐ (M) Tfr To Type 2 | | | |

MOR A/C

INSTRUCTIONS

CHOOSE ONE BELOW ON EACH SIDE
☑ SWEEP CASH ☐ SWEEP MARGIN ☐ CREDIT INTEREST
☑ BRAM (61) ☐ BTF (62) ☐ BGo (63)
71

AGREEMENTS REQUIRED
☐ CAG ☐ W-8
☐ LEG ☐ POA
☐ CRP ☐ SOA
☐ PTR ☐ OPT
☐ WRAP ACCT ☐ OTHER

USER CODES: ______

DOES BROKER HAVE A BENEFICIAL OR PERSONAL INTEREST IN THIS ACCOUNT? ☐ YES ☑ NO

IS CLIENT OR ANY MEMBER OF THE IMMEDIATE FAMILY AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? ☐ YES ☑ NO

IS THE BROKER REGISTERED IN STATE WHERE THE CUSTOMER RESIDES? ☑ YES ☐ NO

IS CLIENT AN OFFICER, DIRECTOR, OR 10% SHAREHOLDER OF A PUBLIC CORPORATION OR ANY RESTRICTED SECURITIES OF A PUBLIC CORPORATION? ☐ YES ☑ NO

IF YES, PLEASE LIST THE CORPORATIONS:

FM #00015 (Rev. 2/01)

MAIN OFFICE COPY

FORM # 00040 (REV. 10/01)

JUL - 1 REC'D

# Application Form and Client Agreement

**ACCOUNT REGISTRATION** ☑ New MOR Account ☐ Change to Existing MOR Account ☐ Add Debit Card to Existing MOR Account ☐ ACATS

NAME or ACCOUNT TITLE: CHARLES K COLVIN IV

NAME OF JOINT HOLDER (if applicable): BARBARA COLVIN JTWROS

ADDRESS: 15447 HAWK EYE DR

ADDRESS: 1838 MANAGED ACCT

CITY: BULVERDE STATE: TX

ZIP: 78163-2255 email address: ____________

**INVESTMENT OBJECTIVES**

Please rank in order of importance (1-most important to 4-least important)

1 Growth 2 Income 3 Tax-Advantaged 4 Speculation

**CASH BALANCE INVESTMENT OPTIONS** Please select one of the following:

☑ Money Market ☐ Government Obligations Money Market ☐ Principal Class Money Market*

☐ Tax Free Money Market ☐ Credit Interest *Account must meet certain minimum balance requirements.

Put your free cash balances to work immediately by having them swept daily into the money fund portfolio of your choice. You may select only one money market fund portfolio, which you may change. Please read the Fund Prospectus prior to making your selection. If you select credit interest, the free cash balances in your MOR Account will earn interest daily at a rate published by Morgan Keegan.

**CHECKWRITING**

Please provide the following information concerning your checking privilege.

Do you want checks with your MOR Account? ☐ Yes ☑ No — Print address on checks? ☐ Yes ☐ No

Number of signatures required to clear checks? ☐ 1 ☐ 2 — Number of persons with check signing privileges (max 6) ___

Type of checkbook: ☐ Wallet ☐ Executive — (Additional signature card required if more than 2.)

(First order wallet no charge; executive style (3 per page) additional charge)

Other printing details for checks (Only complete to have information in addition to name and address in Account Registration Section printed on checks; ie tax id # or phone #. Provide all numbers, letters, and symbols exactly as they should appear on checks.)

Do you want your checks mailed to an address different from above?

ADDRESS ____________

CITY ____________ ST ____ ZIP ______

**VISA® GOLD DEBIT CARD**

☐ Yes, I would like a Visa® Gold Debit Card

Number of cards for account holder: ☐ 1 ☐ 2 Additional card for joint account holder (only one allowed): ☐ 1

Account Holder's Name ____________

Joint Account Holder's Name ____________

**DIRECT INVESTMENT OPTION**

You can have your salary, federal government or Social Security payments directly invested in your Morgan Keegan MOR Account. For government payments—complete and return Form 1199. For salary payments—contact your payroll department for deposit instructions. (Forms are available through your Morgan Keegan Investment Broker.) For Social Security payments—call 800-772-1213.

**CASH ACCOUNT OPTION**

Your MOR Account will be processed as a margin account when you sign below.

☑ *CHECK HERE IF YOU DO NOT WANT YOUR MOR ACCOUNT ESTABLISHED WITH A MARGIN LINE OF CREDIT, IN WHICH CASE PARAGRAPHS 8, 9, AND 10 OF THE ATTACHED MOR ACCOUNT CLIENT AGREEMENT DO NOT APPLY.*

**MOR ACCOUNT AGREEMENT**

By signing below I fully understand, consent and agree to all the terms and conditions of the MOR Account Client Agreement appearing on the next page and its reverse side and acknowledge that:

- I have received, fully understand and agree to the terms and conditions of the MOR Account Disclosure Statement and Agreement; and,
- all information provided on this form is correct.

I FURTHER UNDERSTAND THAT THE USE OF MARGIN ALLOWS ME TO PURCHASE OR HOLD SECURITIES WITH GREATER TOTAL VALUE THAN I HAVE DEPOSITED TO THE ACCOUNT, AND THAT THE USE OF LEVERAGE WILL ALLOW ME TO POTENTIALLY SUSTAIN GREATER INVESTMENT TRANSACTION GAINS AS WELL AS TO POTENTIALLY SUSTAIN GREATER LOSSES. I UNDERSTAND THAT MORGAN KEEGAN IS ENTITLED TO BE REPAID FOR ALL SUMS DUE OR FOR CREDIT EXTENDED TO ME IN ACCORDANCE WITH THIS AGREEMENT WHICH CAN RESULT IN THE SALE OF THE ENTIRE ASSETS IN THE ACCOUNT TO SATISFY MY DEBT OBLIGATIONS TO MORGAN KEEGAN. (DOES NOT APPLY TO CASH ACCOUNTS)

I ACKNOWLEDGE THAT I HAVE RECEIVED A DUPLICATE OF THIS AGREEMENT, THAT SECURITIES IN MY ACCOUNT MAY BE LOANED TO MORGAN KEEGAN OR LOANED OUT TO OTHERS; AND THAT THIS AGREEMENT CONTAINS A BINDING AND ENFORCEABLE PREDISPUTE ARBITRATION PROVISION IN PARAGRAPH 5 ON PAGE 1 OF THE CLIENT AGREEMENT.

**ALL INDIVIDUALS AUTHORIZED TO WRITE CHECKS AND ENGAGE IN VISA TRANSACTIONS MUST SIGN BELOW, AND ON THE ATTACHED MOR ACCOUNT CLIENT AGREEMENT.**

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

Signature *C.K. Colvin* Date *6-10-02*

Signature *Barbara Colvin* Date *6-10-02*

Signature Date

Signature Date

Social Security or Taxpayer ID # 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 PLEASE SIGN IN BLUE OR BLACK INK

For Office Use Only

Morgan Keegan Account #: 32096067 RR H1015 PNC Checking # ____________

Morgan Keegan & Company, Inc.
NEW ACCOUNT APPROVAL

TYPE OF ACCOUNT: ☑ CASH ☐ MARGIN ☐ OTHER ☐ ACCESS
ACCOUNT DESCRIPTION: ☐ INDIVIDUAL ☐ ESTATE ☐ INV CLUB ☐ TRUST ☑ CORP. ☐ JTWROS ☐ CUSTODIAN ☐ PTNRSHP ☐ TIC ☐ OTHER

Legal Name (First, Middle Initial, Last): C & C Erection Inc.
Social Security No./Tax ID No.: 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
Mr. Keith Colvin — 3RO96083 — 178RS
Additional Name(s): — Mailing Address (If Different):

Legal Address (Home): 13119 Lookout Ridge — Telephone: 210.590.9022
City/County: San Antonio — State: TX — Zip+4: 78233 — Date of Birth: N/A — Marital Status: ☐ M ☐ S N/A ☐ W
☐ CONFIRMATION ☐ STATEMENT ☐ SPECIAL

DUPLICATES TO: Name — Street — City — State — Zip+4 — Telephone ( )

Employer (Name) (If Retired, Complete for Former Employer): C & C Erection Inc. — Type of Business: Construction — Occupation: President

Employer (Address): 13119 Lookout Ridge San Antonio TX 78233 — Telephone: 210.590.9022
Spouse's Name: N/A — Spouse's Employer: N/A — Type of Business: N/A — Occupation:
No. of Dependents (Include Self): N/A — U.S. Citizen ☐ YES ☐ NO — If not, Citizen of — IS CUSTOMER RELATED TO ANY EMPLOYEE OF MORGAN KEEGAN? ☐ YES ☑ NO — Name of Employee: N/A — Relationship

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH |
|---|---|---|
| ☐ UNDER $25,000 | ☐ UNDER $25,000 | ☐ UNDER $25,000 |
| ☐ $25,000 - $50,000 | ☐ $25,000 - $50,000 | ☐ $25,000 - $50,000 |
| ☐ $50,000 - $75,000 | ☐ $50,000 - $100,000 | ☐ $50,000 - $100,000 |
| ☐ $75,000 - $100,000 | ☑ $100,000 - $500,000 | ☐ $100,000 - $500,000 |
| ☐ $100,000 - $150,000 | ☐ $500,000 - $1,000,000 | ☑ $500,000 - $1,000,000 |
| ☑ OVER $150,000 | ☐ OVER $1,000,000 | ☐ OVER $1,000,000 |

INVESTMENT EXPERIENCE — NUMBER OF YEARS:

| | | | |
|---|---|---|---|
| STOCKS | 20 | TAX-FREE BONDS | 20 |
| TAXABLE BONDS | 20 | MUTUAL FUNDS | 20 |
| OPTIONS | 8 | COMMODITIES | 8 |
| INS./ANNUITIES | 8 | OTHER | N/A |

DOES CLIENT HAVE: IRA ROLLOVER — IRA / RETIREMENT

SOURCE OF INFORMATION: ☑ CLIENT ☐ BROKER'S ESTIMATE ☐ OTHER (LIST)
TAX STATUS: 25 %
INITIAL TRANSACTION (Specify Purchase or Sale, Quantity, Etc.): Transfer from First Union

INVESTMENT OBJECTIVES (List all that apply) NUMBER IN ORDER OF PRIORITY: 1 GROWTH 2 INCOME 3 TAX-ADVANTAGED 4 SPECULATION

ACCOUNT OBTAINED BY:
☐ CALL IN ☐ REFERRAL - NAME OF REFERRING PERSON ☐ ADVERTISING LEAD
☐ WALK IN ☑ PERSONAL ACQUAINTANCE - HOW LONG HAVE YOU KNOWN CLIENT? 10 years ☐ OTHER

IS ACCOUNT OPERATED BY PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? ☐ YES ☑ NO — Name of Authorized Agent/Investment Advisor: N/A

OTHER CURRENT ACCOUNTS: ☐ NO
WITH MORGAN KEEGAN - LIST ACCOUNT Nos.
WITH OTHER FIRMS - LIST: First Union Securities

NOTICE: Any person, whether married, unmarried or separated, may apply for a separate account.

NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures

Russell W. Stein 6/28/02 — Leslie D. Barnett 6-28-02
SIGNATURE OF BROKER — DATE — SIGNATURE OF BRANCH MANAGER — DATE

| DELIVER: | | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|---|
| ☐ (P) Reg & Ship | ☐ (H) Cstd Name SK | ☐ (P) Pay Dir | ☑ (C) Credit Acct | ☑ (C) Credit Acct | ☑ (C) Credit Acct |
| ☐ (I) Inst To Follow | ☐ (A) Bearer As Avail. | ☐ (I) Inst To Follow | ☐ (D) Tr to Type 2 | ☐ (D) Tr to Type 2 | ☐ (D) Tr to Type 2 |
| ☑ (S) Hold Street Name | | ☑ (H) Hold Proceeds | ☐ (W) Pay Weekly | ☐ (W) Pay Weekly | ☐ (W) Pay Weekly |
| | | ☐ (X) Tr To Type 2 | | | |

MOR

INSTRUCTIONS

CHOOSE ONE BELOW ON EACH SIDE
☑ SWEEP CASH — ☑ BMM (61) ☐ BTF (62) ☐ BGo (69)
☐ SWEEP MARGIN
☐ CREDIT INTEREST — 71

AGREEMENTS REQUIRED
☐ CAG ☐ W-8
☐ LEG ☐ POA
☐ CRP ☐ SDA
☐ PTR ☐ OPT
☐ WRAP ACCT ☐ OTHER

USER CODES:

DOES BROKER HAVE A BENEFICIAL OR PERSONAL INTEREST IN THIS ACCOUNT? ☐ YES ☑ NO

IS CLIENT OR ANY MEMBER OF THE IMMEDIATE FAMILY AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? ☐ YES ☑ NO

IS THE BROKER REGISTERED IN STATE WHERE THE CUSTOMER RESIDES? ☑ YES ☐ NO

IS CLIENT AN OFFICER, DIRECTOR, OR 10% SHAREHOLDER OF A PUBLIC CORPORATION OR ANY RESTRICTED SECURITIES OF A PUBLIC CORPORATION? ☐ YES ☑ NO

IF YES, PLEASE LIST THE CORPORATIONS:

M #00015 (Rev. 2/01) — MAIN OFFICE COPY

FORM # (REV. 10/01)

JUL - 1 REC'D

# Application Form and Client Agreement

**ACCOUNT REGISTRATION** ☑ New MOR Account ☐ Change to Existing MOR Account ☐ Add Debit Card to Existing MOR Account ☐ ACATS

NAME or ACCOUNT TITLE: G 4 G Erection Inc
NAME OF JOINT HOLDER (if applicable):
ADDRESS: 13119 Hook Hill Ridge
ADDRESS:
CITY: San Antonio STATE: TX
ZIP: 78233-5156 email address

**INVESTMENT OBJECTIVES**
Please rank in order of importance (1-most important to 4-least important)
1 Growth 2 Income 3 Tax-Advantaged 4 Speculation

**CASH BALANCE INVESTMENT OPTIONS** Please select one of the following:
☑ Money Market ☐ Government Obligations Money Market ☐ Principal Class Money Market*
☐ Tax Free Money Market ☐ Credit Interest *Account must meet certain minimum balance requirements.

Put your free cash balances to work immediately by having them swept daily into the money fund portfolio of your choice. You may select only one money market fund portfolio, which you may change. Please read the Fund Prospectus prior to making your selection. If you select credit interest, the free cash balances in your MOR Account will earn interest daily at a rate published by Morgan Keegan.

**CHECKWRITING**
Please provide the following information concerning your checking privilege.
Do you want checks with your MOR Account? ☐ Yes ☑ No Print address on checks? ☐ Yes ☐ No
Number of signatures required to clear checks? ☐ 1 ☐ 2 Number of persons with check signing privileges (max 6) ____
Type of checkbook: ☐ Wallet ☐ Executive (Additional signature card required if more than 2.)
(First order wallet no charge; executive style (3 per page) additional charge)
Other printing details for checks (Only complete to have information in addition to name and address in Account Registration Section printed on checks; ie tax id # or phone #. Provide all numbers, letters, and symbols exactly as they should appear on checks.)

Do you want your checks mailed to an address different from above?
ADDRESS
CITY ST ZIP

**VISA® GOLD DEBIT CARD**
☐ Yes, I would like a Visa® Gold Debit Card
Number of cards for account holder: ☐ 1 ☐ 2 Additional card for joint account holder (only one allowed): ☐ 1
Account Holder's Name
Joint Account Holder's Name

**DIRECT INVESTMENT OPTION**
You can have your salary, federal government or Social Security payments directly invested in your Morgan Keegan MOR Account. For government payments—complete and return Form 1199. For salary payments—contact your payroll department for deposit instructions. (Forms are available through your Morgan Keegan Investment Broker.) For Social Security payments—call 800-772-1213.

**CASH ACCOUNT OPTION**
Your MOR Account will be processed as a margin account when you sign below.
☑ CHECK HERE IF YOU DO NOT WANT YOUR MOR ACCOUNT ESTABLISHED WITH A MARGIN LINE OF CREDIT, IN WHICH CASE PARAGRAPHS 8, 9, AND 10 OF THE ATTACHED MOR ACCOUNT CLIENT AGREEMENT DO NOT APPLY.

**MOR ACCOUNT AGREEMENT**
By signing below I fully understand, consent and agree to all the terms and conditions of the MOR Account Client Agreement appearing on the next page and its reverse side and acknowledge that:
- I have received, fully understand and agree to the terms and conditions of the MOR Account Disclosure Statement and Agreement; and,
- all information provided on this form is correct.

I FURTHER UNDERSTAND THAT THE USE OF MARGIN ALLOWS ME TO PURCHASE OR HOLD SECURITIES WITH GREATER TOTAL VALUE THAN I HAVE DEPOSITED TO THE ACCOUNT, AND THAT THE USE OF LEVERAGE WILL ALLOW ME TO POTENTIALLY SUSTAIN GREATER INVESTMENT TRANSACTION GAINS AS WELL AS TO POTENTIALLY SUSTAIN GREATER LOSSES. I UNDERSTAND THAT MORGAN KEEGAN IS ENTITLED TO BE REPAID FOR ALL SUMS DUE OR FOR CREDIT EXTENDED TO ME IN ACCORDANCE WITH THIS AGREEMENT WHICH CAN RESULT IN THE SALE OF THE ENTIRE ASSETS IN THE ACCOUNT TO SATISFY MY DEBT OBLIGATIONS TO MORGAN KEEGAN. (DOES NOT APPLY TO CASH ACCOUNTS)

I ACKNOWLEDGE THAT I HAVE RECEIVED A DUPLICATE OF THIS AGREEMENT; THAT SECURITIES IN MY ACCOUNT MAY BE LOANED TO MORGAN KEEGAN OR LOANED OUT TO OTHERS; AND THAT THIS AGREEMENT CONTAINS A BINDING AND ENFORCEABLE PREDISPUTE ARBITRATION PROVISION IN PARAGRAPH 5 ON PAGE 1 OF THE CLIENT AGREEMENT.

ALL INDIVIDUALS AUTHORIZED TO WRITE CHECKS AND ENGAGE IN VISA TRANSACTIONS MUST SIGN BELOW, AND ON THE ATTACHED MOR ACCOUNT CLIENT AGREEMENT.

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

Signature [signature], PRESIDENT Date 6-10-02
Signature Barbara Colvin Date 6-10-02
Signature Date
Signature Date

Social Security or Taxpayer ID # 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 PLEASE SIGN IN BLUE OR BLACK INK

For Office Use Only.
Morgan Keegan Account # 32096083 RR H0125 PNC Checking #



FROM : C & C ERECTION, INC. PHONE NO. : 210 590+9021 Apr. 11 2003 02:57PM P1

APR-04-2003 10:33 MORGAN KEEGAN

# MOR PARTNERS
## FEE IN LIEU OF COMMISSION AGREEMENT
## (FOR NON-DISCRETIONARY ACCOUNTS)

**NEW ACCOUNT CHECKLIST**
*TO BE COMPLETED BY THE FINANCIAL ADVISOR*

DATE ________ F.A.# N2RS FINANCIAL ADVISOR NAME Russell W. Stein

Account Name (Mr., Mrs., Ms.) Charles K. Calvin + Barbara Calvin JTWROS

Address 5447 Hawk Eye Dr

City/State/Zip [illegible] Tx 78163

Account Number 32096067 Initial Investment ($) 56832.41

**For Morgan Keegan Financial Advisor and Sales Assistant**

A separate Morgan Keegan account must be established for each IMCG account. All documents required by Morgan Keegan must be completed and processed in the normal manner. The Morgan Keegan account(s) are to be set up in your branch. All signatories to the account must sign and initial. If any signatory is a fiduciary, the capacity in which he/she is acting should be indicated.

The Morgan Keegan account must be fully funded (initial investment) before forwarding paperwork to IMCG Operations. Submit all required documentation to your branch manager for review and signature. All documentation required for each IMCG program selected should be forwarded to IMCG Operations, 18th Floor, Memphis, TN. Branches are required to maintain a copy of the IMCG Agreement.

The selected program agreement will not become effective until accepted by IMCG. The Morgan Keegan Financial Advisor will be notified upon acceptance of the account(s) via e-mail. A welcome letter and a copy of the executed IMCG agreement are sent to each Client. The Client will also receive one binder for every three (3) IMCG accounts.

Performance will begin on the date of account inception for clients receiving a quarterly report.

Type of Account: ✓ Individual ___ Corporate Account ___ Retirement Trust ___ ERISA ___ Individual IRA ___ Trust or Estate ___ Endowment/Foundations

Investment Style: ✓ Equity ___ Balanced ___ Fixed Income

**Quarterly Performance Report**

R.S. Client Initial here. If you wish Morgan Keegan to provide you with a written quarterly performance report of your account. If left blank, no performance will be monitored on the account.

✓ Holdings - Check here if you wish to include a list of Holdings in your individual quarterly report

✓ Scattergram - Check here if you wish Morgan Keegan to include a scattergram in your individual quarterly performance report.

Select up to two indices that will appear on the individual quarterly report. If no indices are selected, the S&P 500 index will be the default index. What is chosen here is what both the client and the Financial Advisor will receive. Index 1 ________ Index 2 ________

**Combined Report Option**

| | | | Combine the following accounts for performance reporting only: | |
|---|---|---|---|---|
| Request for Combined | ___ Yes | ___ No | | |
| Scattergram | ___ Yes | ___ No | 1. ________ | 4. ________ |
| Holdings | ___ Yes | ___ No | 2. ________ | 5. ________ |
| Benchmark for Combined | ___ Index 1 | ___ Index 2 | 3. ________ | 6. ________ |

**Blend or Household Fee Option**

Request for Blend Fee* ___ Yes ✓ No or Request to Household Fee* ___ Yes ✓ No

**Blend or Household the following IMCG Accounts**

| Account# | Client Name | Relationship** |
|---|---|---|
| | | |
| | | |
| | | |

* Only applies to MOR Partners and Preferred Advisor Programs
** Immediate Family

APR-14-2003 13:39 MORGAN KEEGAN P.02/03

## FEE IN LIEU OF COMMISSION AGREEMENT

The undersigned Client, in consideration of Morgan Keegan & Company, Inc. ("Morgan Keegan") accepting or maintaining this account ("Account") with the undersigned hereby agrees as follows:

1. Client has determined to enter into this Agreement with Morgan Keegan, with respect to the Account over which the undersigned Client has retained complete investment discretion and responsibility, for the payment of an annual fee to be charged against the Client's Account in lieu of transactional brokerage commissions (agency transactions only) as may otherwise be imposed. ALL SERVICES OFFERED OR PROVIDED PURSUANT TO THIS AGREEMENT ARE SOLELY RELATED TO, AND INCIDENTAL TO, MORGAN KEEGAN'S BUSINESS AS A BROKER-DEALER. THE ACCOUNT FEE IS SOLELY IN LIEU OF TRANSACTIONAL BROKERAGE COMMISSIONS (AGENCY TRANSACTIONS ONLY) AND IS NOT PAYMENT FOR ANY ADDITIONAL INCIDENTAL SERVICES SUCH AS INVESTMENT ADVICE AND/OR RECOMMENDATIONS.

2. Non-Discretionary Account. Client understands that under this Agreement, Morgan Keegan will perform no discretionary acts with respect to the Account and will effect transactions only as instructed by Client subject to certain investment restrictions to which this Account is limited.

3. Account Fee. Client agrees to pay to Morgan Keegan an annual Account Fee for the Account(s) subject to this Agreement in accordance with the following schedule and the terms of this Agreement. In the event that you hold more than one account in the MOR Partners program for purposes of "householding", the minimum annual fee will be prorated against each account on a quarterly basis. If any single account generates fees in excess of $1,250.00, the fee amount above $1,250.00 will be charged to that account.

**Fee Schedule**

| Account Asset Value | Annual Fee Equity | Annual Fee Balanced | Annual Fee Fixed Income |
|---|---|---|---|
| On first $ 1,000,000 | 2.50% | 2.00% | 1.00% |
| On next $4,000,000 | 2.00% | 1.50% | 0.75% |
| Over $5,000,000 | 1.50% | 1.00% | 0.50% |

| Account Asset Value | Fee |
|---|---|
| On first $ 1,000,000 | 1% |
| On next $4,000,000 | 1% |
| Over $5,000,000 | 1% |

Client(s) Initial approving Account Fee: K. C.

Notwithstanding the above designated Account Fee, Client agrees to pay a minimum annual Account Fee of $1,250. Unless otherwise notified, fees will be debited to the account.

ERISA Accounts – 12B-1 Fee. Fees covering marketing and distribution costs of mutual funds are commonly referred to as 12b-1 fees. In the event 12b-1 fees are paid with regards to certain mutual fund holdings in this account, such 12b-1 fees will be automatically credited to the account.

Non-ERISA Accounts – 12B-1 Fee. Fees covering marketing and distribution costs of mutual funds are commonly referred to as 12b-1 fees. In the event 12b-1 fees are paid with regards to certain mutual fund holdings in this account, such 12b-1 fees will be automatically credited to the account unless you choose to forego such credit. If you choose to forego such credit, you must initial the statement below.

__________ I choose to forego the crediting of 12b-1 fees to my account and understand that Morgan Keegan will utilize these fees to offset marketing and distribution costs.

Client hereby acknowledges that the Account Fee payable by such Client under this Agreement will cover the cost of brokerage commissions only for those transactions effected through Morgan Keegan on an agency basis and that the cost of (i) brokerage commissions on transactions effected through any broker-dealer other than Morgan Keegan, (ii) dealer mark-ups, mark-downs and "spreads" (whether charged by Morgan Keegan or by another broker-dealer acting as principal), (iii) brokerage commissions on "syndicate" transactions, and (iv) any other transactional or account fees including but not limited to margin interest, if any, other than brokerage commissions charged for effecting agency transactions through Morgan Keegan shall be borne by the Account in addition to the Account Fee.

The initial quarterly payment of the annual fee, payable to Morgan Keegan and due in full on the date the Account is accepted by Morgan Keegan, will be the amount, pro-rated for the number of days remaining in the quarterly period, due for the initial calendar quarter from the date of the execution of the Agreement and will be based upon the market value of the assets held in the Account at the date of execution of this Agreement. Thereafter, the annual fee will be based upon the market value of the Account assets on the last business day of the previous quarter and will be due the following business day. In the event of

termination of the Account by Morgan Keegan, any unearned portion of the annual fee will be refunded on a pro-rata basis, determined by the days remaining in the calendar quarter billing period.

The amount of the Annual Fee due will be debited to the Account on each due date. Nevertheless, Client may pay the Account Fee, or quarterly payments, from outside funds, provided that Morgan Keegan is so notified in advance and such outside funds, sufficient to pay the amount due, are paid to Morgan Keegan on or prior to the due date.

Client understands that Morgan Keegan shall be entitled to the Account Fee chargeable on an Account of the applicable minimum size should the initial value of the Account be less than the required minimum or should a withdrawal result in the value of the Account declining below the required minimum. If additional cash, securities or other assets are deposited into the Account during the first two months of any quarter, an additional Account Fee, prorated for the number of days remaining in the quarterly period and covering the total value of the accepted assets, may be charged in the sole discretion of Morgan Keegan and, if charged, will become due on the date of such acceptance. No fee adjustment will be made for partial withdrawals by Client during any quarter nor for the appreciation or depreciation in Account value during any quarterly period. Morgan Keegan shall also have the right to terminate any Account whose value declines below the required minimum. Should the Agreement be terminated, any unearned portion of the Account Fee will be refunded on a pro-rata basis, determined by the days remaining in the calendar quarter billing period.

4. **Valuation.** For the purposes of this Agreement, the value of the Account shall be the sum of the market value of all securities (both long and short) and money market and credit balances; for purposes of this Agreement, margin debit balances do not reduce the value of the Account. In computing the market value of any security or other asset in the Account each security listed on a national securities exchange shall be valued, as of the valuation date, at the closing price on the principal exchange on which it is traded. Any other security or asset in the Account shall be valued by Morgan Keegan in a manner determined in good faith to reflect fair market value, but any such valuation is no guarantee of any kind with respect to the market value of such assets, or any portion thereof, in the Account.

5. **Entire Agreement and Severability.** This Agreement, in addition to any other agreements executed by the Client prior to, contemporaneously with, or subsequent to the execution of this Agreement, including but not limited to the Morgan Keegan Client Agreement and any agreement relating to on-line transactional executions by the Client, represents the entire agreement between the parties with respect to the services provided for this Account. If any provision of this Agreement shall be held or made invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and to this extent, the provisions of this Agreement shall be deemed to be severable. This Agreement is made and shall be construed under the laws of the State of Tennessee without giving effect to the choice of law or conflict of laws provisions thereof.

6. **Termination.** This Agreement may be terminated at will upon written notice by either party to the other and termination will become effective upon the mailing of such notice.

Signature of Client: X [signature] Date: 4-11-03

Capacity of Signatory: CHARLES K. CALVIN

Signature of Client: X Barbara Calvin Date: 4-11-03

Capacity of Signatory: BARBARA CALVIN

Morgan Keegan Financial Advisor: Russell W. Stein Reviewed by Branch Manager: [signature]

Date: 4-14-03 Date: 4/11/03

AGREED TO AND ACCEPTED this the 14th day of April 03 Memphis, TN

MORGAN KEEGAN & COMPANY, INC.

By: [signature]

Title: 2nd VP

Revised 02/03

TOTAL P.04



FORM 4 00040 (REV. 4/01)

# Morgan Keegan Client Agreement

PLEASE READ CAREFULLY, SIGN AND RETURN ONE EXECUTED COPY TO:

Morgan Keegan & Company, Inc.
Morgan Keegan Tower
Fifty Front Street
Memphis, TN 38103

In consideration of Morgan Keegan & Company, Inc., or any successor thereof (hereinafter referred to as "Morgan Keegan"), accepting, opening or maintaining one or more accounts of the undersigned (whether designated by name, number or otherwise) for the purchase, sale or carrying of securities, options, contracts relating thereto, and/or other property (hereinafter collectively referred to as "property"), the undersigned agrees as follows:

1. Custom and usage. All transactions for the account of the undersigned shall be subject to all then-applicable federal and state laws and rules and regulations promulgated thereunder, and the constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse. This agreement shall be deemed modified to the extent necessary to conform with any changes in such laws, regulations, constitutions, customs and usages and as modified shall remain in full force and effect. Actual deliveries are intended on all transactions.

2. No modification. Except as herein provided, no provision of this agreement as printed shall in any respect be waived, modified, amended or deleted, nor shall acceptance of this agreement and any accounts thereunder by Morgan Keegan constitute ratification of any such changes, nor shall such acceptance prevent Morgan Keegan from asserting and enforcing the original provisions of this agreement as printed unless such changes are expressly agreed to in a document signed by the Manager of Morgan Keegan's Customer Service Department or his/her designee.

3. Discretionary trades; customer required to notify of unauthorized trades. NO EMPLOYEE OF MORGAN KEEGAN IS AUTHORIZED TO EFFECT TRADES FOR THE UNDERSIGNED WITHOUT THE UNDERSIGNED'S EXPRESS PRIOR APPROVAL UNLESS EXPRESSLY AGREED TO IN A SEPARATE WRITTEN GRANT OF DISCRETIONARY AUTHORITY SIGNED BY THE UNDERSIGNED AND THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT OR HIS/HER DESIGNEE; THE UNDERSIGNED AGREES TO BRING ANY UNAUTHORIZED ACTIVITY IMMEDIATELY TO THE ATTENTION OF THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT. The failure of the undersigned to immediately bring any unauthorized activity to the attention of the Manager of Morgan Keegan's Customer Service Department shall serve to ratify and adopt such activity and shall preclude the undersigned from thereafter claiming that the employee lacked express authorization to effect those or other transactions in or for the account of the undersigned.

4. Duty to examine statements and advise of errors. The undersigned will examine all statements, confirmations and other reports or notices upon receipt thereof from Morgan Keegan. Morgan Keegan may deem such statements, confirmations, reports or notices to have been accepted by the undersigned as correct and conclusive if the undersigned does not notify the Morgan Keegan Customer Service Department otherwise in writing within ten (10) days after receipt, except in regard to transactions in options and contracts relating thereto, wherein notice of any discrepancies must be provided within three (3) days of receipt. Any such notice from the undersigned, including notice of the non-receipt of any such report, will also be made by the undersigned via telephone directed to Morgan Keegan's Customer Service Department in Memphis, Tennessee. The undersigned acknowledges that due to the nature of the markets involved, positions confirmed or deleted in error may result in a substantial loss. Consequently, the undersigned agrees that if for any reason the undersigned fails to bring an error or discrepancy to Morgan Keegan's attention within the periods specified above, any loss will be the responsibility and liability of the undersigned.

5. Arbitration. This provision relates to the arbitration of disputes:

(a) Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees and, by accepting, opening or maintaining any account for the undersigned, Morgan Keegan agrees that all controversies between the undersigned and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever, shall be determined by arbitration. Any arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., or an arbitration forum provided by any other securities exchange or organization of which Morgan Keegan is a member, and in accordance with the rules of such organization. The undersigned may elect in the first instance which of the aforementioned arbitration forums will be utilized to resolve the controversy by delivering written notification of such election to Morgan Keegan at Morgan Keegan's office in Memphis, Tennessee. If the undersigned fails to make such election by notifying Morgan Keegan of such election as specified within five (5) days after receipt from Morgan Keegan of a request to make such election, then Morgan Keegan may make such election.

This arbitration provision shall apply to any controversy or claim or issue in any controversy arising from events which occurred prior to, on or subsequent to the execution of this arbitration agreement. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Notwithstanding anything in this agreement to the contrary, no person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:

(i) the class certification is denied; or
(ii) the class is decertified; or
(iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

6. Orders; deliveries and notices. Any orders to sell securities placed by the undersigned shall include an implied representation by the undersigned that the undersigned owns the security, and if the security is not in Morgan Keegan's possession at the time of the contract for sale, the undersigned agrees to deliver the security to Morgan Keegan by settlement date. Morgan Keegan shall not be required to deliver to the undersigned the same securities deposited or received, but only securities of the same kind and amount; and Morgan Keegan shall not be required or in any way obligated to give the undersigned notice regarding any security Morgan Keegan may hold in the undersigned's account or accounts relating to 1) call for payment, 2) default in payment of principal or interest, or 3) receivership, bankruptcy or reorganization of the issuer of any security, and the fact that such information may be given shall not constitute a waiver of this provision.

7. Security interest in property. As security for the payment of all liabilities and obligations the undersigned may have to Morgan Keegan now or in the future, the undersigned grants Morgan Keegan a general lien and security interest in all monies and property of the undersigned or in which the undersigned may have an interest carried by Morgan Keegan at any time in any account of the undersigned (held either individually, jointly or otherwise) or which may at any time be in Morgan Keegan's possession or under its control for any purpose. In enforcing its security interest, and in addition to the rights provided herein, Morgan Keegan shall have all the rights and remedies available to a secured party under the Tennessee Uniform Commercial Code.

8. Loan of customer's securities. Until Morgan Keegan receives written notice of revocation from the undersigned, Morgan Keegan is hereby authorized to lend to itself as broker or to others any securities held by Morgan Keegan on margin for the account of, or under the control of, the undersigned.

9. Payment of Loans on Demand. The undersigned agrees to pay on demand any balance owing with respect to any of the undersigned's accounts, including interest and commissions. The undersigned understands that Morgan Keegan may demand full payment of the balance due in the undersigned's accounts plus any interest charges accrued thereon, at Morgan Keegan's sole option, at any time without cause and whether or not such demand is made for Morgan Keegan's protection. That is, loans are not made for any specific term or duration but rather are due and payable at Morgan Keegan's discretion upon a demand for payment made to the undersigned. The undersigned agrees that Morgan Keegan may at its sole option apply payments of interest, dividends, premium and principal received on any of the collateral, whether pursuant to the terms of such collateral or upon the sale of the collateral, to the payment of the balance due in the undersigned's accounts or pay such amounts to the undersigned.

10. Maintenance of collateral. The undersigned understands that the properties in the undersigned's Margin Account may be carried in Morgan Keegan's general loans and may be pledged or hypothecated by Morgan Keegan separately or in common with other properties. The pledge or hypothecation by Morgan Keegan may secure Morgan Keegan's indebtedness equal to or greater than the amount owed to Morgan Keegan by the undersigned. The undersigned agrees to deposit additional collateral, as Morgan Keegan may in its discretion require from time to time, in the form of cash or securities in accordance with the rules and regulations of the Federal Reserve Board, the New York Stock Exchange, other national securities exchanges, associations or regulatory agencies under whose jurisdictions Morgan Keegan is subject, and Morgan Keegan's own minimum house margin maintenance requirements. In the event the undersigned no longer maintains a debit balance or an indebtedness to Morgan Keegan, it is understood that Morgan Keegan will fully segregate all securities in the undersigned's accounts in Morgan Keegan's safekeeping or control (directly or through a clearinghouse) and/or deliver them to the undersigned upon request.

11. Interest charges and payments. The undersigned agrees to pay interest, to the extent not prohibited by the laws of the State of Tennessee, upon all amounts advanced and other balances due in the undersigned's accounts in accordance with Morgan Keegan's usual custom, which may include the compounding of interest. Morgan Keegan's custom, which may change from time to time, will be set forth in a Statement of Credit Terms or similar document, which is incorporated herein by reference. By entering into any transactions with Morgan Keegan after the undersigned receives the Statement of Credit Terms, the undersigned acknowledges that the undersigned has read and agreed to the Statement of Credit Terms for all past and future transactions in the undersigned's account. The undersigned understands that interest on all debit balances shall be payable on demand and that in the absence of any demand interest shall be due on the final business day of each interest period. The undersigned's daily net debit balance will include accrued interest that the undersigned has not paid during prior interest periods, if any. The undersigned understands that to the extent permitted by applicable law Morgan Keegan may charge the undersigned interest on the unpaid interest previously added to the undersigned's debit balance; that is, Morgan Keegan may charge the undersigned compound interest. Payments of interest and principal and all other payments made by the undersigned under this agreement shall be made to Morgan Keegan's main office in Memphis, Tennessee.

12. Liquidation of collateral. Should the undersigned fail to make any payment or deliver any property to Morgan Keegan when due, fail to maintain in any account of the undersigned with Morgan Keegan collateral of sufficient value to meet Morgan Keegan's then-current requirements or otherwise fail to discharge any obligation to Morgan Keegan, or should the undersigned die, or should Morgan Keegan for any reason whatsoever deem it necessary for its protection, Morgan Keegan is hereby authorized to sell any securities or other property in any account of the undersigned with Morgan Keegan or buy-in any property which any such account may be short, or otherwise effect settlement, or cancel any outstanding orders to satisfy any such requirement or obligation. Any such sale, purchase, settlement or cancellation may be made at Morgan Keegan's discretion and at its prevailing commission rates on any exchange or market where such business is transacted or at public auction or private sale without notice to the undersigned and without advertisement, tender or demand of any kind on the undersigned, such notice, advertisement, tender or demand being hereby expressly waived by the undersigned. Morgan Keegan may purchase any such property for its own account or on behalf of anyone else free from right of redemption. The undersigned shall remain liable for any deficiency in any account of the undersigned. The undersigned shall also be liable for any fines, assessments or other costs levied against Morgan Keegan by any exchange, clearinghouse or regulatory authority resulting from the failure of the undersigned to deliver or otherwise make available any property sold by Morgan Keegan at the direction of the undersigned. No tender, demand, call or notice by Morgan Keegan shall constitute a waiver of any right to take any other action permitted hereunder at the time or in the future. The failure of Morgan Keegan to enforce its rights under this paragraph, this agreement or any other agreement between the undersigned and Morgan Keegan shall not act as a waiver of any such rights nor preclude Morgan Keegan from exercising these rights thereafter.

13. Authority to transact business. Each of the parties who executes this agreement in a representative or fiduciary capacity represents and warrants to Morgan Keegan that he/she has the requisite authority to enter into and operate under this agreement on behalf of his/her principal, and for the risk and in the name of the principal. If this agreement is signed in a representative capacity by more than one person, and unless written notice to the contrary is provided to the Manager of Morgan Keegan's Customer Service Department prior to the transaction of any business in the account, each such person represents and warrants that any one of them, acting alone, may buy, sell and otherwise deal in stocks, bonds, options and other securities, listed or unlisted for present or future delivery, on margin or otherwise and to deposit with, withdraw and receive payment or delivery in regard to said account from Morgan Keegan of money, stocks, bonds, and other negotiable instruments, securities and other property.

14. Capacity; notice of changed circumstances. The undersigned represents that, unless the Manager of Morgan Keegan's Customer Service Department has been notified in writing to the contrary: the undersigned, if a natural person, has reached the age of majority; the undersigned is not insolvent; the undersigned is not an employee of any securities exchange, or of any corporation of which any such exchange owns a majority of the capital stock, or of any member of any such exchange, or of a member firm, corporation or organization registered with any such exchange, or of a bank, trust company or insurance company or of any corporation, firm or individual engaged in the business of dealing either as a broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper; the undersigned is not registered with any securities exchange, association or commission; and no one except the undersigned has an interest in any account of the undersigned with Morgan Keegan. The undersigned agrees that he will promptly notify the Manager of Morgan Keegan's Customer Service Department in writing of any change in the circumstances affecting the foregoing representations.

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

MUST CHECK ONE BOX AT RIGHT BEFORE SIGNATURE ☑ CASH ☐ MARGIN

Signature: Nancy M. Gordon    Date: 06/21/01

Signature:    Date:

Signature:

# Morgan Keegan Client Agreement

PLEASE READ CAREFULLY, SIGN AND RETURN ONE EXECUTED COPY TO:

Morgan Keegan & Company, Inc.
Morgan Keegan Tower
Fifty Front Street
Memphis, TN 38103

In consideration of Morgan Keegan & Company, Inc. or any successor thereof (hereinafter referred to as "Morgan Keegan"), accepting, opening or maintaining one or more accounts of the undersigned (whether designated by name, number or otherwise) for the purchase, sale or carrying of securities, options, contracts relating thereto, and/or other property (hereinafter collectively referred to as "property"), the undersigned agrees as follows:

1. Custom and usage. All transactions for the account of the undersigned shall be subject to all then-applicable federal and state laws and rules and regulations promulgated thereunder, and the constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse. This agreement shall be deemed modified to the extent necessary to conform with any changes in such laws, regulations, constitutions, customs and usages and as modified shall remain in full force and effect. Actual deliveries are intended on all transactions.

2. No modification. Except as herein provided, no provision of this agreement as printed shall in any respect be waived, modified, amended or deleted, nor shall acceptance of this agreement and any accounts thereunder by Morgan Keegan constitute ratification of any such changes, nor shall such acceptance prevent Morgan Keegan from asserting and enforcing the original provisions of this agreement as printed unless such changes are expressly agreed to in a document signed by the Manager of Morgan Keegan's Customer Service Department or his/her designee.

3. Discretionary trades, customer required to notify of unauthorized trades. NO EMPLOYEE OF MORGAN KEEGAN IS AUTHORIZED TO EFFECT TRADES FOR THE UNDERSIGNED WITHOUT THE UNDERSIGNED'S EXPRESS PRIOR APPROVAL UNLESS EXPRESSLY AGREED TO IN A SEPARATE WRITTEN GRANT OF DISCRETIONARY AUTHORITY SIGNED BY THE UNDERSIGNED AND THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT OR HIS/HER DESIGNEE. THE UNDERSIGNED AGREES TO BRING ANY UNAUTHORIZED ACTIVITY IMMEDIATELY TO THE ATTENTION OF THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT. The failure of the undersigned to immediately bring any unauthorized activity to the attention of the Manager of Morgan Keegan's Customer Service Department shall serve to ratify and adopt such activity and shall preclude the undersigned from thereafter claiming that the employee lacked express authorization to effect those or other transactions in or for the account of the undersigned.

4. Duty to examine statements and advise of errors. The undersigned will examine all statements, confirmations and other reports or notices upon receipt thereof from Morgan Keegan. Morgan Keegan may deem such statements, confirmations, reports or notices to have been accepted by the undersigned as correct and conclusive if the undersigned does not notify the Morgan Keegan Customer Service Department otherwise in writing within ten (10) days after receipt, except in regard to transactions in options and contracts relating thereto, wherein notice of any discrepancies must be provided within three (3) days of receipt. Any such notice from the undersigned, including notice of the non-receipt of any such report, will also be made by the undersigned via telephone directed to Morgan Keegan's Customer Service Department in Memphis, Tennessee. The undersigned acknowledges that due to the nature of the markets involved, positions confirmed or deleted in error may result in a substantial loss. Consequently, the undersigned agrees that if for any reason the undersigned fails to bring an error or discrepancy to Morgan Keegan's attention within the periods specified above, any loss will be the responsibility and liability of the undersigned.

5. Arbitration. This provision relates to the arbitration of disputes:

(a) *Arbitration is final and binding on the parties.*
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees and, by accepting, opening or maintaining any account for the undersigned, Morgan Keegan agrees that all controversies between the undersigned and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever, shall be determined by arbitration. Any arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., or an arbitration forum provided by any other securities exchange or organization of which Morgan Keegan is a member, and in accordance with the rules of such organization. The undersigned may elect in the first instance which of the aforementioned arbitration forums will be utilized to resolve the controversy by delivering written notification of such election to Morgan Keegan at Morgan Keegan's office in Memphis, Tennessee. If the undersigned fails to make such election by notifying Morgan Keegan of such election as specified within five (5) days after receipt from Morgan Keegan of a request to make such election, then Morgan Keegan may make such election.

This arbitration provision shall apply to any controversy or claim or issue in any controversy arising from events which occurred prior to, on or subsequent to the execution of this arbitration agreement. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Notwithstanding anything in this agreement to the contrary, no person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:

(i) the class certification is denied; or
(ii) the class is decertified; or
(iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

6. Orders, deliveries and notices. Any orders to sell securities placed by the undersigned shall include an implied representation by the undersigned that the undersigned owns the security, and if the security is not in Morgan Keegan's possession at the time of the contract for sale, the undersigned agrees to deliver the security to Morgan Keegan by settlement date. Morgan Keegan shall not be required to deliver to the undersigned the same securities deposited or received, but only securities of the same kind and amount and Morgan Keegan shall not be required or in any way obligated to give the undersigned notice regarding any security Morgan Keegan may hold in the undersigned's account or accounts relating to 1) call for payment, 2) default in payment of principal or interest, or 3) receivership, bankruptcy or reorganization of the issuer of any security, and the fact that such information may be given shall not constitute a waiver of this provision.

7. Security interest in property. As security for the payment of all liabilities and obligations the undersigned may have to Morgan Keegan now or in the future, the undersigned grants Morgan Keegan a general lien and security interest in all monies and property of the undersigned or in which the undersigned may have an interest carried by Morgan Keegan at any time in any account of the undersigned (held either individually, jointly or otherwise) or which may at any time be in Morgan Keegan's possession or under its control for any purpose. In enforcing its security interest, and in addition to the rights provided herein, Morgan Keegan shall have all the rights and remedies available to a secured party under the Tennessee Uniform Commercial Code.

8. Loan of customer's securities. Until Morgan Keegan receives written notice of revocation from the undersigned, Morgan Keegan is hereby authorized to lend to itself as broker or to others any securities held by Morgan Keegan on margin for the account of, or under the control of, the undersigned.

9. Payment of Loans on Demand. The undersigned agrees to pay on demand any balance owing with respect to any of the undersigned's accounts, including interest and commissions. The undersigned understands that Morgan Keegan may demand full payment of the balance due in the undersigned's accounts plus any interest charges accrued thereon at Morgan Keegan's sole option, at any time without cause and whether or not such demand is made for Morgan Keegan's protection. That is, loans are not made for any specific term or duration but rather are due and payable at Morgan Keegan's discretion upon a demand for payment made to the undersigned. The undersigned agrees that Morgan Keegan may at its sole option apply payments of interest, dividends, premium and principal received on any of the collateral, whether pursuant to the terms of such collateral or upon the sale of the collateral, to the payment of the balance due in the undersigned's accounts or pay such amounts to the undersigned.

10. Maintenance of collateral. The undersigned understands that the properties in the undersigned's Margin Account may be carried in Morgan Keegan's general loans and may be pledged or hypothecated by Morgan Keegan separately or in common with other properties. The pledge or hypothecation by Morgan Keegan may secure Morgan Keegan's indebtedness equal to or greater than the amount owed to Morgan Keegan by the undersigned. The undersigned agrees to deposit additional collateral, as Morgan Keegan may in its discretion require from time to time, in the form of cash or securities in accordance with the rules and regulations of the Federal Reserve Board, the New York Stock Exchange, other national securities exchanges, associations or regulatory agencies under whose jurisdictions Morgan Keegan is subject and Morgan Keegan's own minimum house margin maintenance requirements. In the event the undersigned no longer maintains a debit balance or an indebtedness to Morgan Keegan, it is understood that Morgan Keegan will fully segregate all securities in the undersigned's accounts in Morgan Keegan's safekeeping or control (directly or through a clearinghouse) and/or deliver them to the undersigned upon request.

11. Interest charges and payments. The undersigned agrees to pay interest to the extent not prohibited by the laws of the State of Tennessee, upon all amounts advanced and other balances due in the undersigned's accounts in accordance with Morgan Keegan's usual custom, which may include the compounding of interest. Morgan Keegan's custom, which may change from time to time, will be set forth in a Statement of Credit Terms or similar document, which is incorporated herein by reference. By entering into any transactions with Morgan Keegan after the undersigned receives the Statement of Credit Terms, the undersigned acknowledges that the undersigned has read and agreed to the Statement of Credit Terms for all past and future transactions in the undersigned's account. The undersigned understands that interest on all debit balances shall be payable on demand and that in the absence of any demand interest shall be due on the last business day of each interest period. The undersigned's daily net debit balance will include accrued interest that the undersigned has not paid during prior interest periods, if any. The undersigned understands that to the extent permitted by applicable law Morgan Keegan may charge the undersigned interest on the unpaid interest previously added to the undersigned's debit balance; that is, Morgan Keegan may charge the undersigned compound interest. Payments of interest and principal and all other payments made by the undersigned under this agreement shall be made to Morgan Keegan's main office in Memphis, Tennessee.

12. Liquidation of collateral. Should the undersigned fail to make any payment or deliver any property to Morgan Keegan when due, fail to maintain in any account of the undersigned with Morgan Keegan collateral of sufficient value to meet Morgan Keegan's then-current requirements or otherwise fail to discharge any obligation to Morgan Keegan, or should the undersigned die or should Morgan Keegan for any reason whatsoever deem it necessary for its protection, Morgan Keegan is hereby authorized to sell any securities or other property in any account of the undersigned with Morgan Keegan or buy-in any property which any such account may be short, or otherwise effect settlement, or cancel any outstanding orders to satisfy any such requirement or obligation. Any such sale, purchase, settlement or cancellation may be made at Morgan Keegan's discretion and at its prevailing commission rates on any exchange or market where such business is transacted or at public auction or private sale without notice to the undersigned and without advertisement, tender or demand of any kind on the undersigned, such notice, advertisement, tender or demand being hereby expressly waived by the undersigned. Morgan Keegan may purchase any such property for its own account or on behalf of anyone else free from right of redemption. The undersigned shall remain liable for any deficiency in any account of the undersigned. The undersigned shall also be liable for any fines, assessments or other costs levied against Morgan Keegan by any exchange, clearinghouse or regulatory authority resulting from the failure of the undersigned to deliver or otherwise make available any property sold by Morgan Keegan at the direction of the undersigned. No tender, demand, call or notice by Morgan Keegan shall constitute a waiver of any right to take any other action permitted hereunder at that time or in the future. The failure of Morgan Keegan to enforce its rights under this paragraph, this agreement or any other agreement between the undersigned and Morgan Keegan shall not act as a waiver of any such rights nor preclude Morgan Keegan from exercising those rights thereafter.

13. Authority to transact business. Each of the parties who executes this agreement in a representative or fiduciary capacity represents and warrants to Morgan Keegan that he/she has the requisite authority to enter into and operate under this agreement on behalf of his/her principal, and for the risk and in the name of the principal. If this agreement is signed in a representative capacity by more than one person, and unless written notice to the contrary is provided to the Manager of Morgan Keegan's Customer Service Department prior to the transaction of any business in the account, each such person represents and warrants that any one of them, acting alone, may buy, sell and otherwise deal in stocks, bonds, options and other securities, listed or unlisted for present or future delivery, on margin or otherwise and to deposit with, withdraw and receive payment or delivery in regard to said account from Morgan Keegan of money, stocks, bonds, and other negotiable instruments, securities and other property.

14. Capacity; notice of changed circumstances. The undersigned represents that, unless the Manager of Morgan Keegan's Customer Service Department has been notified in writing to the contrary; the undersigned, if a natural person, has reached the age of majority; the undersigned is not insolvent; the undersigned is not an employee of any securities exchange, or of any corporation of which any such exchange owns a majority of the capital stock, or of any member of any such exchange, or of a member firm corporation or organization registered with any such exchange, or of a bank, trust company or insurance company or of any corporation, firm or individual engaged in the business of dealing either as a broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper; the undersigned is not registered with any securities exchange, association or commission; and no one except the undersigned has an interest in any account of the undersigned with Morgan Keegan. The undersigned agrees that he will promptly notify the Manager of Morgan Keegan's Customer Service Department in writing of any change in his circumstances affecting the foregoing representations.

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

MUST CHECK ONE BOX AT RIGHT BEFORE SIGNATURE ☒ CASH ☐ MARGIN

Signature: Susan A. Wodopian Date: 1/12/04

Signature ______ Date ______

Signature ______ Date ______

Signature ______ Date ______

Social Security or Taxpayer ID # 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

PLEASE SIGN IN BLUE OR BLACK INK

For Office Use Only

Morgan Keegan Account # 73249385 RR H10R5 Regions Checking # ______

15. Default of exchange. Morgan Keegan shall not be liable to the undersigned for any default by a market or exchange on which the undersigned may have acquired a position. The undersigned understands that exchanges may change terms, rules and procedures which may affect markets adversely; the exchange may also default on a duty to pay its obligation or may be unable to take or make delivery of positions traded thereon.

16. Limits on transactions. Morgan Keegan may limit the number of securities, options or contracts related thereto which it will place, buy, sell or hold for the account of the undersigned and reserves the right to cease accepting orders for additional securities, options or contracts related thereto from the undersigned at any time.

17. Morgan Keegan recommendations as opinions. Morgan Keegan's recommendations are recognized by the undersigned as opinions since such suggestions may deal with future developments that cannot be predicted with certainty, and Morgan Keegan is under no obligation to keep the undersigned abreast of developments in the market concerning securities, options or contracts related thereto, and the undersigned shall be responsible for remaining informed of those developments.

18. Inconsistent recommendations possible; trades create commissions. Morgan Keegan may from time to time make recommendations concerning the advisability of buying, selling or holding securities, options or contracts relating thereto, or employing a trading method or program. The market activities of Morgan Keegan or any of its officers, directors, employees, customers or shareholders may be inconsistent with the recommendations of Morgan Keegan to the undersigned. Morgan Keegan is in the business of providing securities account services, many of which result in the generation of brokerage commissions. If the undersigned elects to follow a trading program, such a program may result in a higher number of trades being made and a resulting greater amount of commissions being generated in the undersigned's account.

19. Commissions, fees and charges. The undersigned agrees that commissions and fees will be charged to the account in accordance with Morgan Keegan policy. Commissions and fee amounts may be changed from time to time by Morgan Keegan without notice to the undersigned. Such fees may include but not be limited to a service charge in the event any account produces no commission revenue in a calendar year and a service charge for accounts transferred to other firms. The undersigned agrees that in the event payment is not made by settlement date for securities purchased in a cash account of the undersigned, to the extent provided by law, a late charge may be imposed at the maximum rate of interest set forth in the Statement of Credit Terms from the settlement date to the date of payment.

20. Permission to obtain credit reports. The undersigned authorizes Morgan Keegan to obtain information concerning credit and business conduct of the undersigned as Morgan Keegan deems such to be appropriate. Upon written request from the undersigned, credit reports in the possession of Morgan Keegan will be provided to the undersigned, including the name and address of the consumer credit reporting agency which provided the report.

21. Receipt of checks; crediting checks when paid. All checks from the undersigned to be credited to the undersigned's account with Morgan Keegan shall be payable or endorsed to Morgan Keegan & Company, Inc. Morgan Keegan may in its discretion (a) refuse to accept for the undersigned's account checks payable to any party other than the undersigned and (b) accept checks for collection only, which checks shall not be credited to the undersigned's account until paid.

22. Attorney's fees. Any expense, including costs and attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in collection of a deficit from the undersigned or in enforcing Morgan Keegan's rights under this agreement shall be borne solely by the undersigned. Any expense, including attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in defense of an action brought by the undersigned against Morgan Keegan or its agents or employees in connection with any account of the undersigned shall be borne solely by the undersigned should Morgan Keegan prevail.

23. Notice delivered to undersigned when mailed to account address. Communications directed to the undersigned at the address then appearing on the account of the undersigned, sent by ordinary mail or delivered to such address, shall be deemed to have been personally delivered to the undersigned whether or not actually received.

24. Notice to Morgan Keegan. Unless otherwise specified, any notice required by this agreement to be given by the undersigned to Morgan Keegan shall be addressed to the Manager of Morgan Keegan's Customer Service Department at Morgan Keegan's Home Office at Fifty North Front Street, Memphis, Tennessee 38103, or at such other address as Morgan Keegan may instruct in writing.

25. Ratification of prior transactions. All transactions and dealings with Morgan Keegan prior to the execution of this agreement are hereby ratified by the undersigned and the undersigned hereby agrees that all such transactions and dealings are subject to all terms and provisions of this agreement as if they had taken place subsequent to the execution hereof.

26. Invalidity of provision not affecting enforceability of agreement. In the event any provision or clause of this agreement shall be deemed invalid, void or unenforceable for any reason, that determination shall not affect the remainder of this agreement, which shall continue in full force and effect.

27. Acceptance of agreement by Morgan Keegan. Except as provided in paragraph 2 with respect to modification, the acceptance, opening or maintenance of an account for the undersigned by Morgan Keegan shall constitute acceptance of this agreement by Morgan Keegan without signature hereon.

28. Joint Accounts.

a. If this is a Joint Account, the undersigned agree that they each shall have authority on behalf of this account to buy, sell and otherwise deal in securities through Morgan Keegan as broker; to receive for the account confirmations, statements and communications of every kind; to receive for the account and to dispose of money, securities and other property; to make, terminate, or modify for the account, agreements relating to these matters or waive any of the provisions of such agreements; and generally to deal with Morgan Keegan as if each of the undersigned alone was the account owner, all without notice to the other account owners. The undersigned agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account.

b. Morgan Keegan may follow the instructions of any of the undersigned concerning this account and make deliveries to any of the undersigned, of any or all securities in this account, and make payments to any of the undersigned, of any or all monies in this account as any of the undersigned may order and direct, even if such deliveries and/or payments shall be made to one of the undersigned personally, and not for this account. Morgan Keegan shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and Morgan Keegan shall not be bound to see to the application or disposition of the said securities and/or monies so delivered or paid to any of the undersigned.

c. In the event of the death of any of the undersigned, the survivor(s) shall immediately give Morgan Keegan written notice thereof, and Morgan Keegan may, before or after receiving such notice, take such proceedings, require such documents, retain such portion and/or restrict transactions in the account as Morgan Keegan may deem advisable to protect Morgan Keegan against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any of the undersigned who shall have died shall be liable and each survivor will be liable, jointly and severally, to Morgan Keegan for any debt or loss in this account resulting from the completion of transactions initiated prior to Morgan Keegan's receipt of a written notice of such death or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

d. Any taxes or other expenses becoming a lien against or being payable out of the account as the result of the death of any of the undersigned, or through the exercise by his or her estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent. This provision shall not release the decedent's estate from any liability provided for in this agreement.

e. DESIGNATION OF TENANCY:

i. Joint Tenants with Rights of Survivorship/when one dies his or her interest passes to the survivor(s).

Morgan Keegan may presume that it is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants-in-common, unless otherwise provided by striking this paragraph ("i") and filling in the terms of paragraph ("ii") hereafter. In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor(s) on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability.

ii. Tenants-in-Common without Rights of Survivorship/ when one dies, his or her interest passes to his or her estate.

Morgan Keegan may presume that if we strike paragraph ("i") above and fill in the terms of this paragraph ("ii") below, it is the express intention of the undersigned to create an estate or account as tenants-in-common without rights of survivorship and not as joint tenants. Our interests in the account shall be set forth below. In the event of the death of either or any of the undersigned, the interests in the account shall be determined as of the close of business on the date of death of the decedent (or on the next following business day if the date of death is not a business day) as follows:

| | | |
|---|---|---|
| *Name of Tenant | or his or her estate % | Note: Total percentages must equal 100% |
| *Name of Tenant | or his or her estate % | |
| *Name of Tenant | or his or her estate % | |

*Indicate names and percentage amounts of the interests of each tenant. The only names to be inserted are those of the present owners of the account; heirs or beneficiaries CANNOT be designated on this form.

29. Non-objecting beneficial owners. Under rule 14b-1(c) of the Securities Exchange Act, Morgan Keegan is required to disclose to the issuer the name, address, and securities position of its customers who are beneficial owners of that issuer's securities unless the customer objects.

30. Sweep of free credit balances. Morgan Keegan may sweep all free credit balances daily into a money market fund as designated by the undersigned, or in the event no money market fund is designated, the undersigned authorizes Morgan Keegan to credit interest on free credit balances maintained for investment or reinvestment on behalf of the undersigned. The rate of interest paid on these balances will be published periodically by Morgan Keegan, and will vary with market conditions. The policies and procedures governing this payment of interest can be changed at any time. The undersigned agrees that no funds will be swept or receive interest unless the minimum investment requirement is met.

PLEASE SWEEP MY CREDIT BALANCES INTO MY MONEY FUND, WHICH IS:

☐ Money Market ☐ Tax-Exempt ☐ Government Obligations

31. Tax certification. Under penalties of perjury, the undersigned certifies (1) that the number shown on this form is the correct taxpayer identification number for the undersigned and (2) that the undersigned is not subject to backup withholding as a result of failure to report all interest or dividends, or the Internal Revenue Service has notified the undersigned that the undersigned is no longer subject to backup withholding. (The undersigned understands that if he/she has been notified by the IRS that he/she is subject to backup withholding as a result of dividend or interest underreporting, he/she must cross out the information contained in clause (2) of this paragraph.)

32. Receipt of order flow payment. Client securities orders may be executed with Morgan Keegan itself, with other broker dealers, or through the exchanges on which the securities are listed. Several of these market facilities offer automated execution services. Morgan Keegan's order routing among the execution facilities depends upon various factors such as the trading characteristics of the particular security and the size of the order. The participants to whom Morgan Keegan directs orders will execute such orders at or within the displayed national best bid or offer ("NBBO"), subject to order size and liquidity of markets, thus providing the opportunity for best execution of both limit and market orders. Morgan Keegan may receive additional cash remuneration, known as order flow payment, in some instances.

33. Risk of Loss Disclosures: You understand, acknowledge and agree that (i) the account is not insured by the Federal Deposit Insurance Corporation (FDIC); (ii) the account is not a deposit Account or other obligation of, or guaranteed by, Regions Financial Corporation or any of its banking or other affiliates; and (iii) the funds held in the account are subject to investment risks, including possible loss of the principal amount invested. The banking affiliates of Regions Financial Corporation may be lenders to issuers of securities that we underwrite. You should refer to disclosure documents relating to particular securities for a discussion of any such lending relationship.

NOTICE: Any person, whether married, unmarried or separated, may apply for a separate account.

| NOT FDIC INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

THE UNDERSIGNED ACKNOWLEDGES THAT THE UNDERSIGNED HAS RECEIVED A DUPLICATE OF THIS AGREEMENT; AND THAT THIS AGREEMENT CONTAINS A BINDING AND ENFORCEABLE PREDISPUTE ARBITRATION PROVISION IN PARAGRAPH 5 ON PAGE 1 HEREOF.

| Client's Signature | Date | Other Client's Signature | Date |
|---|---|---|---|
| X Dawn L Schuessler | 7-8-03 | X | |

All communications for this account are to be mailed to:

NAME Dawn L. Schuessler

ADDRESS 5810 Darnell

CITY Houston STATE Texas ZIP 77074-7718

BUSINESS PHONE ( ) N/A HOME PHONE 713. 774. 3923

PLEASE PRINT YOUR NUMBERS LIKE THIS 1 2 3 4 5 6 7 8 9 0

| Account Number | RR |
|---|---|
| 3 2 1 0 6 8 6 6 4 0 3 9 | |

The Social Security or Tax ID Number on Morgan Keegan's records is: 4 5 0 8 4 6 9 0 7

The Social Security or Tax ID Number should be: (do not enter dashes)

FORM #00026 (REV 10/01) DETACH & RETURN ONLY THIS EXECUTED PAGE TO MORGAN KEEGAN ORIGINAL

Morgan Keegan & Company, Inc.
IRA AGREEMENT AND NEW ACCOUNT APPROVAL

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT: (select one) [X] TRADITIONAL IRA [ ] ROTH IRA [ ] SEP IRA (Simplified Employee Pension) [ ] SIMPLE IRA [ ] Coverdell Education Savings Account (ESA)
FA NUMBER: N0RS
ACCOUNT NUMBER: 7325180 3

LEGAL NAME (FIRST MIDDLE INITIAL LAST): KENNETH W. SEARS JR
SOCIAL SECURITY / TAX ID NUMBER: 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
DATE OF BIRTH (mm/dd/yyyy): 1/7/67
MARITAL STATUS: (select one) MARRIED [X] SINGLE [ ]
FEE SCHEDULE
SPOUSE'S NAME: Mary Beth
ANNUAL CUSTODIAL FEE $35
TERMINATION FEE $75
US CITIZEN YES X NO __
IF NO, CITIZEN OF WHAT COUNTRY?
NUMBER OF DEPENDENTS: 2
TELEPHONE NUMBER: HOME 985-871-1177 MOBILE 985-966-1143
A custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability, a termination fee will be charged.
HOME ADDRESS: (STREET ADDRESS - NO PO BOX ALLOWED) 810 CRESTWOOD DR
CITY COVINGTON STATE LA ZIP 70433

DUPLICATE MAILING ADDRESS: CONFIRMATION __ STATEMENT __ BOTH __
NAME
CITY STATE ZIP
ALTERNATE MAILING ADDRESS:
NAME
CITY STATE ZIP

PRIMARY OWNER EMPLOYMENT INFORMATION: EMPLOYER NAME ST PAUL'S SCHOOL
ADDRESS P.O. Box 928 - COVINGTON LA 70434
POSITION TITLE Teacher TELEPHONE 985 892 3200 x 281 TYPE OF BUSINESS SCHOOL
RETIRED [ ] IF RETIRED, COMPANY NAME HOMEMAKER [ ]

APPROXIMATE ANNUAL INCOME: 40m - 65m
APPROXIMATE LIQUID NET WORTH: 25 m
APPROXIMATE NET WORTH: 100 m
TAX BRACKET: 35

INVESTMENT OBJECTIVES (NUMBER IN ORDER OF PRIORITY ALL THAT APPLY - MINIMUM OF ONE MUST BE SELECTED)

1 GROWTH SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH.
3 INCOME SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS.
2 TAX ADVANTAGE PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES.
4 SPECULATION SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY.

INVESTMENT EXPERIENCE (ENTER YEARS OF EXPERIENCE FOR EACH CATEGORY)
COMMON STK 10 PREF STOCK 0
MUN BONDS 0 CORP BONDS 0 GOVT BONDS 0 MUTUAL FUNDS 5 OPTIONS 0
UN FUNDS 5 LTD PTRSHP 0 INSURANCE 0 FIXED ANNUITY VAR ANNU 0
WRAP ACCOUNTS 0 UITS 0 TX FREE BD 0 TAXABLE BD 0

HOW WAS THE ACCOUNT OBTAINED? CALL IN __ WALK IN __ PERSONAL ACQUAINTANCE, HOW LONG __ ADVERTISING LEAD __ REFERRAL __ OTHER ✓ REGIONS REFERRAL __ REGIONS REFERRAL CODE __

INITIAL TRANSACTION: (FOR ALL EXCEPT TRANSFERS, NEED TO INCLUDE AMOUNT AND SYMBOL/CUSIP)
PURCHASE [ ] SALE [ ] DEPOSIT [ ] TRANSFER [✓] OTHER [ ]

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? YES __ NO ✓
IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? YES __ NO ✓
IF YES, WHO AND THE RELATIONSHIP.

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? YES __ NO ✓
DOES THIS CLIENT HAVE ACCOUNTS AT OTHER FIRMS? YES ✓ NO __
IF YES, PLEASE LIST FIRM NAMES: RFS Investments

IS THIS CLIENT A REGIONS EMPLOYEE? YES __ NO ✓
Q1 IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR > 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? YES __ NO ✓ IF YES, WHAT COMPANY?

Q2 IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? YES __ NO ✓
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM

Q3 DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? YES __ NO ✓
Q4 IS THE BROKER REGISTERED IN THE STATE WHERE THE CLIENT RESIDES? YES ✓ NO __

Q5 WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? YES __ NO ✓
IF YES, NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR

UNINVESTED FUNDS SWEEP: SELECT ONE: REGIONS FDIC (20) __ OTHER 77

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiaries:

| | BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | MUST CIRCLE ONE |
|---|---|---|---|---|---|
| 1 | MARY BETH SEARS | 12-22-67 | SPOUSE | 100 | (PRIMARY) SECONDARY |
| 2 | | | | | PRIMARY SECONDARY |
| 3 | | | | | PRIMARY SECONDARY |
| 4 | | | | | PRIMARY SECONDARY |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

I ACKNOWLEDGE THIS INFORMATION TO BE ACCURATE. I ALSO ACKNOWLEDGE THAT I HAVE RECEIVED AND FULLY UNDERSTAND THE TERMS AND CONDITIONS OF THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL RETIREMENT ACCOUNT DISCLOSURE STATEMENT AND THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL ACCOUNT CUSTODIAL ACCOUNT AGREEMENT ("CUSTODIAL ACCOUNT AGREEMENT"). I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I APPOINT MORGAN KEEGAN & COMPANY, INC. AS CUSTODIAN OF MY TRADITIONAL/ROTH/SIMPLE IRA/COVERDELL ESA ACCOUNT AND ADOPT THE CUSTODIAL ACCOUNT AGREEMENT AND AGREE TO ANY SUBSEQUENT AMENDMENTS THERETO. I UNDERSTAND THAT THE CUSTODIAL ACCOUNT AGREEMENT HEREBY ADOPTED CONTAINS A PRE-DISPUTE ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE BEEN ADVISED THAT THE ABOVE IDENTITY INFORMATION WILL BE VERIFIED.

[signature] 8/22/04
CLIENT SIGNATURE DATE

Russell W. Sterr 8/30/04 RDB 8-30-04 Leslie O. Barrett 8-30-04
BROKER SIGNATURE DATE BOM INITIALS APPROVED DATE BRANCH MANAGER SIGNATURE DATE

You must sign in blue or black ink.

MK 0058502
Garrett - Morgan Keegan

Morgan Keegan & Company, Inc.
IRA AGREEMENT AND NEW ACCOUNT APPROVAL

TYPE OF ACCOUNT: Coverdell Education Savings Account (ESA)
FA NUMBER: 40R5
ACCOUNT NUMBER: 732 51811

LEGAL NAME: DANIEL J. SEARS-COVERDELL ESA
SOCIAL SECURITY / TAX ID NUMBER: 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
DATE OF BIRTH: 8/23/2003
MARITAL STATUS: MARRIED
SPOUSE'S NAME: MARY BETH
NUMBER OF DEPENDENTS: 2
US CITIZEN: YES

FEE SCHEDULE: ANNUAL CUSTODIAL FEE $35; TERMINATION FEE $75

TELEPHONE NUMBER: HOME 985-871-1177 MOBILE 985-966-1143
HOME ADDRESS: 510 CRESTWOOD DR
CITY COVINGTON STATE LA ZIP 70433

PRIMARY OWNER EMPLOYMENT INFORMATION: EMPLOYER NAME ST PAUL'S SCHOOL
ADDRESS P.O. BOX 928. COVINGTON, LA 70434
POSITION/TITLE teacher TELEPHONE 985-892-3200 TYPE OF BUSINESS School

APPROXIMATE ANNUAL INCOME: 50m
APPROXIMATE LIQUID NET WORTH: 25m
APPROXIMATE NET WORTH: 100m
TAX BRACKET: 35

INVESTMENT OBJECTIVES: 1 Growth; 2 Tax advantage; 3 Income; 4 Speculation

INVESTMENT EXPERIENCE: MUNI BONDS 0; CORP BONDS 0; GOVT BONDS 0; COMMON STK 0; PREF STOCK 0; MM FUNDS 5; LTD PTRSHP 0; INSURANCE 0; MUTUAL FNDS 5; OPTIONS; FIXED ANNU 0; VAR ANNU 0; WRAP ACCOUNTS 0; UITS 0; TX FREE BD 0; TAXABLE BD 0

HOW WAS THE ACCOUNT OBTAINED? OTHER
INITIAL TRANSACTION: TRANSFER

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? NO
IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? NO
DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? NO
DOES THIS CLIENT HAVE ACCOUNTS AT OTHER FIRMS? YES — FFS INVESTMENTS
IS THIS CLIENT A REGIONS EMPLOYEE? NO
IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR > 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? NO
IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? NO
DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? NO
IS THE BROKER REGISTERED IN THE STATE WHERE THE CLIENT RESIDES? YES
WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? NO

UNINVESTED FUNDS SWEEP: OTHER 71

BENEFICIARY: KENNETH W. SEARS JR — DATE OF BIRTH 1-7-67 — RELATIONSHIP FATHER — 100% — PRIMARY

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

I ACKNOWLEDGE THIS INFORMATION TO BE ACCURATE. I ALSO ACKNOWLEDGE THAT I HAVE RECEIVED AND FULLY UNDERSTAND THE TERMS AND CONDITIONS OF THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL RETIREMENT ACCOUNT DISCLOSURE STATEMENT AND THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL ACCOUNT CUSTODIAL ACCOUNT AGREEMENT ("CUSTODIAL ACCOUNT AGREEMENT"). I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I APPOINT MORGAN KEEGAN & COMPANY, INC. AS CUSTODIAN OF MY IRA/ROTH IRA/SIMPLE IRA/COVERDELL ESA ACCOUNT AND ADOPT THE CUSTODIAL ACCOUNT AGREEMENT AND AGREE TO ANY SUBSEQUENT AMENDMENTS THERETO. I UNDERSTAND THAT THE CUSTODIAL ACCOUNT AGREEMENT HEREBY ADOPTED CONTAINS A PRE-DISPUTE ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE BEEN ADVISED THAT THE ABOVE IDENTITY INFORMATION WILL BE VERIFIED.

CLIENT SIGNATURE: [signature] DATE 8/22/04
BROKER SIGNATURE: [signature] DATE 8/30/04 — BOM INITIALS APPROVED [initials] DATE 8-30-04 — BRANCH MANAGER SIGNATURE [signature] DATE 8-30-04

You must sign in blue or black ink.

MK 0059043
Garrett - Morgan Keegan

Morgan Keegan & Company, Inc.
IRA AGREEMENT AND NEW ACCOUNT APPROVAL

TYPE OF ACCOUNT: [select one] ☐ TRADITIONAL IRA ☐ ROTH IRA ☐ SEP IRA ☐ SIMPLE IRA ☒ Coverdell Education Savings Account (ESA)
FA NUMBER: HORS
ACCOUNT NUMBER: 7315 1829

LEGAL NAME (FIRST, MIDDLE INITIAL, LAST): KENNETH W. SEARS III — COVERDELL ESA
SOCIAL SECURITY / TAX ID NUMBER: 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
DATE OF BIRTH (mm/dd/yyyy): 9/30/1997
MARITAL STATUS: MARRIED ☒ SINGLE ☐
FEE SCHEDULE
SPOUSE'S NAME: MARY BETH
ANNUAL CUSTODIAL FEE $35
TERMINATION FEE $75
US CITIZEN: YES X NO
IF NO, CITIZEN OF WHAT COUNTRY?
TELEPHONE NUMBER: HOME 985-871-1177 MOBILE 985-966-1143
NUMBER OF DEPENDENTS: 2
HOME ADDRESS: (STREET ADDRESS - NO PO BOX ALLOWED) 810 CRESTWOOD DR
CITY COVINGTON STATE LA ZIP 70433

DUPLICATE MAILING ADDRESS: CONFIRMATION __ STATEMENT __ BOTH __
NAME
CITY STATE ZIP
ALTERNATE MAILING ADDRESS:
NAME
CITY STATE ZIP

PRIMARY OWNER EMPLOYMENT INFORMATION: EMPLOYER NAME ST PAUL'S SCHOOL
ADDRESS P.O. BOX 928. COVINGTON LA 70434
POSITION/TITLE Teacher TELEPHONE 985-892-3200 x 281 TYPE OF BUSINESS SCHOOL
RETIRED ☐ IF RETIRED, COMPANY NAME HOMEMAKER ☐
APPROXIMATE ANNUAL INCOME: 50 m
APPROXIMATE LIQUID NET WORTH: 25 m
APPROXIMATE NET WORTH: 100 m
TAX BRACKET: 35

INVESTMENT OBJECTIVES (NUMBER IN ORDER OF PRIORITY ALL THAT APPLY - MINIMUM OF ONE MUST BE SELECTED)
1 GROWTH SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH.
3 INCOME SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS.
2 TAX ADVANTAGE PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES.
4 SPECULATION SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY.

INVESTMENT EXPERIENCE (ENTER YEARS OF EXPERIENCE FOR EACH CATEGORY)
COMMON STK 0 PREF STOCK 0
MUNI BONDS 0 CORP BONDS 0 GOVT BONDS 0 MUTUAL FUNDS 5 OPTIONS 0
MM FUNDS 5 LTD PTRSHP 0 INSURANCE 0 FIXED ANNU 0 VAR ANNU 0
WRAP ACCOUNTS 0 UITS 0 TX FREE BD 0 TAXABLE BD 0

HOW WAS THE ACCOUNT OBTAINED? CALL IN __ WALK IN __ PERSONAL ACQUAINTANCE, HOW LONG __ ADVERTISING LEAD __ REFERRAL __ OTHER ✓ REGIONS REFERRAL __ REGIONS REFERRAL CODE __

INITIAL TRANSACTION: (FOR ALL EXCEPT TRANSFERS, NEED TO INCLUDE AMOUNT AND SYMBOL/CUSIP)
PURCHASE ☐ SALE ☐ DEPOSIT ☐ TRANSFER ☑ OTHER ☐

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? YES __ NO ✓
IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? YES __ NO ✓
IF YES, WHO AND THE RELATIONSHIP:
DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? YES __ NO ✓
DOES THIS CLIENT HAVE ACCOUNTS AT OTHER FIRMS? YES ✓ NO __
IF YES, PLEASE LIST FIRM NAMES: PSK INVESTMENTS
IS THIS CLIENT A REGIONS EMPLOYEE? YES __ NO ✓
Q1 IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR > 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? YES __ NO ✓ IF YES, WHAT COMPANY?
Q2 IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? YES __ NO ✓
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM
Q3 DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? YES __ NO ✓
Q4 IS THE BROKER REGISTERED IN THE STATE WHERE THE CLIENT RESIDES? YES ✓ NO __
Q5 WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? YES __ NO ✓
IF YES, NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR
UNINVESTED FUNDS SWEEP: SELECT ONE: REGIONS FDIC (20) __ OTHER 71

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiary(ies):

| BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | MUST CIRCLE ONE |
|---|---|---|---|---|
| 1. KENNY W. SEARS JR | 1.2.67 | FATHER | 100 | (PRIMARY) SECONDARY |
| 2. | | | | PRIMARY SECONDARY |
| 3. | | | | PRIMARY SECONDARY |
| 4. | | | | PRIMARY SECONDARY |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

I ACKNOWLEDGE THIS INFORMATION TO BE ACCURATE. I ALSO ACKNOWLEDGE THAT I HAVE RECEIVED AND FULLY UNDERSTAND THE TERMS AND CONDITIONS OF THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL RETIREMENT ACCOUNT DISCLOSURE STATEMENT AND THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL ACCOUNT CUSTODIAL ACCOUNT AGREEMENT ("CUSTODIAL ACCOUNT AGREEMENT"). I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I APPOINT MORGAN KEEGAN & COMPANY, INC. AS CUSTODIAN OF MY IRA/ROTH IRA/SIMPLE IRA/COVERDELL ESA ACCOUNT AND ADOPT THE CUSTODIAL ACCOUNT AGREEMENT AND AGREE TO ANY SUBSEQUENT AMENDMENTS THERETO. I UNDERSTAND THAT THE CUSTODIAL ACCOUNT AGREEMENT HEREBY ADOPTED CONTAINS A PRE-DISPUTE ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE BEEN ADVISED THAT THE ABOVE IDENTITY INFORMATION WILL BE VERIFIED.

[signature] 8/22/04
CLIENT SIGNATURE DATE

Russell W. Stein [signature] 8/30/04 RDB 8-30-04 Leslie O. Barnett 8-30-04
BROKER SIGNATURE DATE BDM INITIALS APPROVED DATE BRANCH MANAGER SIGNATURE DATE

You must sign in blue or black ink.

MK 0059316
Garrett - Morgan Keegan

Margin

Morgan Keegan & Company, Inc. New Account Form

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT: MOR - CASH / ACCOUNT DESCRIPTION: INDIVIDUAL | FA NUMBER: HORS | ACCOUNT NUMBER: 30778021

ACCOUNT TITLE: SHANA L STEIN

PRIMARY SSN/TID or FOREIGN #: 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 | DATE OF BIRTH (mm/dd/yyyy): 03/07/1969

TELEPHONE #: HOME (310)493-0713 MOBILE

SECONDARY SSN/TID or FOREIGN #: | DATE OF BIRTH (mm/dd/yyyy):

US CITIZEN/RESIDENT ALIEN (GREEN CARD): Yes
CITIZEN OF WHAT COUNTRY

NUMBER OF DEPENDENTS: 0 | MARITAL STATUS: SINGLE

HOME ADDRESS
8022 SUNSET BLVD, #306
CITY LOS ANGELES STATE CA ZIP 90046

PRIMARY OWNER EMPLOYMENT INFORMATION: EMPLOYED
EMPLOYER NAME: NONE
ADDRESS: 846 NORTH CAHUENGA, LOS ANGELES, CA 90038
TYPE OF BUSINESS: TELEVISION PRODUCTION
POSITION/TITLE: OTHER
TELEPHONE: (323)993-5100 FAX

| APPROXIMATE ANNUAL INCOME: | APPROXIMATE LIQUID NET | APPROXIMATE NET WORTH: | TAX BRACKET: |
|---|---|---|---|
| $40,000 - $64,999 | $500,000 - $1,000,000 | $1,000,000 - $5,000,000 | 15% |

INVESTMENT OBJECTIVES

1 GROWTH — SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH.

2 INCOME — SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS.

TAX ADVANTAGE — PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES.

SPECULATION — SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE - YEARS

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | UNDER 1 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? OTHER

INITIAL TRANSACTION: DEPOSIT AMOUNT $60,000.00 SYMBOL/CUSIP

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No | IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? Yes NAME RUSSELL STEIN RELATIONSHIP: FATHER

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? No | DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? No FIRM NAMES:

IS THIS CLIENT A REGIONS EMPLOYEE? No | IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY:

IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? Yes
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM: MORGAN KEEGAN & CO. INC.

DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No

WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR:

FUND OPTION REGIONS FDIC FUND (20)

MOR ACCOUNT INSTRUCTIONS

| CHECKWRITING | SPECIAL CHECKWRITING INSTRUCTIONS | VISA CHECKCARD |
|---|---|---|
| PRINT ADDRESS ON CHECK | Number of person with check signing privileges 1 | |
| | ADDITIONAL INFORMATION ON CHECK: | |
| WALLET STYLE CHECK | ADDITIONAL AUTHORIZED SIGNATORY: | MOTHER'S MAIDEN NAME: |

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Hold street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

By signing below, I/we acknowledge that I/we have read, received, understand and agree to abide by all the terms and conditions set forth in the Client Agreement and Disclosure Statement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I/We have REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I/we have retained a copy of the AGREEMENT STATEMENT for my/our records. I/we have been advised that the above identity information provided will be verified. "The arbitration agreement is set forth in, Section 8, Page 2 of the accompanying Agreement and Disclosure Statement."

Russell W. Stein 7/11/06 | APPROVED 08/29/2006 | Deborah ... 7-13-06
FINANCIAL ADVISOR SIGNATURE DATE | DATE | BRANCH MANAGER SIGNATURE DATE

[signature] 07/06/06
CLIENT SIGNATURE DATE | CLIENT SIGNATURE DATE

CLIENT SIGNATURE DATE | CLIENT SIGNATURE DATE

You must sign in blue or black ink.

Morgan Keegan & Company, Inc. New Account Form

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

| TYPE OF ACCOUNT CASH | ACCOUNT DESCRIPTION INDIVIDUAL | FA NUMBER HORS | ACCOUNT NUMBER 30218721 |
|---|---|---|---|
| LEGAL NAME (FIRST MIDDLE INITIAL LAST) JUDY G STRICKLAND | | SSN/TID or FOREIGN # 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 | DATE OF BIRTH (mm/dd/yyyy) 05/22/1943 |
| | | TELEPHONE # HOME (817)731-1314 MOBILE (806)729-0135 | |
| LEGAL NAME (FIRST, MIDDLE INITIAL LAST) | | SSN/TID or FOREIGN # | DATE OF BIRTH (mm/dd/yyyy) |
| US CITIZEN Yes CITIZEN OF WHAT COUNTRY | | NUMBER OF DEPENDENTS 0 | MARITAL STATUS SINGLE |

HOME ADDRESS
6452 WAVERLY WAY

CITY FT WORTH STATE TX ZIP 76116

PRIMARY OWNER EMPLOYMENT INFORMATION RETIRED
EMPLOYER NAME FARMER TYPE OF BUSINESS FARMER
ADDRESS
POSITION/TITLE OTHER TELEPHONE FAX

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET WORTH | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| $65,000 - $124,999 | Over $1,000,000 | $1,000,000 - $5,000,000 | 35% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

2 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE - YEARS

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | UNDER 1 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | UNDER 1 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? PERSONAL ACQUAINTANCE

INITIAL TRANSACTION DEPOSIT AMOUNT 375,000.00 SYMBOL/CUSIP

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No | IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No NAME RELATIONSHIP

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? No | DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? No FIRM NAMES

IS THIS CLIENT A REGIONS EMPLOYEE? No | IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY

IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM

DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No

WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR

FUND OPTION DREYFUS GENERAL (71)

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Held street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

| NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES |
|---|---|---|---|

By signing below, I/we acknowledge that I/we have read, received, understand and agree to abide by all the terms and conditions set forth in the Client Agreement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting rights. I/WE HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I/we have retained a copy of the DISCLOSURE INFORMATION for my/our records. I/we have been advised that the above identity information will be verified.

[signature] 3/2/05 LB 03/02/2005 [signature: Leslie D. Barnett] 3-2-05
BROKER SIGNATURE DATE APPROVED DATE BRANCH MANAGER SIGNATURE DATE

[signature: Judy G. Strickland] 3/2/05
CLIENT SIGNATURE DATE CLIENT SIGNATURE DATE

CLIENT SIGNATURE DATE CLIENT SIGNATURE DATE
You must sign in blue or black ink.

Morgan Keegan & Company, Inc.

IRA AGREEMENT AND NEW ACCOUNT APPROVAL

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

TYPE OF ACCOUNT: (select one) [X] TRADITIONAL IRA [ ] ROTH IRA [ ] SEP IRA (Simplified Employee Pension) [ ] SIMPLE IRA [ ] Coverdell Education Savings Account (ESA)

FA NUMBER: 140R5

ACCOUNT NUMBER: 7325 1043

LEGAL NAME (FIRST, MIDDLE INITIAL, LAST): KENNETH W. SEARS

SOCIAL SECURITY / TAX ID NUMBER: 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

DATE OF BIRTH (mm/dd/yyyy): 01/26/1947

MARITAL STATUS: (select one) MARRIED [X] SINGLE [ ]

FEE SCHEDULE

US CITIZEN YES ✓ NO ___

IF NO, CITIZEN OF WHAT COUNTRY?

SPOUSE'S NAME: LINDA

ANNUAL CUSTODIAL FEE $35

TERMINATION FEE $75

TELEPHONE NUMBER: HOME 504-271-4928 MOBILE

NUMBER OF DEPENDENTS: 5

A custodial fee will be debited annually from the account. Upon termination of the account for any reason other than death or disability, a termination fee will be charged.

HOME ADDRESS: (STREET ADDRESS - NO PO BOX ALLOWED)

2809 ROSETTA DR.

CITY CHALMETTE STATE LA ZIP 70043

DUPLICATE MAILING ADDRESS: CONFIRMATION ___ STATEMENT ___ BOTH ___

NAME

CITY ___ STATE ___ ZIP ___

ALTERNATE MAILING ADDRESS:

NAME

CITY ___ STATE ___ ZIP ___

PRIMARY OWNER EMPLOYMENT INFORMATION: EMPLOYER NAME LOUISIANA MISSISSIPPI CARPenters millwright

ADDRESS RETIRED

POSITION TITLE ___ TELEPHONE ___ TYPE OF BUSINESS ___

RETIRED [X] IF RETIRED, COMPANY NAME ___ HOMEMAKER [ ]

APPROXIMATE ANNUAL INCOME: 50,000.00

APPROXIMATE LIQUID NET WORTH: 130,000.00

APPROXIMATE NET WORTH: 300,000.00 +

TAX BRACKET: 28%

INVESTMENT OBJECTIVES (NUMBER IN ORDER OF PRIORITY ALL THAT APPLY - 1 HIGHEST - 4 LOWEST - MINIMUM OF ONE MUST BE SELECTED)

1 ✓ GROWTH SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH.

3 ✓ INCOME SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS.

2 ✓ TAX ADVANTAGE PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES.

___ SPECULATION SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY.

INVESTMENT EXPERIENCE (ENTER YEARS OF EXPERIENCE FOR EACH CATEGORY)

COMMON STK 5 PREF STOCK ___

MUNI BONDS 5 CORP BONDS ___ GOVT BONDS ___ MUTUAL FNDS 5 OPTIONS ___

MM FUNDS 5 LTD PTRSHP ___ INSURANCE ___ FIXED ANNU ___ VAR ANNU ___

WRAP ACCOUNTS ___ UITS ___ TX FREE BD ___ TAXABLE BD ___

HOW WAS THE ACCOUNT OBTAINED? CALL IN ___ WALK IN ___ PERSONAL ACQUAINTANCE, HOW LONG ___ ADVERTISING LEAD ___ REFERRAL ___ OTHER ✓ REGIONS REFERRAL ___ REGIONS REFERRAL CODE ___

INITIAL TRANSACTION (FOR ALL EXCEPT TRANSFERS, NEED TO INCLUDE AMOUNT AND SYMBOL/CUSIP)

PURCHASE [ ] SALE [ ] DEPOSIT [ ] TRANSFER [X]

IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? YES ___ NO ✓

IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? YES ___ NO ✓ IF YES, WHO AND THE RELATIONSHIP:

DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? YES ___ NO ✓

DOES THIS CLIENT HAVE ACCOUNTS AT OTHER FIRMS? YES ___ NO ✓ IF YES, PLEASE LIST FIRM NAMES:

IS THIS CLIENT A REGIONS EMPLOYEE? YES ___ NO ✓

Q1 IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR > 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? YES ___ NO ✓ IF YES, WHAT COMPANY?

Q2 IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? YES ___ NO ✓

NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM:

Q3 DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? YES ___ NO ✓

Q4 IS THE BROKER REGISTERED IN THE STATE WHERE THE CLIENT RESIDES? YES ✓ NO ___

Q5 WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? YES ___ NO ✓

IF YES, NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR

UNINVESTED FUNDS SWEEP: SELECT ONE: REGIONS FDIC (20) ✓ OTHER ___

BENEFICIARY (IES) of your IRA: In the event of my death before this account is distributed, I hereby designate the following person(s) as my beneficiaries:

| BENEFICIARY | DATE OF BIRTH | RELATIONSHIP | % | MUST CIRCLE ONE |
|---|---|---|---|---|
| 1. LINDA C. SEARS | 07/25/47 | WIFE | 100 | (PRIMARY) SECONDARY |
| 2. KENNETH SEARS JR. | 01/01/67 | CHILDREN | 33 | PRIMARY (SECONDARY) |
| 3. DANielle SEARS | 01/19/74 | DIVIDED | 33 | PRIMARY (SECONDARY) |
| 4. RENE SEARS | 11/03/75 | EQUALLY | 33 | PRIMARY (SECONDARY) |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

I ACKNOWLEDGE THIS INFORMATION TO BE ACCURATE. I ALSO ACKNOWLEDGE THAT I HAVE RECEIVED AND FULLY UNDERSTAND THE TERMS AND CONDITIONS OF THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL RETIREMENT ACCOUNT DISCLOSURE STATEMENT AND THE MORGAN KEEGAN & COMPANY, INC. INDIVIDUAL ACCOUNT CUSTODIAL ACCOUNT AGREEMENT ("CUSTODIAL ACCOUNT AGREEMENT"). I HAVE REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I APPOINT MORGAN KEEGAN & COMPANY, INC. AS CUSTODIAN OF MY RA/ROTH IRA/SIMPLE IRA/COVERDELL ESA ACCOUNT AND ADOPT THE CUSTODIAL ACCOUNT AGREEMENT AND AGREE TO ANY SUBSEQUENT AMENDMENTS THERETO. I UNDERSTAND THAT THE CUSTODIAL ACCOUNT AGREEMENT HEREBY ADOPTED CONTAINS A PRE-DISPUTE ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE BEEN ADVISED THAT THE ABOVE IDENTITY INFORMATION WILL BE VERIFIED.

Kenneth W. Sears 04/02/04
CLIENT SIGNATURE DATE

[signature] 4/19/04 LOB
BROKER SIGNATURE DATE BOM INITIALS APPROVED

4-19-04 Leslie D. Barnett 4-19-04
DATE BRANCH MANAGER SIGNATURE DATE

IRA (Rev 1/04)

MK 0058082
Garrett - Morgan Keegan

Morgan Keegan & Company, Inc New Account Form

Please note that the identity information provided on this form will be verified as required by the USA Patriot Act of 2001.

| | | | |
|---|---|---|---|
| TYPE OF ACCOUNT MOR - CASH | ACCOUNT DESCRIPTION JOINT - JTWROS | FA NUMBER HORS | ACCOUNT NUMBER 30481147 |
| ACCOUNT TITLE<br>KENNETH W. SEARS &<br>LINDA C. SEARS JTWROS | | PRIMARY SSN/TID or FOREIGN # 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 | DATE OF BIRTH (mm/dd/yyyy) 01/26/1947 |
| | | TELEPHONE # HOME (225)346-5024<br>MOBILE | |
| | | JOINT SSN/TID or FOREIGN # 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 | DATE OF BIRTH (mm/dd/yyyy) 07/25/1947 |
| US CITIZEN/RESIDENT ALIEN (GREEN CARD) Yes<br>CITIZEN OF WHAT COUNTRY | | NUMBER OF DEPENDENTS 0 | MARITAL STATUS MARRIED |
| HOME ADDRESS<br>244 ST. JOSEPH<br>CITY BATON ROUGE STATE LA ZIP 70802 | | | |

PRIMARY OWNER EMPLOYMENT INFORMATION RETIRED
EMPLOYER NAME LOUISIANA CARPENTERS REGIONAL COUNCIL TYPE OF BUSINESS UNION
ADDRESS
POSITION/TITLE PROFESSIONAL TELEPHONE FAX

JOINT OWNER EMPLOYMENT INFORMATION HOMEMAKER
EMPLOYER NAME TYPE OF BUSINESS
ADDRESS
POSITION/TITLE OTHER TELEPHONE FAX

| APPROXIMATE ANNUAL INCOME | APPROXIMATE LIQUID NET | APPROXIMATE NET WORTH | TAX BRACKET |
|---|---|---|---|
| $40,000 - $64,999 | $50,000 - $100,000 | $100,000 - $500,000 | 28% |

INVESTMENT OBJECTIVES

1 GROWTH
SEEKS CAPITAL APPRECIATION PRIMARILY WITH EQUITY ORIENTED INVESTMENTS THAT HAVE POTENTIAL FOR SIGNIFICANT GROWTH

2 INCOME
SEEKS INCOME VIA FIXED-INCOME OR EQUITY INVESTMENTS THAT OFFER HIGHER YIELDS

TAX ADVANTAGE
PREFERENCE FOR INVESTMENTS WHICH OFFER TAX-FREE INCOME OR TAX-DEFERRED ADVANTAGES

SPECULATION
SEEKS TO MAXIMIZE RETURN VIA A BROAD RANGE OF INVESTMENT STRATEGIES THAT INVOLVE A HIGH DEGREE OF RISK, VOLATILITY, AND/OR TRADING ACTIVITY

INVESTMENT EXPERIENCE - YEARS

| | | | | | |
|---|---|---|---|---|---|
| STOCKS | OVER 5 | TAX-FREE BONDS | UNDER 1 | TAXABLE BONDS | UNDER 1 |
| MUTUAL FUNDS | UNDER 1 | OPTIONS | UNDER 1 | COMMODITIES | UNDER 1 |
| INSURANCE/ANNUITIES | UNDER 1 | OTHER | UNDER 1 | | |

HOW WAS THE ACCOUNT OBTAINED? PERSONAL ACQUAINTANCE
INITIAL TRANSACTION DEPOSIT AMOUNT 10,000.00 SYMBOL/CUSIP
IS THIS CLIENT A MORGAN KEEGAN EMPLOYEE? No | IS THIS CLIENT RELATED TO A MORGAN KEEGAN EMPLOYEE? No NAME RELATIONSHIP
DOES THIS CLIENT HAVE OTHER ACCOUNTS AT MORGAN KEEGAN? Yes | DOES THE CLIENT HAVE ACCOUNTS AT OTHER FIRMS? No FIRM NAMES
IS THIS CLIENT A REGIONS EMPLOYEE? No | IS CLIENT OR IMMEDIATE FAMILY MEMBER A DIRECTOR, CORPORATE OFFICER OR >= 10% SHAREHOLDER OF A PUBLICLY TRADED COMPANY? No COMPANY
IS CLIENT OR IMMEDIATE FAMILY MEMBER AN EMPLOYEE OF A FINANCIAL INSTITUTION OR NASD MEMBER FIRM? No
NAME OF FINANCIAL INSTITUTION OR NASD MEMBER FIRM
DOES THE BROKER HAVE A BENEFICIAL INTEREST IN THIS ACCOUNT? No
WILL THIS ACCOUNT BE OPERATED BY ANY OTHER PERSON OR INVESTMENT ADVISOR WITH TRADING AUTHORIZATION? No
NAME OF AUTHORIZED AGENT/INVESTMENT ADVISOR
FUND OPTION DREYFUS GENERAL (71)

MOR ACCOUNT INSTRUCTIONS

| | | |
|---|---|---|
| CHECKWRITING<br>PRINT ADDRESS ON CHECK<br>WALLET STYLE CHECK | SPECIAL CHECKWRITING INSTRUCTIONS<br>Number of persons with check signing privileges 2<br>ADDITIONAL INFORMATION ON CHECK:<br>ADDITIONAL AUTHORIZED SIGNATORY: | VISA CHECKCARD<br>MOTHER'S MAIDEN NAME |

| DELIVER: | PAYMENT: | DIVIDEND: | PRINCIPAL: | MATURITY: |
|---|---|---|---|---|
| Hold street name | Hold proceeds | Credit Account | Credit Account | Credit Account |

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE | SEE ACCOUNT AGREEMENT RISK OF LOSS DISCLOSURES

By signing below, I/we acknowledge that I/we have read, received, understand and agree to abide by all the terms and conditions set forth in the Client Agreement and Disclosure Statement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. I/We have REVIEWED THE FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES AND AGREE THAT THIS INFORMATION IS CORRECT. I/we have retained a copy of the AGREEMENT STATEMENT for my/our records. I/we have been advised that the above identity information provided will be verified. **The arbitration agreement is set forth in Section 5, Page 2 of the accompanying Agreement and Disclosure Statement.**

Russell W. Atkin 11/9/05 DH
FINANCIAL ADVISOR SIGNATURE DATE APPROVED 10/26/2005 DATE

Deborah K. Keenan 11/10/05
BRANCH MANAGER SIGNATURE DATE

Kenneth W. Sears 11-3-05
CLIENT SIGNATURE DATE

Kenneth W. Sears 11-3-05
CLIENT SIGNATURE DATE

Linda C. Sears 11-3-05
CLIENT SIGNATURE DATE

Linda C. Sears 11-3-05
CLIENT SIGNATURE DATE

You must sign in blue or black ink.

MK 0062479
Garrett - Morgan Keegan

# Morgan Keegan Client Agreement

PLEASE READ CAREFULLY, SIGN AND RETURN ONE EXECUTED COPY TO:

Morgan Keegan & Company, Inc.
Morgan Keegan Tower
Fifty Front Street
Memphis, TN 38103

In consideration of Morgan Keegan & Company, Inc., or any successor thereof (hereinafter referred to as "Morgan Keegan"), accepting, opening or maintaining one or more accounts of the undersigned (whether designated by name, number or otherwise) for the purchase, sale or carrying of securities, options, contracts relating thereto, and/or other property (hereinafter collectively referred to as "property"), the undersigned agrees as follows:

1. Custom and usage. All transactions for the account of the undersigned shall be subject to all then-applicable federal and state laws and rules and regulations promulgated thereunder, and the constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse. This agreement shall be deemed modified to the extent necessary to conform with any changes in such laws, regulations, constitutions, customs and usages and as modified shall remain in full force and effect. Actual deliveries are intended on all transactions.

2. No modification. Except as herein provided, no provision of this agreement as printed shall in any respect be waived, modified, amended or deleted, nor shall acceptance of this agreement and any accounts thereunder by Morgan Keegan constitute ratification of any such changes, nor shall such acceptance prevent Morgan Keegan from asserting and enforcing the original provisions of this agreement as printed unless such changes are expressly agreed to in a document signed by the Manager of Morgan Keegan's Customer Service Department or his/her designee.

3. Discretionary trades; customer required to notify of unauthorized trades. NO EMPLOYEE OF MORGAN KEEGAN IS AUTHORIZED TO EFFECT TRADES FOR THE UNDERSIGNED WITHOUT THE UNDERSIGNED'S EXPRESS PRIOR APPROVAL UNLESS EXPRESSLY AGREED TO IN A SEPARATE WRITTEN GRANT OF DISCRETIONARY AUTHORITY SIGNED BY THE UNDERSIGNED AND THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT OR HIS/HER DESIGNEE; THE UNDERSIGNED AGREES TO BRING ANY UNAUTHORIZED ACTIVITY IMMEDIATELY TO THE ATTENTION OF THE MANAGER OF MORGAN KEEGAN'S CUSTOMER SERVICE DEPARTMENT. The failure of the undersigned to immediately bring any unauthorized activity to the attention of the Manager of Morgan Keegan's Customer Service Department shall serve to ratify and adopt such activity and shall preclude the undersigned from thereafter claiming that the employee lacked express authorization to effect those or other transactions in or for the account of the undersigned.

4. Duty to examine statements and advise of errors. The undersigned will examine all statements, confirmations and other reports or notices upon receipt thereof from Morgan Keegan. Morgan Keegan may deem such statements, confirmations, reports or notices to have been accepted by the undersigned as correct and conclusive if the undersigned does not notify the Morgan Keegan Customer Service Department otherwise in writing within ten (10) days after receipt, except in regard to transactions in options and contracts relating thereto, wherein notice of any discrepancies must be provided within three (3) days of receipt. Any such notice from the undersigned, including notice of the non-receipt of any such report, will also be made by the undersigned via telephone directed to Morgan Keegan's Customer Service Department in Memphis, Tennessee. The undersigned acknowledges that due to the nature of the markets involved, positions confirmed or deleted in error may result in a substantial loss. Consequently, the undersigned agrees that if for any reason the undersigned fails to bring an error or discrepancy to Morgan Keegan's attention within the periods specified above, any loss will be the responsibility and liability of the undersigned.

5. Arbitration. This provision relates to the arbitration of disputes:

(a) Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees and, by accepting, opening or maintaining any account for the undersigned, Morgan Keegan agrees that all controversies between the undersigned and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever, shall be determined by arbitration. Any arbitration under this agreement shall be before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., or an arbitration forum provided by any other securities exchange or organization of which Morgan Keegan is a member, and in accordance with the rules of such organization. The undersigned may elect in the first instance which of the aforementioned arbitration forums will be utilized to resolve the controversy by delivering written notification of such election to Morgan Keegan at Morgan Keegan's office in Memphis, Tennessee. If the undersigned fails to make such election by notifying Morgan Keegan of such election as specified within five (5) days after receipt from Morgan Keegan of a request to make such election, then Morgan Keegan may make such election.

This arbitration provision shall apply to any controversy or claim or issue in any controversy arising from events which occurred prior to, on or subsequent to the execution of this arbitration agreement. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Notwithstanding anything in this agreement to the contrary, no person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:

(i) the class certification is denied; or
(ii) the class is decertified; or
(iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

6. Orders; deliveries and notices. Any orders to sell securities placed by the undersigned shall include an implied representation by the undersigned that the undersigned owns the security, and if the security is not in Morgan Keegan's possession at the time of the contract for sale, the undersigned agrees to deliver the security to Morgan Keegan by settlement date. Morgan Keegan shall not be required to deliver to the undersigned the same securities deposited or received, but only securities of the same kind and amount; and Morgan Keegan shall not be required or in any way obligated to give the undersigned notice regarding any security Morgan Keegan may hold in the undersigned's account or accounts relating to 1) call for payment, 2) default in payment of principal or interest, or 3) receivership, bankruptcy or reorganization of the issuer of any security, and the fact that such information may be given shall not constitute a waiver of this provision.

7. Security interest in property. As security for the payment of all liabilities and obligations the undersigned may have to Morgan Keegan now or in the future, the undersigned grants Morgan Keegan a general lien and security interest in all monies and property of the undersigned or in which the undersigned may have an interest carried by Morgan Keegan at any time in any account of the undersigned (held either individually, jointly or otherwise) or which may at any time be in Morgan Keegan's possession or under its control for any purpose. In enforcing its security interest, and in addition to the rights provided herein, Morgan Keegan shall have all the rights and remedies available to a secured party under the Tennessee Uniform Commercial Code.

8. Loan of customer's securities. Until Morgan Keegan receives written notice of revocation from the undersigned, Morgan Keegan is hereby authorized to lend to itself as broker or to others any securities held by Morgan Keegan on margin for the account of, or under the control of, the undersigned.

9. Payment of Loans on Demand. The undersigned agrees to pay on demand any balance owing with respect to any of the undersigned's accounts, including interest and commissions. The undersigned understands that Morgan Keegan may demand full payment of the balance due in the undersigned's accounts plus any interest charges accrued thereon, at Morgan Keegan's sole option, at any time without cause and whether or not such demand is made for Morgan Keegan's protection. That is, loans are not made for any specific term or duration but rather are due and payable at Morgan Keegan's discretion upon a demand for payment made to the undersigned. The undersigned agrees that Morgan Keegan may at its sole option apply payments of interest, dividends, premium and principal received on any of the collateral, whether pursuant to the terms of such collateral or upon the sale of the collateral, to the payment of the balance due in the undersigned's accounts or pay such amounts to the undersigned.

10. Maintenance of collateral. The undersigned understands that the properties in the undersigned's Margin Account may be carried in Morgan Keegan's general loans and may be pledged or hypothecated by Morgan Keegan separately or in common with other properties. The pledge or hypothecation by Morgan Keegan may secure Morgan Keegan's indebtedness equal to or greater than the amount owed to Morgan Keegan by the undersigned. The undersigned agrees to deposit additional collateral, as Morgan Keegan may in its discretion require from time to time, in the form of cash or securities in accordance with the rules and regulations of the Federal Reserve Board, the New York Stock Exchange, other national securities exchanges, associations or regulatory agencies under whose jurisdictions Morgan Keegan is subject, and Morgan Keegan's own minimum house margin maintenance requirements. In the event the undersigned no longer maintains a debit balance or an indebtedness to Morgan Keegan, it is understood that Morgan Keegan will full segregate all securities in the undersigned's accounts in Morgan Keegan's safekeeping or control (directly or through a clearinghouse) and/or deliver them to the undersigned upon request.

11. Interest charges and payments. The undersigned agrees to pay interest to the extent not prohibited by the laws of the State of Tennessee, upon all amounts advanced and other balances due in the undersigned's accounts in accordance with Morgan Keegan's usual custom, which may include the compounding of interest. Morgan Keegan's custom, which may change from time to time, will be set forth in a Statement of Credit Terms or similar document, which is incorporated herein by reference. By entering into any transactions with Morgan Keegan after the undersigned receives the Statement of Credit Terms, the undersigned acknowledges that the undersigned has read and agreed to the Statement of Credit Terms for all past and future transactions in the undersigned's account. The undersigned understands that interest on all debit balances shall be payable on demand and that in the absence of any demand interest shall be due on the first business day of each interest period. The undersigned's daily net debit balance will include accrued interest that the undersigned has not paid during prior interest periods, if any. The undersigned understands that to the extent permitted by applicable law Morgan Keegan may charge the undersigned interest on the unpaid interest previously added to the undersigned's debit balance; that is, Morgan Keegan may charge the undersigned compound interest. Payments of interest and principal and all other payments made by the undersigned under this agreement shall be made to Morgan Keegan's main office in Memphis, Tennessee.

12. Liquidation of collateral. Should the undersigned fail to make any payment or deliver any property to Morgan Keegan when due, fail to maintain in any account of the undersigned with Morgan Keegan collateral of sufficient value to meet Morgan Keegan's then-current requirements or otherwise fail to discharge any obligation to Morgan Keegan, or should the undersigned die, or should Morgan Keegan for any reason whatsoever deem it necessary for its protection, Morgan Keegan is hereby authorized to sell any securities or other property in any account of the undersigned with Morgan Keegan or buy-in any property which any such account may be short, or otherwise effect settlement, or cancel any outstanding orders to satisfy any such requirement or obligation. Any such sale, purchase, settlement or cancellation may be made at Morgan Keegan's discretion and at its prevailing commission rates on any exchange or market where such business is transacted or at public auction or private sale without notice to the undersigned and without advertisement, tender or demand of any kind on the undersigned, such notice, advertisement, tender or demand being hereby expressly waived by the undersigned. Morgan Keegan may purchase any such property for its own account or on behalf of anyone else free from right of redemption. The undersigned shall remain liable for any deficiency in any account of the undersigned. The undersigned shall also be liable for any fines, assessments or other costs levied against Morgan Keegan by any exchange, clearinghouse or regulatory authority resulting from the failure of the undersigned to deliver or otherwise make available any property sold by Morgan Keegan at the direction of the undersigned. No tender, demand, call or notice by Morgan Keegan shall constitute a waiver of any right to take any other action permitted hereunder at the time or in the future. The failure of Morgan Keegan to enforce its rights under this paragraph, this agreement or any other agreement between the undersigned and Morgan Keegan shall not act as a waiver of any such rights nor preclude Morgan Keegan from exercising those rights thereafter.

13. Authority to transact business. Each of the parties who executes this agreement in a representative or fiduciary capacity represents and warrants to Morgan Keegan that he/she has the requisite authority to enter into and operate under this agreement on behalf of his/her principal, and for the risk and in the name of the principal. If this agreement is signed in a representative capacity by more than one person, and unless written notice to the contrary is provided to the Manager of Morgan Keegan's Customer Service Department prior to the transaction of any business in the account, each such person represents and warrants that any one of them, acting alone, may buy, sell and otherwise deal in stocks, bonds, options and other securities, listed or unlisted for present or future delivery, on margin or otherwise and to deposit with, withdraw and receive payment or delivery in regard to said account from Morgan Keegan of money, stocks, bonds, and other negotiable instruments, securities and other property.

14. Capacity; notice of changed circumstances. The undersigned represents that, unless the Manager of Morgan Keegan's Customer Service Department has been notified in writing to the contrary: the undersigned, if a natural person, has reached the age of majority; the undersigned is not insolvent; the undersigned is not an employee of any securities exchange, or of any corporation of which any such exchange owns a majority of the capital stock, or of any member of any such exchange, or of a member firm, corporation or organization registered with any such exchange, or of a bank, trust company or insurance company or of any corporation, firm or individual engaged in the business of dealing either as a broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper; the undersigned is not registered with any securities exchange, association or commission; and no one except the undersigned has an interest in any account of the undersigned with Morgan Keegan. The undersigned agrees that he will promptly notify the Manager of Morgan Keegan's Customer Service Department in writing of any change in his circumstances affecting the foregoing representations.

| NOT FDIC-INSURED | May lose value | No bank guarantee | See Account Agreement Risk of Loss Disclosures |
|---|---|---|---|

MUST CHECK ONE BOX AT RIGHT BEFORE SIGNATURE ☑ CASH ☐ MARGIN

Signature: Elizabeth E Stah Date: 4/28/02

Signature: Date:

Signature: Date:

[illegible]oice of law; termination. This agreement and its enforcement shall be governed [illegible] laws of the State of Tennessee, and federal law as applicable, including the Federal [illegible]rbitration Act, and shall cover individually and collectively all accounts which the undersigned may at any time maintain with Morgan Keegan, shall enure to the benefit of Morgan Keegan and its successors or assigns, and shall be binding upon the undersigned, and the executors, administrators, personal representatives, successors, heirs and assigns of the undersigned. This agreement shall continue in effect until written notice of termination is (a) mailed to the undersigned by Morgan Keegan or (b) received by the Manager of Morgan Keegan's Customer Service Department from the undersigned. Notwithstanding any such termination, this agreement shall continue in effect as to all transactions entered into, events occurring or indebtedness incurred prior to such termination and all matters pertaining thereto.

16. Oral instructions. The undersigned agrees that Morgan Keegan shall incur no liability in acting upon oral instructions given to Morgan Keegan concerning the undersigned's account(s), provided such instructions reasonably appear to be genuine.

17. Nominee name; liability of independent contractors. Unless otherwise specified by the undersigned, Morgan Keegan is authorized to enter orders from the undersigned on a principal or agency basis in its name on any exchange or other market or place where such business may be transacted for the undersigned's account and risk. Additionally, Morgan Keegan is authorized to hold securities for the benefit of the undersigned in its nominee name. The undersigned hereby authorizes Morgan Keegan to employ agents on behalf of the undersigned. The identity of any such agent so employed by Morgan Keegan on behalf of the undersigned shall be disclosed to the undersigned upon request. Morgan Keegan shall have no liability to the undersigned for the errors and omissions of independent contractors provided, however, in any controversy between the undersigned and such independent contractor Morgan Keegan shall provide to the undersigned, without expense to the undersigned, such records regarding the transaction as Morgan Keegan has in its possession.

18. Default of exchange. Morgan Keegan shall not be liable to the undersigned for any default by a market or exchange on which the undersigned may have acquired a position. The undersigned understands that exchanges may change terms, rules and procedures which may affect markets adversely. the exchange may also default on a duty to pay its obligation or may be unable to take or make delivery of positions traded thereon.

19. Limits on transactions. Morgan Keegan may limit the number of securities, options or contracts related thereto which it will place, buy, sell or hold for the account of the undersigned and reserves the right to cease accepting orders for additional securities, options or contracts related thereto from the undersigned at any time.

20. Morgan Keegan recommendations as opinions. Morgan Keegan's recommendations are recognized by the undersigned as opinions since such suggestions may deal with future developments that cannot be predicted with certainty, and Morgan Keegan is under no obligation to keep the undersigned abreast of developments in the market concerning securities, options or contracts related thereto and the undersigned shall be responsible for remaining informed of those developments.

21. Inconsistent recommendations possible; trades create commissions. Morgan Keegan may from time to time make recommendations concerning the advisability of buying, selling or holding securities, options or contracts relating thereto, or employing a trading method or program. The market activities of Morgan Keegan or any of its officers, directors, employees, customers or shareholders may be inconsistent with the recommendations of Morgan Keegan to the undersigned. Morgan Keegan is in the business of providing securities account services, many of which result in the generation of brokerage commissions. If the undersigned elects to follow a trading program, such a program may result in a higher number of trades being made and a resulting greater amount of commissions being generated in the undersigned's account.

22. Commissions, fees and charges. The undersigned agrees that commissions and fees will be charged to the account in accordance with Morgan Keegan policy. Commissions and fee amounts may be changed from time to time by Morgan Keegan without notice to the undersigned. Such fees may include but not be limited to a service charge in the event any account produces no commission revenue in a calendar year and a service charge for accounts transferred to other firms. The undersigned agrees that in the event payment is not made by settlement date for securities purchased in a cash account of the undersigned, to the extent provided by law, a late charge may be imposed at the maximum rate of interest set forth in the Statement of Credit Terms from the settlement date to the date of payment.

23. Permission to obtain credit reports. The undersigned authorizes Morgan Keegan to obtain information concerning credit and business conduct of the undersigned as Morgan Keegan deems such to be appropriate. Upon written request from the undersigned, credit reports in the possession of Morgan Keegan will be provided to the undersigned, including the name and address of the consumer credit reporting agency which provided the report.

24. Receipt of checks; crediting checks when paid. All checks from the undersigned to be credited to the undersigned's account with Morgan Keegan shall be payable or endorsed to Morgan Keegan & Company, Inc. Morgan Keegan may in its discretion (a) refuse to accept for the undersigned's account checks payable to any party other than the undersigned and (b) accept checks for collection only which checks shall not be credited to the undersigned's account until paid.

25. Attorney's fees. Any expense, including costs and attorney's fees (whether for outside or inside counsel) incurred by Morgan Keegan in collection of a deficit from the undersigned or in enforcing Morgan Keegan's rights under the agreement shall be borne solely by the undersigned. Any expense, including attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan in defense of an action brought by the undersigned against Morgan Keegan or its agents or employees in connection with any account of the undersigned shall be borne solely by the undersigned should Morgan Keegan prevail.

26. Notice delivered to undersigned when mailed to account address. Communications directed to the undersigned at the address then appearing on the account of the undersigned, sent by ordinary mail or delivered to such address, shall be deemed to have been personally delivered to the undersigned whether or not actually received.

27. Notice to Morgan Keegan. Unless otherwise specified any notice required by this agreement to be given by the undersigned to Morgan Keegan shall be addressed to the Manager of Morgan Keegan's Customer Service Department at Morgan Keegan's Home Office at Fifty North Front Street, Memphis, Tennessee 38103, or at such other address as Morgan Keegan may instruct in writing.

28. Ratification of prior transactions. All transactions and dealings with Morgan Keegan prior to the execution of this agreement are hereby ratified by the undersigned and the undersigned hereby agrees that all such transactions and dealings are subject to all terms and provisions of this agreement as if they had taken place subsequent to the execution hereof.

29. Invalidity of provision not affecting enforceability of agreement. In the event any provision or clause of this agreement shall be deemed invalid, void or unenforceable for any reason, that determination shall not affect the remainder of this agreement, which shall continue in full force and effect.

30. Acceptance of agreement by Morgan Keegan. Except as provided in paragraph 2 with respect to modification, the acceptance, opening or maintenance of an account for the undersigned by Morgan Keegan shall constitute acceptance of this agreement by Morgan Keegan without signature hereon.

31. Joint Accounts.

a. If this is a Joint Account, the undersigned agree that they each shall have authority on behalf of this account to buy, sell and otherwise deal in securities through Morgan Keegan as broker; to receive for the account confirmations, statements and communications of every kind; to receive for the account and to dispose of money, securities and other property; to make, terminate, or modify for the account, agreements relating to these matters or waive any of the provisions of such agreements; and generally to deal with Morgan Keegan as if each of the undersigned alone was the account owner, all without notice to the other account owners. The undersigned agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account.

b. Morgan Keegan may follow the instructions of any of the undersigned concerning this account and make deliveries to any of the undersigned of any or all securities in this account, and make payments to any of the undersigned, of any or all monies in this account as any of the undersigned may order and direct, even if such deliveries and/or payments shall be made to one of the undersigned personally, and not for this account. Morgan Keegan shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and Morgan Keegan shall not be bound to see to the application or disposition of the said securities and/or monies so delivered or paid to any of the undersigned.

c. In the event of the death of any of the undersigned, the survivor(s) shall immediately give Morgan Keegan written notice thereof, and Morgan Keegan may, before or after receiving such notice, take such proceedings, require such documents, retain such portion and/or restrict transactions in the account as Morgan Keegan may deem advisable to protect Morgan Keegan against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any of the undersigned who shall have died shall be liable and each survivor will be liable, jointly and severally, to Morgan Keegan for any debt or loss in this account resulting from the completion of transactions initiated prior to Morgan Keegan's receipt of a written notice of such death or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

d. Any taxes or other expenses becoming a lien against or being payable out of the account as the result of the death of any of the undersigned, or through the exercise by his or her estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent. This provision shall not release the decedent's estate from any liability provided for in this agreement.

e. DESIGNATION OF TENANCY:

I. Joint Tenants with Rights of Survivorship/when one dies his or her interest passes to the survivor(s)

Morgan Keegan may presume that it is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants-in-common, unless otherwise provided by striking this paragraph ("I") and filling in the terms of paragraph ("II") hereafter. In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor(s) on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability.

II. Tenants-in-Common without Rights of Survivorship/when one dies, his or her interest passes to his or her estate.

Morgan Keegan may presume that if we strike paragraph ("I") above and fill in the terms of this paragraph ("II") below, it is the express intention of the undersigned to create an estate or account as tenants-in-common without rights of survivorship and not as joint tenants. Our interests in the account shall be set forth below. In the event of the death of either or any of the undersigned, the interests in the account shall be determined as of the close of business on the date of death of the decedent (or on the next following business day if the date of death is not a business day) as follows:

| | | |
|---|---|---|
| *Name of Tenant | or his or her estate % | Note: Total percentages must equal 100% |
| *Name of Tenant | or his or her estate % | |
| *Name of Tenant | or his or her estate % | |

*Indicate names and percentage amounts of the interests of each tenant. The only names to be inserted are those of the present owners of the account; heirs or beneficiaries CANNOT be designated on this form.

32. Non-objecting beneficial owners. Under rule 14b-1(c) of the Securities Exchange Act, Morgan Keegan is required to disclose to the issuer the name, address, and securities position of its customers who are beneficial owners of that issuer's securities unless the customer objects.

33. Sweep of free credit balances. Morgan Keegan may sweep all free credit balances daily into a money market fund as designated by the undersigned, or in the event no money market fund is designated, the undersigned authorizes Morgan Keegan to credit interest on free credit balances maintained for investment or reinvestment on behalf of the undersigned. The rate of interest paid on these balances will be published periodically by Morgan Keegan, and will vary with market conditions. The policies and procedures governing this payment of interest can be changed at any time. The undersigned agrees that no funds will be swept or receive interest unless the minimum investment requirement is met.

34. Tax certification. Under penalties of perjury, the undersigned certifies (1) that the number shown on this form is the correct taxpayer identification number for the undersigned and (2) that the undersigned is not subject to backup withholding as a result of failure to report all interest or dividends, or the Internal Revenue Service has notified the undersigned that the undersigned is no longer subject to backup withholding. (The undersigned understands that if he/she has been notified by the IRS that he/she is subject to backup withholding as a result of dividend or interest underreporting, he/she must cross out the information contained in clause (2) of this paragraph.)

35. Receipt of order flow payment. Client securities orders may be executed with Morgan Keegan itself, with other broker dealers, or through the exchanges which the securities are listed. Several of these market facilities offer automated execution services. Morgan Keegan's order routing among the execution facilities depends upon various factors such as the trading characteristics of the particular security and the size of the order. The participants to whom Morgan Keegan directs orders will execute such orders at or within the displayed national best bid or offer ("NBBO"), subject to order size and liquidity of markets, thus providing the opportunity for best execution of both limit and market orders. Morgan Keegan may receive additional cash remuneration, known as order flow payment, in some instances.

36. Risk of Loss Disclosures. You understand, acknowledge and agree that (i) the account is not insured by the Federal Deposit Insurance Corporation (FDIC); (ii) the account is not a deposit Account or other obligation of, or guaranteed by, Regions Financial Corporation or any of its banking or other affiliates; and (iii) the funds held in the account are subject to investment risks, including possible loss of the principal amount invested. The banking affiliates of Regions Financial Corporation may be lenders to issuers of securities that we underwrite. You should refer to disclosure documents relating to particular securities for a discussion of any such lending relationship.